**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DR. DENEAN ADAMS** | ) | **No.** |
| | ) | |
| **Plaintiff,** | ) | **Judge** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **BOARD OF EDUCATION HARVEY SCHOOL** | ) | |
| **SCHOOL DISTRICT 152, GLORIA JOHNSON** | ) | |
| **in her individual capacity, BETTY JOHNSON,** | ) | |
| **in her individual capacity, DR. KISHA** | ) | |
| **MCCASKILL, in her individual capacity,** | ) | |
| **JANET ROGERS, in her individual capacity,** | ) | |
| **TYRONE ROGERS, in his individual capacity,** | ) | **JURY TRIAL DEMANDED** |
| **LINDA HAWKINS, in her individual capacity,** | ) | |
| **FELECIA JOHNSON, in her individual** | ) | |
| **capacity,** | ) | |
| | ) | |
| | ) | |
| **CITY OF HARVEY, ILLINOIS, DENARD** | ) | |
| **EAVES, in his individual capacity, and** | ) | |
| **DET. R. WRIGHT, in his individual** | ) | |
| **capacity** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Dr. Denean Adams ("Plaintiff") by her attorney, Jerome M. Davis, Esq., brings this

Complaint against the Board of Education Harvey School District 152 (the "Board" or "District

152"), Gloria Johnson, in her individual capacity, Betty Johnson, in her individual capacity, Dr.

Kisha McCaskill, in her individual capacity, Janet Rogers, in her individual capacity, Tyrone

Rogers, in his individual capacity, Linda Hawkins, in her individual capacity,  Felicia Johnson,

in her individual capacity, City of Harvey, Illinois, Denard Eaves, in his individual capacity, and

Detective R. Wright, in his individual capacity (collectively "Defendants"),

1

and alleges the following in support hereof:

## INTRODUCTION

1.      This action is being brought pursuant to 42 U.S.C § 1983 for violation of Plaintiff's rights

under the First Amendment of the United States Constitution, made applicable to the states by

the Fourteenth Amendment, the Fourteenth Amendment of the United States Constitution for

violation of her due process rights and under the law of the state of Illinois for intentional

infliction of emotional distress.  Defendants illegally retaliated against Plaintiff because she

made a police report after she was threatened with physical violence by Defendant Tyrone

Rogers who became enraged when she asked members of Harvey District 152's Board of

Education to authorize a forensic audit to investigate potential fraud and abuse of governmental

education funding.  The Board rescinded its previously approved extension of Plaintiff's

employment contract to punish her for making the police report, and Wright and his supervisor

Eaves blocked Plaintiff from pursuing a criminal complaint against Rogers.

## JURISDICTION AND VENUE

2.      This action is brought under the First and Fourteenth Amendments to the United States

Constitution.

3.      Plaintiff's state law claim is brought pursuant to the law of the state of Illinois.

4.      Jurisdiction over the constitutional causes of action lies here under 28 U.S.C. § 1331, and

the Court has jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

5.      The events giving rise to this action occurred in this district.  Therefore, venue lies here

pursuant to 28 U.S.C. § 1391 (b).

## THE PARTIES

6.      Plaintiff is currently employed as the Superintendent of Harvey Public School District 152 under a multi-year employment agreement, which began July 1, 2013 and ends June 30, 2016 (the "Contract"). She is and was a citizen of the United States at all times relevant to this suit.

7.      Defendant Board of Education Harvey School District 152 is a municipality organized under the laws of the state of Illinois. It is charged with setting policy for Harvey School District 152.

8.      Defendant Gloria Johnson is the current president of the Board of Education Harvey School District 152 and, as such, was the head official for the policymaking body for District 152 during most of the time relevant to this suit.

9.      Defendant Betty Johnson is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

10.      Defendant Dr. Kisha McCaskill is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

11.      Defendant Janet Rogers is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit and the former Board president.

12.      Defendant Tyrone Rogers is the husband of Janet Rogers and is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

13.      Defendant Linda Hawkins is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

14.      Defendant Felicia Johnson is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

15.     Defendant City of Harvey, Illinois is a municipality organized under the laws of the state of Illinois, which is charged with setting policy for the City of Harvey.

16.     Defendant Denard Eaves is the Acting Chief of Police for the Harvey Police Department, and, as such, has and had policy making authority for the department during all times relevant to this suit.

17.     Defendant Detective R. Wright is a police Detective employed by the Harvey Police Department during all times relevant to this suit.

## STATEMENT OF FACTS

18.     Plaintiff is an educator who has worked in multiple school districts throughout this state during her 25-year career.

19.     In 2013, Plaintiff entered into a 3-year contract from July 1, 2013 through June 30, 2016 to become the Superintendent for Harvey School District 152 (the "Contract"). District 152 is comprised of 2,100 students in 8 schools. Over 95% of students come from households below the state's poverty level. She replaced Harvey Mayor Eric Kellogg who had held the Superintendent post while simultaneously holding the position of mayor. Kellogg's appointment was mired in controversy because those board members voting for him included his sister, his cousin Linda Hawkins, his city employee Tyrone Rogers, and another city employee.

20.     During Kellogg's tenure, the number of students meeting or exceeding the state's academic guidelines declined. However, despite the poor performance, the Board, including Janet Rogers, who was the Board president, and Tyrone Rogers voted to reward Kellogg with a pay and benefit package estimated at more than $300,000.

21.     Pursuant to the terms of Plaintiff's employment contract, she and the Board could mutually agree to extend the agreement at any time prior to its expiration.

22.     However, the Contract could not be extended unless Plaintiff met specific goals for student academic achievement and teacher development. The Contract required Plaintiff to report to the Board each year on progress toward achieving the performance goals; and Plaintiff and the Board were required each year to mutually determine if the performance goals needed to be augmented or modified.

23.     On February 19, 2015, Plaintiff was given the Board's Performance Evaluation for the 2014-2015 school year. Plaintiff was deemed to be performing good-very good in every category measured. There was no category where Plaintiff was deemed to be performing unsatisfactorily. Consequently, the Board approached Plaintiff about extending the Contract for 1-year.

24.     Plaintiff and the Board mutually agreed to a 1-year extension of the Contract and the Board voted to approve the extension on February 23, 2015. The Board's approval of the extension was documented in the Board Minutes disseminated to the public.

25.     In May 2015, Plaintiff informed the Board that she had serious concerns regarding possible financial irregularities with the way that state and federal funds were being used by the District. Plaintiff asked the Board to approve a forensic audit of the District's finances after uncovering over $500,000 in annual payments to a contractor for services that were not clearly identified, overpayment of salary to an employee who was terminated by the District, thousands of dollars of improper payments for the District's summer school program, and many other questionable expenditures. In response to Plaintiff's request, the Board authorized Plaintiff to prepare a proposal for hiring a forensic auditor.

26.     In June 2015, the Board held its annual retreat to review Plaintiff's progress toward achieving the District's academic and performance goals.  No major issues were raised regarding Plaintiff's job performance.

27.     On July 9, 2015, Plaintiff sent the Board a draft of the proposal to hire an outside forensic auditor.  Defendant Tyrone Rogers became enraged upon reading the proposal and called Plaintiff and threatened that she was "itching for an ass-kicking."

28.     The next day, Plaintiff met with Detective R. Wright of the Harvey Police Department to discuss filing a criminal complaint against Rogers.  She told Wright that she wanted to discuss what happened with the Board before proceeding to file formal charges.  Plaintiff subsequently spoke with the Board president Gloria Johnson and told her what happened.  Johnson indicated that she would take the issue up with the entire Board.

29.     Plaintiff waited a couple of days to see what action the Board would take.  However, the Board failed to even address the issue.  Therefore, she decided to contact the police to file formal charges.

30.     On July 13, 2015, Plaintiff met with Wright to file a formal complaint and informed him that Rogers had threatened her with physical violence after she issued a proposal for an audit of District 152's finances.  However, Wright told Plaintiff that she would have to address the issue with the Board and refused to allow Plaintiff to file a criminal complaint.

31.     On July 22, 2015, the Board held its monthly Board meeting.  Plaintiff was summoned into closed session at that meeting and informed that the Board had several issues with her job performance and was considering whether to rescind the one-year contract extension it had approved in February 2015.  However, there was no formal vote on the matter, and Plaintiff was

not given notice of the charges against her, nor was she informed if the Board intended to take any formal disciplinary action.

32.     On August 17, 2015, the Board voted to rescind the 1-year extension of Plaintiff's contract, which it had approved in February 2015. A written resolution was issued stating that the Board had determined that Plaintiff had failed to clearly meet the Board's expectations on certain performance related matters. Again--as she had done at the July 22, 2015, closed session Board meeting where the Board had first mentioned it had several issues with Plaintiff's job performance-- Plaintiff asked if she could have a written explanation identifying the specific performance issues.

33.     Plaintiff was given a document titled Partial Performance Evaluation and Directives for Superintendent Dr. Denean Adams as she exited the room. The Board then went back into open session and voted to rescind the 1-year extension after Plaintiff left the room.

34.     Plaintiff never received a written notice of the charges against her prior to the Board voting to rescind her Contract extension, nor was she given an opportunity to respond to the charges either before or after the Board voted to rescind the extension.

### COUNT I
### (42 U.S.C. § 1983-1st Amendment)

35.     Plaintiff hereby incorporates and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein.

36.     Plaintiff exercised her right as a private citizen when she made her criminal complaint against Rogers.

37.     Plaintiff's complaint related to gross official misconduct by a public official accused of threatening a public employee because she wanted to have an audit to assure that public funds were not being misused.

38.     The Board retaliated against Plaintiff for filing a complaint against Rogers by rescinding the 1-year extension of her contract that it had previously approved.  The Board used the pretext of performance issues to retaliate against Plaintiff.

39.     Acting under the color of law, the Board used its final policymaking authority over District 152 to engage in conduct aimed at punishing, harassing and intimidating Plaintiff from engaging in her right to speak on matters of public concern.

40.     The Board's conduct is part of a custom of cronyism and public corruption that exists in District 152 where the Board protects its own and punishes anyone who dares to speak against them.

41.     Therefore, after being made aware of Rogers' criminal conduct and the reason he threatened Plaintiff, the Board decided to ratify his actions by failing to take any action against Rogers and by punishing, instead of protecting, Plaintiff.

42.     The Board, in concert, acted willfully and maliciously and in total disregard of Plaintiff's constitutional free speech rights.  Moreover, the Board knew that its conduct violated Plaintiff's rights.

**COUNT II**
**(42 U.S.C. §1983-14[th] Amendment)**

43.     Plaintiff hereby incorporates and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein.

44.     Plaintiff was employed under a Contract that included a benefit that allowed the parties to extend the term of the Contract.

45.     The parties mutually agreed to extend Plaintiff's Contract, and the Board publicly affirmed the agreement to extend the Contract by voting in February 2015 to extend the Contract for 1-year.

46.     However, Plaintiff's mutually agreed upon benefit was taken away as the result of the Board's disciplinary action on August 17, 2015.

47.     Plaintiff was never afforded written notice of the formal charges against her or an opportunity to answer them before the Board rescinded the extension of her Contract. Nor was she given an opportunity to address the charges after the Board made its decision on August 17, 2015.

48.     Plaintiff's interest in the continued enjoyment of the right to practice her profession has been substantially harmed by the Board's actions, and Plaintiff has suffered significant monetary loss, emotional pain and diminished personal and professional standing in the community as a result of the fact that the board publicly announced that her Contract extension had been rescinded.

49.     The Board as the final policymaker for District 152 has a custom and practice of allowing its members to threaten and intimidate employees of the District and that custom is responsible for Rogers threatening Plaintiff with violence when she suggested an audit of the District's finances.

## COUNT III
### (Intentional Infliction of Emotional Distress)

50.     Plaintiff hereby incorporates and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein.

51.     As a result of Rogers' and the Board's conduct, Plaintiff has suffered extreme emotional damage. She has experienced severe physical problems such as weight loss, insomnia and panic

attacks. She was forced to seek medical treatment and missed 2 weeks off work while under her Doctor's care. She continues to need medical treatment and has had difficulty maintaining her normal family life and difficulty interacting with other members of her profession because of the fear and stigmatization caused by Rogers' and the Board's actions.

52.     Rogers intended to cause Plaintiff to experience severe emotional distress when he threatened her, and the Board ratified Rogers' actions when it failed to do anything once it became aware that he had threatened Plaintiff.

### COUNT IV
### (42 U.S.C. §1983-1st Amendment)

53.     Plaintiff hereby incorporates and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein.

54.     Plaintiff exercised her right as a private citizen when she made her criminal complaint against Rogers.

55.     Plaintiff's complaint related to gross official misconduct by a public official accused of threatening a public employee because she wanted to have an audit to assure that public funds were not being misused.

56.     Wright and Eaves, a policymaker for Harvey's police department, retaliated against Plaintiff by blocking her from filing a criminal complaint against Rogers. Wright and Eaves knew that both Janet and Tyrone Rogers are close and important allies of Mayor Eric Kellogg. Janet Rogers owes Kellogg for her seat on the Board, because he used his position as mayor to push for her to receive a pardon from the Governor. It was that pardon that allowed Janet Rogers to be seated on the Board, as she had been convicted of a crime. Both Rogers reciprocated by voting to give Kellogg over $300,000 in cash and benefits after his failed tenure as Superintendent of District 152.

57.     Defendant Harvey, Illinois ("Harvey") and Kellogg have a long history of police corruption.

58.     The city has a history of using the police to punish enemies and reward allies. For example, the City recently paid $1,400,000 to a citizen who was falsely accused of a gun charge by police who were acting on orders from Kellogg. In another instance, a police detective testified that Kellogg ordered him to remove a gun taken in evidence and return it to a friend of Kellogg. And the Civil Rights Division of the U.S. Justice Department recently labeled the police department as "devoid of supervisory oversight and accountability" after a 3–year investigation into police brutality complaints.

59.     Wright and Eaves used their position to retaliate against Plaintiff by blocking her lawful complaint and thereby willfully and maliciously sought to chill her free speech rights.

60.     Wright and Eaves conspired with the Rogers to retaliate against Plaintiff and agreed to block her from pursuing a criminal complaint. After initially telling Plaintiff that she could pursue a criminal complaint on July 10, 2015, Wright reversed himself after speaking with the Rogers, and on July 13, 2015, he told Plaintiff that she would have to take the matter up with the Board, even though he knew that the Board had already refused to act.

61.     Harvey is responsible for the culture of corruption and official misconduct that caused Eaves and Wright to retaliate against Plaintiff. And Harvey's failure to properly train and supervise its officers despite its well-documented problems shows a conscious decision or a reckless disregard that led to the violation of Plaintiff's First Amendment rights.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court:

A.  Declares that the policies and practices enumerated herein are illegal and unconstitutional;

B.  Issues an permanent injunction barring the Board and Harvey from retaliating against Plaintiff;

C.  Awards compensatory damages from all Defendants in an amount to be determined at trial and $165,000 plus statutory pre-judgment interest thereon against the Board;

D.  Awards punitive damages from Defendants Gloria Johnson, Betty Johnson, Dr. Kisha McCaskill, Janet Rogers, Tyrone Rogers, Linda Hawkins, Felicia Johnson, Denard Eaves, and Detective R. Wright in an amount to be determined at trial;

E.  Awards reasonable attorney's fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

F.  Awards such other relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a jury trial to hear the trial of this case.

Date June September 16, 2015

Respectfully Submitted,

By: _____
Jerome M. Davis, Esq.
Attorney for Dr. Denean Adams

Jerome M. Davis, Esq. (ARDC#6273828)
9024 McIntosh Court
Lakewood, Illinois 60014
847-606-6685