IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DR. DENEAN ADAMS** | ) | No. 15C8144 |
| | ) | |
| Plaintiff, | ) | Judge Sharon Coleman Johnson |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| **BOARD OF EDUCATION HARVEY SCHOOL** | ) | |
| **SCHOOL DISTRICT 152, GLORIA JOHNSON** | ) | |
| in her individual capacity, **BETTY JOHNSON,** | ) | |
| in her individual capacity, **DR. KISHA** | ) | |
| **MCCASKILL**, in her individual capacity, | ) | |
| **JANET ROGERS**, in her individual capacity, | ) | |
| **TYRONE ROGERS**, in his individual capacity, | ) | **JURY TRIAL DEMANDED** |
| **LINDA HAWKINS**, in her individual capacity, | ) | |
| **FELECIA JOHNSON**, in her individual | ) | |
| capacity, | ) | |
| | ) | |
| | ) | |
| **CITY OF HARVEY, ILLINOIS, DENARD** | ) | |
| **EAVES**, in his individual capacity, and | ) | |
| **DET. R. WRIGHT**, in his individual | ) | |
| capacity | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPONSE TO DEFENDANTS' 12(b)(6)
MOTION TO DISMISS COUNT III OF THE COMPLAINT**

**Background/History**

On September 16, 2015, Plaintiff Dr. Denean Adams ("Plaintiff") filed the instant complaint (the "Complaint") against the Board of Education Harvey School District 152, Gloria Johnson, in her individual capacity, Betty Johnson, in her individual capacity, Dr. Kisha McCaskill, in her individual capacity, Janet Rogers, in her individual capacity, Tyrone Rogers, in his individual capacity, Linda Hawkins, in her individual capacity, and Felecia Johnson, in her individual capacity (collectively "Defendants") [ Docket #1]. The Complaint averred, *inter alia*,

1

three counts against Defendants: Count I (42 U.S.C. § 1983-1st Amendment), Count II (42 U.S.C. § 1983-14th Amendment) and Count III (Intentional Infliction of Emotional Distress). Defendants timely answered Counts I and II on December, 7, 2015, and filed the instant motion to dismiss Count III, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The Court Ordered Plaintiff to file her response by February 16, 2016. [Docket #25].

**Applicable Law**

A 12(b)(6) motion attacks the sufficiency of the allegations in the complaint to satisfy the requirements for a cause of action. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). In ruling on the motion, the court must accept as true all well-plead, non-conclusory, allegations and draw all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996). The complaint will survive a 12(b)(6) motion if it sets forth allegations that raise a plausible claim for relief. *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not be convinced that plaintiff can prove her case at trial, merely that the allegations and the inferences drawn therefrom assert a plausible cause of action. *Bell Atlantic Corp., et al. v. Twombly, et al.*, 550 U.S. 544, 556 (2007).

Three elements are necessary to prove the tort of Intentional Infliction of Emotional Distress ("IIED"): 1) the conduct involved must be extreme and outrageous; 2) the defendant must intend his conduct to inflict severe emotional distress, or know that there is a high probability that his actions will cause such distress; and 3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey, et al.*, 533 N.E.2d 806, 809 (1988) (citations omitted). Thus, an IIED claim will not lie for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* Given the difficulty of developing a single definition for what constitutes outrageous conduct, courts employ a case-by-case contextual analysis to decide

if conduct is extreme and outrageous. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997).

However, the Illinois Supreme Court in *McGrath* identified three non-exclusive factors to guide the analysis: 1) conduct will be viewed as extreme and outrageous where the defendant abuses a position of power or authority over the plaintiff and makes veiled or explicit threats to harm the plaintiff's interest; 2) conduct will be viewed as extreme and outrageous where there is no legitimate purpose for the defendant's actions; and 3) conduct will be viewed as extreme and outrageous where the defendant knows that the plaintiff is particularly susceptible to experiencing severe distress because of her physical or emotional condition. *McGrath v. Fahey, et al.*, 533 N.E.2d at 809-11.

> Illinois cases in which intentional infliction of emotional distress has been sufficiently alleged have in fact very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff. The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests. The result is something very like extortion.

*Id*. at 810 (citation and quotation omitted).

In situations where the IIED claim rests on an alleged abuse of power, courts will consider whether the claim is mitigated by the defendant's legitimate interest. *Id*. at 810-11. For example, creditors are given some latitude when collecting debts because it is often necessary for them to exert a certain amount of stress upon a debtor in order to carry out their legitimate collection activities. *See Public Finance Corp. v. Davis*, 360 N.E.2d 765, 768 (1976). Similarly, courts are loath to transform every situation involving job related stress into an IIED claim because stress is common in the workplace. *Van Stan v. Fancy Colours.*, 125 F.3d at 568 (IIED claims in employment context limited to most egregious cases).

3

However, conduct that is not normally actionable may give rise to an IIED claim where the defendant knew that the plaintiff was peculiarly susceptible to severe stress, such as when a debtor is undergoing a serious physical illness that makes him more likely to experience severe stress, or when an employee is particularly vulnerable because of her pregnancy or fragility. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 606 (7th Cir. 2006); *Willis v. Career Education Corp.*, 2015 WL 3859191, *13 (June 19, 2015 N.D. Ill.). Determination of whether the defendant had a legitimate interest for his actions or whether the plaintiff was susceptible to severe stress can result in factual disputes that must be decided by a jury. *Id.*; *McGrath v. Fahey, et al.*, 533 N.E.2d at 811.

**Argument**

**<u>Plaintiff has sufficiently plead that Rogers' conduct was extreme and outrageous.</u>**

Plaintiff avers that in May 2015 she informed the individual defendants (collectively "the Board") that she was concerned about financial irregularities related to the district's use of federal and state educational funding. (Comp. ¶ 25). She had uncovered evidence of hundreds of thousands of dollars of improper expenditures and possible overpayments. *Id*. Thus, Plaintiff requested approval to hire a forensic auditor to investigate these matters. *Id*.

The Board authorized Plaintiff to prepare a proposal to hire a forensic auditor, and on July 9, 2015, she sent a copy of the proposal to hire an outside auditor to the Board for approval. (Comp. ¶¶'s 25, 27). Defendant Tyrone Rogers ("Rogers") was angered by the proposal and called Plaintiff on the telephone and shouted that she must be "itching for an ass-kicking!" (Comp. ¶ 27). The next day, Plaintiff met with defendant Det. R. Wright ("Wright") a police officer from the City of Harvey Police Department because she was afraid and upset at what had happened. (Comp. ¶ 28). She also contacted defendant Gloria Johnson, president of the Board

4

of Education, and told her that Rogers had threatened her and she was very upset. *Id*. Johnson indicated that she would immediately inform the Board about the incident. *Id*.

However, several days passed without any word from Johnson or any other members of the Board. Plaintiff was still very afraid and upset about the incident, and on July 13, 2015, she met again with Wright and told him that she wanted to make a criminal complaint against Rogers. (Comp. ¶ 30). However, Wright told her that she could not press criminal charges and that she would have to address the matter with the Board. *Id*. On July 22, 2015, the Board called a special meeting to discuss possible disciplinary action against Plaintiff. Janet Rogers, wife of Tyrone Rogers, informed Plaintiff that the Board was considering whether to rescind the one year contract extension that it had approved in February because of unspecified issues with her job performance. (Comp. ¶ 31).

On August 17, 2015, the Board, including Rogers, voted to rescind the contract extension, and threatened Plaintiff with termination if she did not improve in certain areas identified in a document titled Partial Performance Evaluation and Directives for Superintendent Dr. Denean Adams. (Comp. ¶¶'s 32-33). Plaintiff was devastated by the Board's decision to retaliate against her when she had done nothing wrong. (Compl. ¶¶ 1-34, 51-52). The stress caused by the combination of Rogers' threat was exacerbated by the Board's retaliation and left her unable to work. Consequently, she was placed on a two week medical leave by her doctor, who continues to treat her to this day. (Compl. ¶¶ 51-52).

Rogers contends that a single threat over the telephone is not sufficiently outrageous to satisfy the objective standard applied to IIED claims. He relies on *Kelly v. Franco*, 391 N.E.2d 54 (Ill. App.1st Dist. 1979) for support. (Def.'s Mot. to Dismiss Sec A pg. 4.) In that case, the defendants were neighbors of the plaintiffs who were accused of making multiple calls to the

plaintiffs' home and hanging-up when the phone was answered, threatening that they were going to force the plaintiffs to move from their home, and making frivolous complaints to the police regarding the plaintiffs' son. *Id*. at 56. The court held that although the defendants' conduct was "irritating," it did not rise to the level that no reasonable person could be expected bear, which is the standard for an IIED claim. *Id*. at 59.

But *Kelly* is easily distinguishable because the instant cases involves an abuse of power to inflict extreme emotional distress. Here, unlike *Kelly*, Rogers stands in a position of power and authority over Plaintiff by virtue of the fact that he is a member of the Board, which is the ultimate policymaker for district 152. He has the ability to not only demote or punish plaintiff, but to terminate her and significantly damage her professional standing among her peers, thus, making it significantly more difficult, if not impossible, for her to obtain future employment or advance her career. Further, as member of the Board, he has unlimited access to school property where Plaintiff worked. Thus, Plaintiff was forced to go to work every day in fear that Rogers might physically attack her.

Courts in Illinois have held that conduct is extreme and outrageous where the defendant exercises control or authority over the plaintiff, which gives him the power to harm the plaintiff's interest:

> The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment. Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out than when made by someone in a comparatively weak position.

*McGrath v. Fahey, et al.*, 533 N.E.2d at 809.

6

As stated above, the focus is not on the specifics of the defendant's conduct; rather, it is the defendant's abuse of the power or authority he has over the plaintiff which makes his conduct extreme and outrageous. *Id*. at 810.

This case is analogous to cases where courts have sustained the sufficiency of an IIED claim where the defendants abused their positions of power to coerce the plaintiff in a manner that was akin to extortion. In *McGrath*, the defendants allegedly used their superior financial knowledge and control over the plaintiff's funds to coerce him into surrendering mortgages securing an unrelated real estate sale. *Id*. at 811-12. The defendant bank threatened to hold the funds unless the plaintiff surrendered the mortgages and engaged in a pattern of harassment when the plaintiff refused. *Id*. at 812.

In *Milton*, the plaintiff's employer threatened and retaliated against him when he refused to overcharge customers by submitting false work reports. *Milton v. Illinois Bell Telephone Co.*, 427 N.E.2d 829, 831 (Ill. App. 1st Dist. 1981). And in *Honcaker v. Smith*, 256 F.3d 477 (7th Cir. 2001), the mayor of the town threatened to burn down the plaintiff's home if he refused to move. *Id*. at 481. He allegedly made good on his threat when the plaintiff refused to move by setting fire to the property. *Id*. at 481-82; *See Also Eckenrode v. Life of America*, 470 F.2d 1, 4 (7th Cir. 1972) (outrageous conduct can arise where defendant abuses position of power over plaintiff).

Here, Rogers tried to coerce Plaintiff into dropping her efforts to investigate possible fraud involving federal and state funds, and retaliated with sham disciplinary action rescinding her contract extension when she went to the police. (Comp. ¶¶'s 25, 27, 31-33). Further, as in *McGrath*, *Milton* and *Honacker*, there is no legitimate basis for Rogers' conduct. *McGrath v. Fahey, et al.*, 533 N.E.2d at 812. Therefore his reliance on cases where courts have given employers latitude because they were pursing legitimate business goals is misplaced. This Court

7

is not required to give deference to Rogers' criminal threats aimed at intimidating Plaintiff and preventing her from executing her lawful duty. There is no place in a civilized society for a public official to threaten a public employee with violence because she conscientiously tried to protect public funds. *Honcaker v. Smith*, 256 F.3d at 492 (holding conduct is outrageous where defendant did not have a plausible belief that his actions were legitimate). A reasonable person confronted with the facts of this case would likely exclaim outrageous! *Doe v. Calumet City*, 641 N.E.2d 498, 507 (1994) (outrageous conduct would cause an ordinary citizen hearing the facts to exclaim outrageous!) *overruled in part on other grounds by DeSMET v. County of Rock Island*, 848 N.E.2d 1030, (2006).

      Therefore, Plaintiff has satisfied the first prong of an IIED claim. Moreover, a jury could reasonably concluded that Rogers intended to cause severe emotional distress when he threatened to attack Plaintiff. *Honcaker v. Smith*, 256 F.3d at 494 (second prong of IIED claim satisfied where defendant's actions by their very nature were likely to induce severe emotional distress). Likewise, the third prong of Plaintiff's IIED claim is satisfied given the extreme and outrageous nature of Rogers' conduct. *Id.* at 496 (evidence that plaintiff suffered severe emotional distress can be shown by the outrageousness of the conduct itself) *citing Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 213 (1992).

      Finally, to the extent Rogers disputes whether he threatened to physically assault Plaintiff or whether such a threat made via telephone is of sufficient intensity and duration to cause severe emotional distress, Plaintiff respectfully submits that these are issues for the jury. (Def.'s Mot. to Dismiss Sec A pg. 4.); *Honcaker v. Smith*, 256 F.3d at 497 (factual issue regarding whether plaintiff suffered severe distress was raised by the magnitude of the defendant's alleged misconduct and evidence plaintiff suffered severe distress). At this stage where the Court is

reviewing the sufficiency of the pleadings, Plaintiff has met her burden of alleging facts that, if true, show that she suffered severe emotional distress as a result of Rogers' threatening to physically attack her and his retaliatory actions taken in concert with the other Defendants. (Compl. ¶¶ 51-52); *Kolegas*, 607 N.E.2d at 213.

### **The Board's abuse of it power to retaliate against Plaintiff was extreme and outrageous**.

The Board contends that the rescission of Plaintiff's contract extension was not extreme and outrageous; rather, it was akin to an offensive creditor engaged in legitimate collection activities. It cites a number of cases holding that courts are reluctant to treat every day work stresses and offensive conduct that results from an employer's legitimate business activities as grounds for an IIED claim. However, the Board ignores allegations in the Complaint asserting that it abused its power over Plaintiff to engage in retaliatory actions that served no legitimate purpose. Further, the Board ignores allegations in the Complaint showing that the Board knew Plaintiff was experiencing extreme emotional distress when it retaliated against her. Thus, under the settled law of this State, the Board's conduct was extreme and outrageous.

Retaliation against a whistleblower is not a normal, legitimate business practice that is given latitude by the courts. That was the holding of *Johnson v. Federal Reserve Bank of Chicago*, 557 N.E.2d 328, 331 (Ill. App. 1st Dist. 1990), where the court rejected the defendant's assertion that its actions against the plaintiff/employee were predicated on its legitimate business objectives. In that case, the plaintiff Johnson was instructed by his employer to conceal the fact that the employer was using procedures that violated U.S. Treasury Department Banking Regulations. *Id.* at 330. However, he disclosed the violations to the federal authorities. *Id.* Johnson was also told to "be quiet" when he informed his employer that the procedures for handling customer accounts violated federal banking regulations. *Id.* Johnson's employer then

9

engaged in a pattern of retaliatory actions to punish him for objecting to the claimed illegal practices. *Id*. As a result of this harassment, Johnson was forced to take a two-week medical leave due to stress. *Id*. He also complained to one of his superiors that that the harassment was causing extreme stress. *Id*. However, the harassment continued. *Id*. at 331 (punishment continued even after the employer knew of Johnson's deteriorated condition).

As here, the bank in *Johnson* argued that its actions did not meet the objective standard for extreme and outrageous conduct. *Id*. Rather, it contended that Johnson had experienced normal work related stress resulting from the employer's legitimate business activity. *Id*. However, the court held that although the employer's actions were not extreme and outrageous *per se*, they became so because of their retaliatory and punitive nature. *Id*. Thus, the employer could not shield itself from liability by relying on the safe harbor for legitimate business practices. *Id*. This was especially true where the allegations in the complaint averred that the employer knew that its actions were harming Johnson. *Id*. Thus, the court held that there was an abuse of power analogous to *McGrath*:

> [T]he conduct arose from an employment relationship in which the Bank held a position of authority, determining the nature, conditions, and duration of Johnson's employment; the Bank's conduct, being retaliatory, served no legitimate purpose; and the abusive conduct continued even after the Bank knew of Johnson's susceptibility to emotional distress.

*Johnson*, 557 N.E.2d at 331.

The instant case is similar to *Johnson* because Plaintiff avers that the Board retaliated against her after she reported to the police that Rogers threatened her because she sought a forensic audit of the district's finances. (Comp. ¶ 1). Plaintiff alleges that the Board approved a contract extension in February 2015 as a reward for achieving the goals set forth in her annual performance review. (Comp. ¶¶'s 23-24). Moreover, in June 2015 during the annual meeting to

10

discuss Plaintiff's progress, the Board did not raise any significant issues with Plaintiff's performance. (Comp. ¶ 26).

However, less than one month later, she was unexpectedly summoned to a Board meeting and told by Janet Rogers that the Board was considering rescinding the contract extension because of poor job performance. (Comp. ¶ 31). This happened twelve days after Plaintiff went public with a police report stating that she was threatened by Rogers' husband because she wanted to hire an outside auditor to investigate potential financial fraud in the district. (Comp. ¶¶'s 28, 30). On August 17, 2015, Plaintiff was again summoned without prior notice and told that the Board was rescinding the contract extension. (Comp. ¶¶'s 32, 34). She was also informed that she faced termination if she did not address certain heretofore undisclosed performance issues. (Comp. ¶ 33). A reasonable juror hearing these facts could conclude that the Board's actions were motivated by a desire to punish Plaintiff for filing a police report disclosing Rogers' threat and the misuse of government funds. Thus, the Board's conduct was an abuse of power that served no legitimate purpose. *Johnson*, 557 N.E.2d at 331.

Another similarity between this case and *Johnson* is the fact that the Complaint avers allegations that, if true, show that the Board knew that Plaintiff was vulnerable to severe emotional distress but continued to punish her anyway. *Id*. For instance, Plaintiff informed her superior Board president Gloria Johnson that Rogers had threatened her the day after the incident occurred and told her she was very afraid and upset. (Comp. ¶ 28). Plaintiff told Johnson that she had reported the incident to the police because she was concerned about her safety. *Id*. Johnson said that she would immediately inform the Board about what happened. *Id*. For several days, Plaintiff anxiously awaited some word from the Board. (Comp. ¶ 29). But the Board failed to take any action, so she re-contacted the police to file criminal charges. (Comp. ¶ 30).

11

Instead of reassuring Plaintiff that she would be safe in the workplace, the Board heightened her anxiety by threatening to rescind her contract extension at a surprise Board meeting held within days of her report to the police. (Comp. ¶ 31). The Board members witnessed first-hand the devastating affect this had on Plaintiff when she appeared before them at the July 22 Board meeting. *Id*. Nonetheless, they proceeded to rescind the contract extension on August 17, 2015, and ratcheted up the pressure by threatening to fire Plaintiff and publicly announcing that she was disciplined without ever giving her an opportunity to review or respond to the charges. (Comp. ¶¶'s 32-34). As in *Johnson*, Plaintiff was so overcome by the Board's harassment that she was forced to take a medical leave of absence. (Comp. ¶ 51). And, like *Johnson*, evidence adduced at trial will show that the abuse did not end. *Johnson*, 557 N.E.2d at 331. Rather, she continues to be under a doctor's care as a result of the Board's ongoing retaliatory campaign.

These allegations raise a reasonable inference that the Board intended to inflict emotional distress or knew with substantial certainty that its conduct would cause Plaintiff to suffer extreme emotional distress. Thus, the second prong of an IIED claim is satisfied. Moreover, the well-pled allegations in the Complaint aver that Plaintiff did suffer emotional distress, which satisfies the third element of her cause of action.


Date February 16, 2016                                        Respectfully Submitted,


                                                                            By: /s/ Jerome M. Davis, Esq.
                                                                               Jerome M. Davis, Esq.
                                                                               Attorney for Dr. Denean Adams

Jerome M. Davis, Esq. (ARDC#6273828)
9024 McIntosh Court
Lakewood, Illinois 60014 847-606-6685