# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DR. DENEAN ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 cv 8144 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| BOARD OF EDUCATION HARVEY SCHOOL ) | |
| DISTRICT 152, GLORIA JOHNSON, in her ) | |
| individual capacity, BETTY JOHNSON, in her ) | |
| individual capacity, DR. KISHA MCCASKILL, in ) | |
| her individual capacity, JANET ROGERS, in her ) | |
| individual capacity, TYRONE ROGERS, in his ) | |
| individual capacity, LINDA HAWKINS, in her ) | |
| individual capacity, FELICIA JOHNSON, in her ) | |
| individual capacity, CITY OF HARVEY, DENARD ) | |
| EAVES, in his individual capacity, and DET. R. ) | |
| WRIGHT, in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dr. Denean Adams, filed a four-Count Complaint alleging various claims stemming from her employment as Superintendent of Harvey School District 152 and rescission of her employment contract. Defendants, Board of Education Harvey School District 152, Gloria Johnson, Betty Johnson, Dr. Kisha McCaskill, Janet Rogers, Tyrone Rogers, Linda Hawkins, and Felicia Johnson (collectively "the Board defendants"), move to dismiss Count III for failure to state a claim for intentional infliction of emotional distress ("IIED") [17]. Defendants, City of Harvey, Denard Eaves, and Detective Wright (collectively "the Harvey defendants"), move to dismiss Count IV of the complaint for failure to state a claim for a violation of plaintiff's constitutional rights, conspiracy and retaliation [22]. For the reasons set forth below, this Court grants the motions.

**Background**

The following facts are accepted as true for purposes of ruling on the pending motions. Plaintiff, Denean Adams, is an educator employed as the Superintendent of Harvey Public School District 152 for a three-year term from July 1, 2013, to June 30, 2016. The individual Board defendants: Gloria Johnson, Betty Johnson, Kisha McCaskill, Janet Rogers, Tyrone Rogers, Linda Hawkins, and Felicia Johnson, are all members of the Board of Education Harvey School District 152. Defendant, Denard Eaves is the Acting Chief of Police for the City of Harvey Police Department, and Detective R. Wright is a police detective with the Harvey Police Department.

Adams alleges that her predecessor, Eric Kellogg, who served both as school Superintendent and Mayor of the City of Harvey simultaneously, was given a pay and benefit package worth an estimated $300,000, as voted on by the Board. The pay and benefit package could not be extended by the Board unless the Superintendent met specific goals for student achievement and teacher development. This agreement required the Superintendent to report to the Board annually regarding these benchmarks.

On February 19, 2015, Adams was given a favorable review in the Board's Performance Evaluation for the 2014-2015 school year. The Board voted to approve a 1-year extension of Adams' contract on February 23, 2015. In May 2015, Adams approached the Board with some concerns about possible financial irregularities with the use of State and Federal funds. She asked the Board to approve a forensic audit of the District's finances after uncovering over $500,000 in potentially misused funds. The Board authorized Adams to prepare a proposal for hiring a forensic auditor. At the June 2015, Board retreat no issues were raised about Adams' job performance.

On July 9, 2015, Adams sent the Board a draft proposal to hire an Auditor. Defendant and Board member, Tyrone Rogers, called Adams after reading the proposal and told Adams she was "itching for an ass-kicking." The following day, Adams went to the Harvey Police Department and

2

met with Detective R. Wright to discuss filing a criminal complaint against Rogers. She informed Detective Wright that she wanted to bring the matter before the Board prior to filing formal charges. Adams told Board President Gloria Johnson what had happened, and Johnson said she would take it up with the full Board. Adams returned to Harvey Police on July 13, 2015, when she had heard nothing from the Board. Detective Wright informed Adams that she could not file criminal complaint.

On July 22, 2015, the Board held its monthly meeting. Adams was summoned to a closed session at the meeting, where the Board informed her that they had several issues with her job performance and that the Board was considering rescinding the one-year extension on her contract. The Board voted to rescind the contract on August 17, 2015, stating that Adams had failed to meet expectations.

Adams filed a four-Count Complaint on September 16, 2015, alleging retaliation in violation of her First Amendment rights and due process rights against the Board defendants. She also alleged intentional infliction of emotional distress by the Board defendants and retaliation in violation of her First Amendment rights against the Harvey defendants.

**Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009). The complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief…to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting Fed. R. Civ. P. 8(a)(2)). The plaintiff does not need to provide detailed factual allegations, but must provide enough factual support to raise his right to relief above a speculative level. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. When reviewing a motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 449 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

*1. Motion to Dismiss Count III – Intentional Infliction of Emotional Distress by the Board Defendants*

Adams claims that the Board defendants intentionally inflicted emotional distress when one of their members, Tyrone Rogers, verbally threatened her over the telephone and the remainder of the Board failed to address the threat and rescinded her contract when she tried to file a police report against Tyrone Rogers. The Board moves to dismiss, arguing that Adams cannot state a claim for intentional infliction of emotional distress for a single verbal threat.

To state a claim for IIED, Adams must: (1) conduct that is extreme and outrageous; (2) the actor either intends, or knows that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct does, in fact, cause severe emotional distress. *McGrath v. Fahey,* 126 Ill. 2d 78, 86, 533 N.E. 2d 806 (1988). The Illinois Supreme Court has held that to form the basis for an IIED claim, the outrageous conduct must extend beyond "mere insults, indignities, threats, annoyances, petty oppressions, or trivialities." *Public Finance Corp. v. Davis,* 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767 (1976). Illinois courts follow the *Restatement (Second) of Torts*:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency… *Restatement (Second) of Torts sec. 46, comment d* (1965).
> The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity. Comment *j. See also* Prosser, Law of Torts, sec. 12, at 54 (4th ed. 1971). *Public Finance Corp.*, 66 Ill. 2d at 90; *Kelly v. Franco,* 72 Ill. App. 3d 642, 648, 391 N.E.2d 54 (1st Dist. 1979).

4

In *Kelly v. Franco,* the plaintiffs alleged "threats by defendants and their children to force the plaintiffs to move from the neighborhood, calls to [the] plaintiffs' home which resulted in the callers hanging up when the phone was answered, and complaints to the police against Luke Kelly on trivial matters." *Kelly,* 72 Ill. App. 3d at 648. In that case, the court held that the plaintiffs had not stated a claim for IIED because the conduct alleged was not sufficiently outrageous because it did not extend beyond mere indignities or threats. *Id.* at 648-49.

In this case, Adams alleges only one instance of a verbal threat made over the telephone by one defendant, Tyrone Rogers. Although Adams alleges that she was disturbed enough by the telephone call and Rogers' stating that Adams was "itching for an ass-kicking" to go to the police, her own complaint states that she wanted to discuss the incident with the Board before filing a formal complaint against Rogers. The threat alone does not rise to the level of extreme and outrageous.

In some instances conduct may be considered extreme based on the degree of power or authority that the defendant has over the plaintiff. "The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *McGrath*, 126 Ill. 2d at 86-87. Even in concert with the subsequent rescission of Adams' contract extension, the alleged conduct is not sufficiently extreme that it goes beyond the bounds of decency despite the lack of professionalism. Adams argues that the Board as a whole heightened her anxiety by threatening to rescind her contract extension, then actually rescinding it, threatening to fire her, and publicly announcing that Adams had been disciplined. If these facts were sufficient to state a claim for IIED, then nearly every instance of an employee being summarily dismissed or publicly reprimanded would raise a valid claim for IIED.

5

The Illinois courts refer to the severity of conduct as a "stringent standard" that is met where the conduct has "a coercive factor, such as an employer's attempt to cause an employee to commit an illegal act, or the existence of a pattern of harassment involving extreme and continuous calls and letters of a threatening and profane or obscene nature." *Giraldi v. Lamson*, 205 Ill. App. 3d 1025, 1028, 563 N.E.2d 956 (1st Dist. 1990) (citing *Milton v. Illinois Bell Telephone Co.*, 101 Ill. App. 3d 75, 427 N.E.2d 829 (1981); *Sherman v. Field Clinic,* 74 Ill. App. 3d 21, 392 N.E.2d 154 (1979); *Grey v. First National Bank*, 169 Ill. App. 3d 936, 943, 523 N.E.2d 1138 (1988)). Adams relies on *Johnson v. Federal Reserve Bank of Chicago* to support her claim that the Board's conduct was an abuse of power amounting to extreme and outrageous conduct. *Johnson* fits the profile of cases where the employee plaintiff is coerced into committing an illegal act. *Johnson v. Federal Reserve Bank of Chicago,* 199 Ill. App. 3d 427, 557 N.E.2d 328, 331 (1st Dist. 1990). In that case, the plaintiff was instructed by his employer to conceal the fact that his employer was violating federal banking regulations and then engaged in a pattern of retaliatory actions and harassment as punishment for his refusal to comply. *Id.* at 330. The situation alleged in this case involves neither a pattern of harassment nor coercion by Adams' employer to commit an illegal act. It is simply one threatening and unprofessional remark to which she understandably took offense made over the telephone that was not carried out and culminated in the Board rescinded Adams' contract. These allegations do not amount to an IIED claim against either Rogers alone or the whole Board.

*2. Motion to Dismiss Count IV – Constitutional Violation by the Harvey Defendants*

Defendants, City of Harvey, Denard Eaves, and Detective Wright, move to dismiss Count IV of Adams' Complaint, arguing that Adams fails to state a claim for a free speech violation. Adams asserts that the defendants prevented her from filing a criminal complaint against Rogers.

On the basis of this incident, Adams claims both individual liability for Eaves and Wright as well as municipal liability for the City of Harvey.

In order to state a claim based on a violation of her free speech rights, Adams must allege "(1) that speech she engaged in was constitutionally protected under the circumstances, *Connick v. Myers*, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); and (2) that defendants retaliated against her because of that speech. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)." *Barkoo v. Melby*, 901 F.2d 613, 617 (7th Cir. 1990). Adams' Complaint satisfies neither prong.

Adams claims that the Harvey police and its officers retaliated against her by denying her request to file a criminal complaint against Tyrone Rogers for his threat. She contends her attempt to have Tyrone Rogers' arrested is protected speech on a matter of great public concern. As a public employee, Adams could not be terminated or have her contract rescinded for speaking out on a matter of great public concern. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 574, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). "The Supreme Court has defined 'public concern' to mean 'legitimate news interest,' or 'a subject of general interest and of value and concern to the public at the time of publication.'" *Meade v. Moraine Valley Cmty. College*, 770 F.3d 680, 684 (7th Cir. 2014) (*quoting City of San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004) (per curiam)). Adams alleged speech, informing the police of the verbal threat made against her after she tried to have independent audit of the school board, is a matter of public concern.

However, neither Eaves and Wright nor the Harvey Police Department were Adams' employers capable of rescinding her contract and therefore her complaint fails the second prong. The police are not required to pursue every report. Moreover, the police lack the authority to charge defendant Rogers with any crime. Adams argues that defendants are improperly raising an affirmative defense by asserting that they lacked the power to have Rogers arrested and charged.

7

When the allegations of the complaint itself set forth everything necessary to satisfy an affirmative defense, dismissal is appropriate. *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005). Even if this Court puts aside this defense, the retaliatory conduct of which Adams complains is unclear. Based on the facts alleged in the Complaint, the only retaliatory conduct alleged appears to be rescission of her contract extension. None of the Harvey defendants had personal involvement with that conduct, which is necessary to sustain a claim under 42 U.S.C. §1983.

Adams also alleges municipal liability under *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978). To state a claim against the City of Harvey, Adams must allege that Eaves acted pursuant to a municipal custom, policy, or practice. *Monell*, 436 U.S. at 691; *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). "To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused by (1) the enforcement of an express policy of the [city], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg*, 604 F.3d at 467. Adams' claimed constitutional injury is that Wright and Eaves, as acting Chief of Police with final policymaking authority, blocked her from filing a criminal complaint against Rogers. This is insufficient to state a claim for municipal liability. The Complaint simply alleges that "Wright and Eaves" blocked her from filing a criminal complaint. This allegation is simply a conclusion.[1] The allegation does not indicate Eaves role or anything more than a bare "the defendant harmed me" accusation. *See Iqbal*, 556 U.S. at 678.

---

[1] Defendants attached the police reports as exhibits to their motion to dismiss, though this Court has not considered them for purposes of ruling this motion. See Dkt. 22-1.

**Conclusion**

Based on the foregoing discussion, this Court grants the Board defendants' Motion to Dismiss Count III [17] and grants the Harvey defendants' Motion to Dismiss Count IV [22]. IT IS SO ORDERED.

Date:  May 6, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge