**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DR. DENEAN ADAMS** | ) | No. 15C8144 |
| | ) | |
| **Plaintiff,** | ) | **Judge Sharon Johnson Coleman** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **BOARD OF EDUCATION HARVEY SCHOOL** | ) | |
| **SCHOOL DISTRICT 152, GLORIA JOHNSON** | ) | |
| **in her individual capacity, BETTY JOHNSON,** | ) | |
| **in her individual capacity, DR. KISHA** | ) | |
| **MCCASKILL, in her individual capacity,** | ) | |
| **JANET ROGERS, in her individual capacity,** | ) | |
| **TYRONE ROGERS, in his individual capacity,** | ) | **JURY TRIAL DEMANDED** |
| **LINDA HAWKINS, in her individual capacity,** | ) | |
| **FELECIA JOHNSON, in her individual** | ) | |
| **capacity,** | ) | |
| | ) | |
| | ) | |
| **CITY OF HARVEY, ILLINOIS, DENARD** | ) | |
| **EAVES, in his individual capacity, and** | ) | |
| **DET. R. WRIGHT, in his individual** | ) | |
| **capacity** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S MOTION TO RECONSIDER THE
COURT'S DISMISSAL OF COUNT IV OF HER COMPLAINT**

NOW COME Plaintiff Dr. Denean Adams ("Plaintiff") by and through her attorney

Jerome M. Davis, Esq. and moves this Honorable Court pursuant to Fed.R.Civ.P. 59(e) to vacate

its Order entered May 6, 2016, dismissing Count IV of Plaintiff's complaint. Plaintiff

respectfully submits the following in support hereof:

**BACKGROUND**

On September 16, 2015, Plaintiff filed the instant action against the City of Harvey, Illinois

("Harvey"), Denard Eaves acting Chief of Police for Harvey Police Department, in his individual

1

capacity, and Detective R. Wright in his individual capacity (collectively "Defendants") [ Docket #1]. Plaintiff averred, *inter alia,* that Defendants violated her First Amendment right to free speech pursuant to 42 U.S.C. § 1983 (Count IV). On January 8, 2016, Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim [Docket #23]. On May 6, 2016, this Court dismissed Count IV against Defendants [Docket #33].

## ARGUMENT

Applicable Standard of Review

1.      Rule 59(e) allows a court to correct its own errors and thereby avoid unnecessary costs to the appellate court and the parties by obviating the need to appeal. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). A Rule 59(e) motion is not an opportunity to introduce new evidence that was available at trial. *Caisse National de Credit Agircole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Rather, a Rule 59(e) motion is permissible only when there is newly discovered evidence or there has been a manifest error of law or fact. *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). A manifest error of law is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks and citation omitted). A court will not grant a Rule 59(e) motion unless the movant clearly establishes one of these grounds. *Harrington v. City of Chi.*, 433 F.3d at 546. However, "[a] motion for reconsideration performs a valuable function where the court has patently misunderstood a party . . . or has made an error not of reasoning but of apprehension. . . ." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

<u>The Court misapprehended Count IV and, therefore, overlooked controlling precedent</u>.

2.     To state a claim for violation of her Free Speech rights pursuant to §1983 Plaintiff had to show that 1) she engaged in protected speech; and 2) Defendants retaliated against her because of her speech. (Mem. Op. May 6, 2016, pg. 7.)

3.     Adams alleged speech, informing the police of the verbal threat made against her after she tried to have [an] independent audit of the school board, is a matter of public concern. However, neither Eaves and Wright nor the Harvey Police Department were Adams' employers capable of rescinding her contract and therefore her complaint fails the second prong.  The police are not required to pursue every report.  Moreover, the police lack the authority to charge defendant Rogers with any crime. . . . [T]he retaliatory conduct of which Adams complains is unclear.  Based on the facts alleged in the Complaint, the only retaliatory conduct alleged appears to be rescission of her contract extension.  None of the Harvey defendants had personal involvement with that conduct, which is necessary to sustain a claim under 42 U.S.C. §1983.

(Mem. Op. May 6, 2016, pgs. 7-8.)

4.     Plaintiff respectfully submits that these excerpts show that the Court was "unclear" on the nature of the charge against Defendants and concomitantly the applicable law. *Id*. at pg. 8. Plaintiff did not/could not charge Defendants with retaliating against her on the basis of her contract being rescinded because as the Court points out they had nothing to do with the rescission of the contract.  Instead, Plaintiff charges that the Defendants retaliated against her by refusing to allow her to prosecute her criminal complaint against Rogers. (Plaintiff's Resp. To Defs.' 12(b)(6) Mot. to Dismiss Count IV of Cmplnt., pg. 6.)  The fact that Plaintiff had no right to prosecute her claim against Rogers nor the right to police protection is not dispositive under the Supreme Court's modern unconstitutional conditions doctrine: "Modern unconstitutional conditions doctrine holds that the government may not deny a benefit to a person on a basis that infringes [her] constitutionally protected freedom of speech even if [she] has no entitlement to that benefit." *Worrell v. Henry*, 219 F.3d 1197, 1205 (10th Cir. 2000) (ciatation omitted).

5.      Our constitutional conditions precedents span a spectrum from government employees, whose close relationship with the government requires a balancing of important free speech and government interests, to claimants for tax exemptions, users of public facilities, and recipients of small government subsidies who are much less dependent on the government but more like ordinary citizens whose viewpoints on matters of public concern the government has no legitimate interest in repressing. The First Amendment permits neither the firing of janitors nor the discriminatory pricing of state lottery tickets based the government's disagreement with certain political expression.

*Board of County Comr's, Wabunsee County Kan. v. Umbehr*, 518 U.S. 668, 680 (1996) (internal citations omitted).

In *Umbehr*, the county board terminated the automatic renewal of an at-will contract held by the Plaintiff Umbehr because he had frequently criticized the defendant board members for mismanaging public funds and other topics. *Id*. at 671.  Umbehr sued under Section 1983, claiming that his contract was terminated in retaliation for his exercising his right to free speech. *Id*. at 671-72.  The District Court assumed that Umbehr's contract was terminated because of his speech but held that he was not an employee of the county entitled to First Amendment protection and granted summary judgment for the county. *Id*. at 672.  The 10th Circuit reversed and held that Umbehr was entitled to the same First Amendment protection as an employee and remanded the case back to the District Court for further proceedings, including a determination of whether the termination was retaliatory. *Id*.

6.      The Supreme Court granted certiorari to resolve a split amount the Circuits, including the 7th Circuit, which had held that a non-employee contractor who did not have a property interest in the contract could have his his contract terminated in retaliation for exercising his free speech rights.  Applying the unconstitutional conditions doctrine, the Court rejected that position. *Id*. at 673, 680.

7.      "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a

4

different reason, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th

Cir.1987) (citations omitted). As the Supreme Court stated in *Mount Healthy City*

*Board of Education v. Doyle,* 429 U.S. 274, 283-84 (1977), a schoolteacher discharge case,

"[e]ven though he could have been discharged for no reason whatever, and had no constitutional

right to a hearing prior to the decision not to rehire him, he may nonetheless establish a claim to

reinstatement if the decision not to rehire him was made by reason of his exercise of

constitutionally protected First Amendment freedoms." (internal/external citations omitted).

> For at least a quarter-century, this Court has made clear that even though a person has no
> 'right' to a valuable governmental benefit and even though the government may deny
> him the benefit for any number of reasons, there are some reasons upon which the
> government may not rely. It may not deny a benefit to a person on a basis that infringes
> his constitutionally protected interests—especially, his interest in freedom of speech. For
> if the government could deny a benefit to a person because of his constitutionally
> protected speech or associations, his exercise of those freedoms would in effect be
> penalized and inhibited. This would allow the government to produce a result which (it)
> could not command directly. Such interference with constitutional rights is
> impermissible.

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (citation omitted) (listing cases).

8.      Based on this precedent, Defendants cannot be shielded from Plaintiff's retaliation claim

by virtue of the fact that they had discretion whether to arrest Rogers. In fact, most retaliation

cases involve a determination of whether a government official's motivation for his discretionary

act was impermissible retaliation or whether he was merely carrying out a legitimate

governmental purpose. *Grossbaum v. Indianapolis-Marion County Building Authority*, 100 F.3d

1287, 1294-95 (7th Cir. 1996) ("Claims of retaliation admittedly almost always turn on the issue

of motive.")

9.      Likewise, the fact that Illinois law vests the State's Attorney with the exclusive power to

bring criminal charges does not shield Defendants. 55 ILCS 5/3-9005(a)(1); 725 ILCS 5/111-1.

On the contrary, the fact that Defendants, atypically, told Plaintiff that she could not prosecute Rogers without ever referring the complaint and their investigative findings to the State's Attorney--when considered in the light most favorable to Plaintiff--buttresses the allegations that Defendants retaliated by preventing Plaintiff from prosecuting criminal charges. *Rakovitch v. Wade,* 850 F.2d 1180, 1197 (7th Cir. 1988) *abrogated on other grounds by Spiegla v. Hull,* 371 F.3d 928, 941-42 (7th Cir. 2004) (noting that competent police officers are expected to investigate crime and turn over their notes to a prosecutor who is the ultimate arbiter of whether to file charges). This is true even if we assume *arguendo* that Defendants had discretion whether to refer the complaint to the State's Attorney. Plaintiff has averred a viable claim that the reason Defendants refused to arrest Rogers or refer the case to the State's Attorney was to punish her for engaging in protected speech. "Any form of official retaliation for exercising one's freedom of speech is actionable as an infringement of that freedom." *Smart v. Board of Trustees of University of Illinois*, 34 F.3d 432, 434 (7th Cir. 1994), *abrogated on other grounds by Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001).

10.     It is long settled that Defendant Harvey could not pass a law that prevented Plaintiff from engaging in free speech, nor could Harvey's police apply its constitutionally valid laws in a manner that impinged Plaintiff's free speech. *Cantwell v. State of Connecticut*, 310 U.S. 296, 303-04 (1940*); Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1174, 1180-81 (11th Cir. 2009). Thus, the unconstitutional conditions doctrine applicable here simply prevents Defendants from doing what they could not do directly by indirect means. *Perry v. Sindermann*, 408 U.S. at 597 (citation omitted) (purpose of unconstitutional conditions doctrine is to prevent government from using indirect means to punish speech). Put another way, just as Harvey could not require citizens to swear an oath not to criticize the mayor and his cronies as a condition for receiving

6

police protection and access to the courts to prosecute criminal complaints, Defendants cannot

punish Plaintiff by denying her police protection and access to the courts because she brought

criminal charges against one of the mayor's political cronies.

11.     The instant case is similar to *Bart v. Telford*, 677 F.2d 622, 624-25 (7th Cir. 1982)  where

Judge Posner reversed a dismissal pursuant to 12(b)(6) after accusing the District Court  of

reading the allegations in the complaint "too narrowly." *Id*. at 625-26. In *Bart*, the plaintiff

brought a § 1983 suit alleging that her government employer retaliated against her after she

announced that she would run for mayor. *Id*. at 624.  The complaint averred two distinct

retaliatory allegations: 1) that the employer forced her to take a leave of absence after she

announced her candidacy; and 2) that after she returned to work she was subjected to a series of

petty insults after she expressed her views in public. *Id*. Judge Posner agreed with the dismissal

of the part of the complaint related to the first allegation because, *inter alia*, plaintiff did not have

a constitutional right to run for office. *Id*. at 625.  But he held that the court erred because it

overlooked the second allegation in the complaint that the plaintiff was subjected to a campaign

of petty harassment after expressing her views in public. *Id*.  The Panel held that those

allegations sufficed to withstand a 12(b)(6) motion. *Id*.

12.     Here, just as in *Bart*, Plaintiff alleged two distinct acts of retaliation:  direct retaliation

(Count I) alleging rescission of her contract extension because she engaged in protected speech

when she made a police complaint against Rogers after he threatened her; and indirect retaliation

(Count IV) alleging that she was deprived of the benefit of being able to prosecute her criminal

complaint because she engaged in protected speech when she made a police complaint against

Rogers. *Id*. at 624.   However, the Court, as in *Bart*, narrowly construed the complaint and

focused only on the direct retaliation. *Id*. at 625.  Therefore, it dismissed after concluding,

correctly, that Defendants could not be held liable for the direct retaliation and Plaintiff did not

have a constitutional right to police protection. But the Court overlooked allegations in the

complaint that the reason Defendants refused to arrest Rogers and prevented Plaintiff from

prosecuting him was to retaliate against her because of her protected speech. As in *Bart*, those

allegations were sufficient to establish a First Amendment retaliation claim under the

unconstitutional conditions doctrine. *Board of County Comr's, v. Umbehr*, 518 U.S. at 680.

Therefore, Defendants' motion to dismiss for failure to state a claim should have been denied.

*Bart v. Telford*, 677 F.2d at 625.

       <u>The Court erred because it disregarded allegations in the complaint that satisfied Monell.</u>

13.     To make out a §1983 claim against Defendant Harvey, Plaintiff had to allege either

Harvey had an express policy that caused her injury, Harvey had a widespread custom or practice

that caused her injury or one of the Defendants with final policymaking authority caused her

injury. (Mem. Op. May 6, 2016, pg. 8) (citations and quotations omitted). This is the so-called

*Monell* standard from the seminal case *Monell v. New York City Dep. of Social Services*, 436

U.S. 658 (1978).

14.     The Court held that Plaintiff failed to meet the *Monell* standard because "[t]he Complaint

simply alleges that 'Wright and Eaves' blocked her from filing a criminal complaint. This

allegation is simply a conclusion. The allegation does not indicate Eaves role or anything more

than a bare 'the defendant harmed me' accusation." (Mem. Op. May 6, 2016, pg. 8) *citing*

*Ahcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15.     The Court is correct that *Iqbal* rejects conclusory allegations as insufficient to survive a

motion to dismiss *Iqbal*. *Id*. However, the Plaintiff respectfully submits that the Court erred

because it only applied one prong of the two pronged test enumerated in that case. *Id*. at 679-80.

In *Iqbal*, the Court stated that the first step was to identify conclusory statements in the complaint, which although permissible to help provide "the framework of the complaint" should not be taken as true. *Id*. at 679-80. The second part of the analysis is for the court to apply its "judicial experience and common sense" to the remaining well-pled allegations to determine if they aver facts, taken as true, that demonstrate a plausible claim. *Id*.

16.     Here, the Court applied the first prong but overlooked the remaining well-pled allegations that satisfied two of the three prongs of the *Monell* standard. First, it should be noted that Plaintiff averred that Eaves and Wright blocked her from filing a criminal complaint to provide a framework for the complaint by making clear that Plaintiff was not making a general failure to protect claim on account of Eaves and Wright failing to arrest Rogers. Rather, she averred that Eaves and Wright affirmatively sought to prevent (block) her from prosecuting her complaint in order to retaliate against her for speaking out against Rogers, one of Harvey's political elites.

17.     Second, even if the offending allegation and all allegations using the term block or blocked are deemed conclusory and removed from the complaint, Plaintiff has still satisfied *Monell*: she alleged Eaves is the Acting Chief of Police with policymaking authority during the relevant time period of the events alleged in the complaint (Cmplnt.¶ 16) ; Rogers and his wife were close political allies of the mayor who showered the mayor with over $300,000 (Cmplnt. ¶¶'s 19-20); Plaintiff met with Wright twice to discuss a criminal complaint against Rogers after he threatened her when she asked for an audit of the district's finances (Cmplnt. ¶¶'s 27-28, 30) ; Wright told her at the second meeting she could not file a criminal complaint and she had to address the matter with the Board of Education, which included Rogers himself and his wife, even though he knew the Board had already refused to act after Plaintiff complained (Cmplnt. ¶¶'s 29-30); the City of Harvey has a long history of police corruption (Cmplnt. ¶ 57); the mayor

9

has used the police to illegally punish his enemies and reward his friends (Cmplnt. ¶ 58); Harvey

is responsible for the custom of police corruption that led to Wright and Eaves retaliating against

Plaintiff (Cmplnt. ¶ 61); and Harvey failed to address training and supervisory deficiencies

identified by the U.S. Department of Justice, which led to the harm suffered by Plaintiff (Cmplnt.

¶¶'s 58, 61).

18.     These well-pled allegations, taken as true, raise a plausible claim under the

custom and policymaker prongs of *Monell. Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650,

675 (7th Cir. 2012) (municipal liability based on well-established custom); *Erwin v. Cnty. Of

Manitowac,* 872 F.2d 1292, 1297-98 (7th Cir. 1989) (indifference to need to train shows policy of

municipality).


WHEREFORE Plaintiff respectfully requests that the Court vacate its Order dismissing

Count IV of the complaint.



Date June 3, 2016                                      Respectfully Submitted,


                                                      By: /s/ Jerome M. Davis, Esq.
                                                          Jerome M. Davis, Esq.
                                                          Attorney for Dr. Denean Adams

Jerome M. Davis, Esq. (ARDC#6273828)
9024 McIntosh Court
Lakewood, Illinois 60014 847-606-6685