IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. DENEAN ADAMS | ) | No. 15C8144 |
| | ) | |
| Plaintiff, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| BOARD OF EDUCATION HARVEY SCHOOL | ) | |
| SCHOOL DISTRICT 152, GLORIA JOHNSON | ) | |
| in her individual capacity, BETTY JOHNSON, | ) | |
| in her individual capacity, DR. KISHA | ) | |
| MCCASKILL, in her individual capacity, | ) | |
| JANET ROGERS, in her individual capacity, | ) | |
| TYRONE ROGERS, in his individual capacity, | ) | JURY TRIAL DEMANDED |
| LINDA HAWKINS, in her individual capacity, | ) | |
| FELECIA JOHNSON, in her individual | ) | |
| capacity, | ) | |
| | ) | |
| | ) | |
| CITY OF HARVEY, ILLINOIS, DENARD | ) | |
| EAVES, in his individual capacity, and | ) | |
| RICHARD WRIGHT, in his individual | ) | |
| capacity | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Dr. Denean Adams ("Plaintiff") by her attorney, Jerome M. Davis, Esq., brings this Complaint against Gloria Johnson, in her individual capacity, Betty Johnson, in her individual capacity, Dr. Kisha McCaskill, in her individual capacity, Janet Rogers, in her individual capacity, Tyrone Rogers, in his individual capacity, Linda Hawkins, in her individual capacity, Felicia Johnson, in her individual capacity, City of Harvey, Illinois, Denard Eaves, in his individual capacity, and Richard Wright, in his individual capacity (collectively "Defendants"), and alleges the following in support hereof:

1

# INTRODUCTION

1. This action is being brought pursuant to 42 U.S.C § 1983 for violation of Plaintiff's rights under the First Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment and the Fourteenth Amendment of the United States Constitution for violation of her due process rights. Defendants illegally retaliated against Plaintiff because she made a police report after she was threatened with physical violence by Defendant Tyrone Rogers who became enraged when she asked members of Harvey District 152's Board of Education (collectively "Board") to authorize a forensic audit to investigate potential fraud and abuse of governmental education funding. The Board rescinded its previously approved extension of Plaintiff's employment contract to punish her for making the police report. And Wright and his supervisor Eaves, acting under the direction of the mayor of Harvey, punished Plaintiff for filing a complaint against Rogers by protecting him from criminal prosecution.

# JURISDICTION AND VENUE

2. This action is brought under the First and Fourteenth Amendments to the United States Constitution.

3. The events giving rise to this action occurred in this district.

4. Jurisdiction over the constitutional causes of action lies here under 28 U.S.C. § 1331.

5. Venue lies here pursuant to 28 U.S.C. § 1391 (b).

## THE PARTIES

6. Plaintiff was formerly employed as the Superintendent of Harvey Public School District 152 ("District 152") under a multi-year employment agreement, which began July 1, 2013 and ended June 30, 2016 (the "Contract"). She is and was a citizen of the United States at all times relevant to this suit.

7. Defendant Board of Education Harvey School District 152 is a municipality organized under the laws of the state of Illinois. It is charged with setting policy for Harvey School District 152.

8. Defendant Gloria Johnson is the current president of the Board of Education Harvey School District 152 and, as such, was the head official for the policymaking body for District 152 during most of the time relevant to this suit.

9. Defendant Betty Johnson is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

10. Defendant Dr. Kisha McCaskill is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

11. Defendant Janet Rogers is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit and the former Board president.

12. Defendant Tyrone Rogers is the husband of Janet Rogers and is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

13. Defendant Linda Hawkins is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

14. Defendant Felicia Johnson is and was a member of the Board of Education Harvey School District 152 during all times relevant to this suit.

15. Defendant City of Harvey, Illinois is a municipality organized under the laws of the state of Illinois, which is charged with setting policy for the City of Harvey.

16. Defendant Denard Eaves is the Acting Chief of Police for the Harvey Police Department, and, as such, has and had policy making authority for the department during all times relevant to this suit.

17. Defendant Richard Wright is a police Detective employed by the Harvey Police Department during all times relevant to this suit.

## STATEMENT OF FACTS

18. Plaintiff is an educator who has worked in multiple school districts throughout this state during her 25-year career.

19. In 2013, Plaintiff entered into a 3-year contract from July 1, 2013 through June 30, 2016 to become the Superintendent for Harvey School District 152 (the "Contract"). District 152 is comprised of 2,100 students in 8 schools. Over 95% of students come from households below the state's poverty level. She replaced Harvey Mayor Eric Kellogg who had held the Superintendent post while simultaneously holding the position of mayor. Kellogg's appointment as Superintendent was mired in controversy because those board members voting for him included his sister, cousin and two city employees.

20. During Kellogg's tenure, the number of students meeting or exceeding the state's academic guidelines declined. However, despite the poor performance, the Board, including Janet Rogers who was the Board president, voted to reward Kellogg with a pay and benefit package estimated at more than $300,000.

21. Pursuant to the terms of Plaintiff's employment contract, she and the Board could mutually agree to extend the agreement at any time prior to its expiration.

22. However, the Contract could not be extended unless Plaintiff met specific goals for student academic achievement and teacher development. The Contract required Plaintiff to report to the Board each year on progress toward achieving the performance goals; and Plaintiff and the Board were required each year to mutually determine if the performance goals needed to be augmented or modified.

23. On February 19, 2015, Plaintiff was given the Board's Performance Evaluation for the 2014-2015 school year. Plaintiff was deemed to be performing good-very good in every category measured. There was no category where Plaintiff was deemed to be performing unsatisfactorily. Consequently, the Board approached Plaintiff about extending the Contract for 1-year.

24. Plaintiff and the Board mutually agreed to a 1-year extension of the Contract and the Board voted to approve the extension on February 23, 2015. The Board's approval of the extension was documented in the Board Minutes disseminated to the public.

25. In May 2015, Plaintiff informed the Board that she had serious concerns regarding possible financial irregularities with the way that state and federal funds were being used by the District. Plaintiff asked the Board to approve a forensic audit of the District's finances after uncovering over $500,000 in annual payments to a contractor for services that were not clearly identified, overpayment of salary to an employee who was terminated by the District, thousands of dollars of improper payments for the District's summer school program, and many other questionable expenditures. In response to Plaintiff's request, the Board authorized Plaintiff to prepare a proposal for hiring a forensic auditor.

26. In June 2015, the Board held its annual retreat to review Plaintiff's progress toward achieving the District's academic and performance goals. No major issues were raised regarding Plaintiff's job performance.

27. On July 9, 2015, Plaintiff sent the Board a draft of the proposal to hire an outside forensic auditor. Defendant Tyrone Rogers became enraged upon reading the proposal and called Plaintiff and threatened that she was "itching for an ass-kicking."

28. The next day, Plaintiff met with Detective R. Wright of the Harvey Police Department to discuss filing a criminal complaint against Rogers. She told Wright that she wanted to discuss what happened with the Board before proceeding to file formal charges. Plaintiff subsequently spoke with the Board president Gloria Johnson and told her what happened. Johnson indicated that she would take the issue up with the entire Board.

29. Plaintiff waited a couple of days to see what action the Board would take. However, the Board failed to even address the issue. Therefore, she decided to contact the police to file formal charges.

30. On July 13, 2015, Plaintiff met with Wright to file a formal complaint and informed him that Rogers had threatened her with physical violence after she issued a proposal for an audit of District 152's finances. However, Wright told Plaintiff that she would have to address the issue with the Board and refused to allow Plaintiff to file a criminal complaint.

31. On July 22, 2015, the Board held its monthly Board meeting. Plaintiff was summoned into closed session at that meeting and informed that the Board had several issues with her job performance and was considering whether to rescind the one-year contract extension it had approved in February 2015. However, there was no formal vote on the matter, and Plaintiff was

not given notice of the charges against her, nor was she informed if the Board intended to take any formal disciplinary action.

32.     On August 17, 2015, the Board voted to rescind the 1-year extension of Plaintiff's contract, which it had approved in February 2015.  A written resolution was issued stating that the Board had determined that Plaintiff had failed to clearly meet the Board's expectations on certain performance related matters.  Again--as she had done at the July 22, 2015, closed session Board meeting where the Board had first mentioned it had several issues with Plaintiff's job performance-- Plaintiff asked if she could have a written explanation identifying the specific performance issues.

33.      Plaintiff was given a document titled Partial Performance Evaluation and Directives for Superintendent Dr. Denean Adams as she exited the room.  The Board then voted to rescind the 1-year extension after Plaintiff left the room.

34.     Plaintiff never received a written notice of the charges against her prior to the Board voting to rescind her Contract extension, nor was she given an opportunity to respond to the charges either before or after the Board voted to rescind the extension.

## COUNT I
## (42 U.S.C. § 1983-1st Amendment)

35.     Plaintiff hereby incorporates and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein.

36.     Plaintiff exercised her right as a private citizen when she made her criminal complaint against Rogers.

37. Plaintiff's complaint related to gross official misconduct by a public official accused of threatening a public employee because she wanted to have an audit to assure that public funds were not being misused.

38. The Board retaliated against Plaintiff for filing a complaint against Rogers by rescinding the 1-year extension of her contract that it had previously approved. The Board used the pretext of performance issues to retaliate against Plaintiff.

39. Acting under the color of law, the Board used its final policymaking authority over District 152 to engage in conduct aimed at punishing, harassing and intimidating Plaintiff from engaging in her right to speak on matters of public concern.

40. The Board's conduct is part of a custom of cronyism and public corruption that exists in District 152 where the Board protects its own and punishes anyone who dares to speak against them.

41. Therefore, after being made aware of Rogers' criminal conduct and the reason he threatened Plaintiff, the Board decided to ratify his actions by failing to take any action against Rogers and by punishing, instead of protecting, Plaintiff.

42. The Board, in concert, acted willfully and maliciously and in total disregard of Plaintiff's constitutional free speech rights. Moreover, the Board knew that its conduct violated Plaintiff's rights.

## COUNT II
### (42 U.S.C. §1983-14th Amendment)

43. Plaintiff hereby incorporates and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein.

44. Plaintiff was employed under a Contract that included a benefit that allowed the parties to extend the term of the Contract.

8

45. The parties mutually agreed to extend Plaintiff's Contract, and the Board publicly affirmed the agreement to extend the Contract by voting in February 2015 to extend the Contract for 1-year.

46. However, Plaintiff's mutually agreed upon benefit was taken away as the result of the Board's disciplinary action on August 17, 2015.

47. Plaintiff was never afforded written notice of the formal charges against her or an opportunity to answer them before the Board rescinded the extension of her Contract. Nor was she given an opportunity to address the charges after the Board made its decision on August 17, 2015.

48. Plaintiff's interest in the continued enjoyment of the right to practice her profession has been substantially harmed by the Board's actions, and Plaintiff has suffered significant monetary loss, emotional pain and diminished personal and professional standing in the community as a result of the fact that the board publicly announced that her Contract extension had been rescinded.

49. The Board as the final policymaker for District 152 has a custom and practice of allowing its members to threaten and intimidate employees of the District and that custom is responsible for Rogers threatening Plaintiff with violence when she suggested an audit of the District's finances.

## COUNT III
### (42 U.S.C. §1983-1st Amendment)

50. Plaintiff hereby incorporates and realleges the allegations of paragraphs 1 through 34 as though fully set forth herein.

51. Plaintiff exercised her right as a private citizen when she made her criminal complaint against Rogers on July 10th and 13th.

9

52. Plaintiff's complaint related to gross official misconduct by a public official accused of threatening a public employee because she wanted to have an audit to assure that public funds were not being misused.

53. Eaves, a policymaker for the City of Harvey's ("Harvey") police department, and Wright used their positions in the Harvey police department to retaliate against Plaintiff by refusing to allow her to pursue criminal charges against Rogers after he threatened her.

54. Janet and Tyrone Rogers are close friends and important allies of Mayor Eric Kellogg. Tyrone Rogers has been employed by the mayor in various positions since the mayor was first elected in 2003. Tyrone Rogers used his position as president of the Board for District 152 to appoint Kellogg as the superintendent for District 152 while Kellogg was simultaneously holding the position as mayor of Harvey. Rogers was employed by the mayor when he voted to appoint him to the superintendent's post.

55. Kellogg's salary as superintendent was more than double his pay as mayor, and Rogers, Kellogg's sister and cousin joined with another one of Kellogg's employees to give him the job without ever conducting a search for other qualified candidates.

56. Janet Rogers owes Kellogg for her seat on the Board, because he used his position as mayor to push for her to receive a pardon from the Governor. It was that pardon that allowed Janet Rogers to be seated on the Board, as she had been convicted of a crime.

57. Janet Rogers subsequently became president of the Board, and she and her husband Tyrone Rogers reciprocated for Kellogg's support by voting to give him over $300,000 in cash and benefits after his failed tenure as superintendent of District 152.

58. Harvey and Kellogg have a long history of police corruption, which has been investigated by federal and state agencies.

59. Kellogg and the city have a history of using the police to punish enemies and reward allies. For example, the City recently paid $1,400,000 to a citizen who was falsely accused of a gun charge by police who were acting on orders from Kellogg.

60. In another instance, a police detective testified that Kellogg ordered him to remove a gun taken in evidence of a crime and return it to a friend of Kellogg.

61. Kellogg and Harvey were sued for violating the civil rights of private citizens who had a disagreement with one of Kellogg's employees who, like Rogers, was also a close friend and ally. Kellogg was accused of going to the plaintiffs' home in another jurisdiction with four squadrons of armed Harvey police in order to intimidate and harass them because their six-year old daughter had got into an argument with Kellogg's god-daughter.

62. The plaintiffs averred that Kellogg had a "loyalty policy" of using his position to protect his friends and retaliate against those who challenged them.

63. On information and belief, immediately after the July 10, 2015, meeting with Plaintiff, Wright informed Kellogg that Plaintiff had charged Rogers with threatening her after she requested an audit. Kellogg then told Wright and Eaves that they could not arrest Rogers even though they had probable cause to do so and to make sure that no criminal charges were filed.

64. When Plaintiff contacted Wright on July 13, 2015, to file a formal complaint against Rogers, she was told that she could not file a complaint and that she had to work the matter out with Rogers and the Board. Plaintiff pressed Wright on why he had changed his mind from what he told her on July 10 when he had said she had the right to press charges. But he only remarked that he had spoken with Rogers and others, whom he did not identify, and that the decision was made that she could not press charges.

65. Eaves supported Wright's decision to tell Plaintiff that she could not pursue criminal charges even though he and Wright knew that they had grounds to arrest Rogers based on Plaintiff's complaint.

66. In fact, on or about July 10, 2015, Eaves informed Plaintiff's relatives that Wright had informed him of Plaintiff's charges and Rogers' arrest was imminent.

67. Under direction from Kellogg, neither Wright nor Eaves ever investigated Plaintiff's charges nor did they prepare a report of their findings and send it to the State's Attorney for review and a charging decision, which is the normal process Harvey uses for criminal complaints.

68. Wright and Eaves used their positions to retaliate against Plaintiff by preventing her from filing a lawful complaint against Rogers and thereby willfully and maliciously sought to chill her free speech rights.

69. Harvey's police department has been the subject of multiple investigations by state and federal agencies that have identified numerous abuses and practices that violate the constitutional rights of citizens. For example, the Civil Rights Division of the U.S. Justice Department recently labeled the police department as "devoid of supervisory oversight and accountability" after a 3-year investigation into police brutality complaints.

70. Despite these findings, a recent investigation has found that Harvey has failed to implement the changes recommended by state and federal agencies to reform the police department.

71. Harvey is responsible for the culture of corruption and official misconduct that caused Eaves and Wright to retaliate against Plaintiff.

72. And Harvey's failure to properly train and supervise its officers despite a history of well-documented civil rights violations shows a conscious decision to violate Plaintiff's First Amendment rights or a reckless disregard for the violation of her constitutional right to free speech.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court:

A. Declares that the policies and practices enumerated herein are illegal and unconstitutional;

B. Issues a permanent injunction barring the Board and Harvey from retaliating against Plaintiff;

C. Awards compensatory damages from all Defendants in an amount to be determined at trial and $165,000 plus statutory pre-judgment interest thereon against the Board;

D. Awards punitive damages from Defendants Gloria Johnson, Betty Johnson, Dr. Kisha McCaskill, Janet Rogers, Tyrone Rogers, Linda Hawkins, Felicia Johnson, Denard Eaves, and Richard Wright in an amount to be determined at trial;

E. Awards reasonable attorney's fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

F. Awards such other relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a jury trial to hear the trial of this case.

Date July 9, 2016                                  Respectfully Submitted,

                                                   By: /s/ Jerome M. Davis, Esq.
                                                       Jerome M. Davis, Esq.
                                                       Attorney for Dr. Denean Adams

Jerome M. Davis, Esq. (ARDC#6273828)
9024 McIntosh Court
Lakewood, Illinois 60014
847-606-6685