# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DR. DENEAN ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 cv 8144 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| BOARD OF EDUCATION HARVEY SCHOOL ) | |
| DISTRICT 152, GLORIA JOHNSON, in her ) | |
| individual capacity, BETTY JOHNSON, in her ) | |
| individual capacity, DR. KISHA MCCASKILL, in ) | |
| her individual capacity, JANET ROGERS, in her ) | |
| individual capacity, TYRONE ROGERS, in his ) | |
| individual capacity, LINDA HAWKINS, in her ) | |
| individual capacity, FELICIA JOHNSON, in her ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Denean Adams, filed a three-count Second Amended Complaint, alleging retaliation in violation of her First Amendment and due process rights. The defendants, the Board of Education Harvey School District 152 and its individual members, move for summary judgment in their favor [109]. For the reasons stated herein, this Court grants in part and denies in part the motion.

**Background**

The following facts are undisputed.[1] Plaintiff, Dr. Denean Adams, was the superintendent of Harvey School District 152 from July 1, 2013 to June 30, 2016. Defendant Board of Education of

---

[1] Defendants filed a motion to strike Adams' Local Rule 56.1(b)(3)(B) responses to defendants' statements of material fact and have those facts deemed admitted [125] and a motion to strike Adams' Local Rule 56.1(b)(3)(C) statements of additional fact [126]. Defendants did not notice either motion for presentment under Local Rule 5.3(b). However, the Court is capable of parsing through the parties' submissions to determine the undisputed facts based on the record before the Court and to reject inappropriate argument and unsupported facts.

Harvey School District 152 ("the Board") is organized under the laws of the State of Illinois. Defendants Gloria Johnson, Betty Johnson, Janet Rogers, Tyrone Rogers, Felicia Johnson, Dr. Kisha McCaskill, and Linda Hawkins were members of the Board of Education of Harvey School District 152 while Adams' was superintendent. Gloria Johnson has been a Board member since 1993. Betty Johnson was a Board member from 2009 to 2017. Janet Rogers has a been a Board member since 2011 with a previous term from 1991-2004. Tyrone Rogers has been a Board member since 2004. Dr. Kisha McCaskill was a Board member from 2013 to 2017. Linda Hawkins has been a Board member since 1999.[2]

Adams was employed by the Board under a Superintendent Contract ("the Contract"), effective from July 1, 2013 to June 30, 2016. The Contract specifically provided:

> This Agreement shall not be extended or rolled over prior to its scheduled expiration unless the following performance and improvement goals have been met by the Superintendent:
> Goal 1: The Superintendent will provide leadership to improve student academic growth.
> Indicators: a. Each Fall, the Superintendent will evaluate and report to the Board on students' academic growth as measured by assessments used by the District.
> b. As part of the report, the Superintendent will make recommendations to the Board on how to improve growth.
> Goal 2: The Superintendent will provide leadership in strengthening the skills of all certified staff.
> Indicators: a. Each Spring, the Superintendent will evaluate and report to the Board of the then-current state of professional development of the certified, teaching staff.
> b. As part of the report, the Superintendent will make recommendations for continued and/or expanded professional development activities.

Dkt. 109-6, Ex. D, Superintendent Contract at ¶3.

---

[2] The parties did not state how long defendant Felicia Johnson had been a Board member with the Harvey School District 152.

The Board presented Adams with an extension of her Contract for one year under the same terms and conditions as her existing contract. She did not sign the Contract extension. On February 23, 2015, the Board voted in favor of the extension. Sometime after Adams received the Contract extension, her attorney sought to modify some of the terms of the Contract. The modifications specifically requested an increase in salary. At the July 22, 2015 Board meeting, Adams learned that the contract extension was no longer effective.

In the spring of 2015, Adams requested a forensic audit because she questioned several expenditures in the District. The Board voted to allow Adams to prepare a Request for Proposal requesting a forensic audit, which she submitted to the Board on July 9, 2015. That evening Adams received a phone call from defendant Board member Tyrone Rogers. Adams testified that Rogers told her she was "itching for an ass-kicking" in response to the forensic audit. Adams does not recall whether Rogers said anything else during their exchange. Rogers had never threatened Adams before.

On July 10, 2015, Detective Wright from the Harvey Police Department met with Adams at her office to discuss Rogers' comments. Adams reported Rogers' statements to Detective Wright, who prepared a police report. Adams agrees with the summary contained in the report, with the exception that she wanted to speak to the Board president and not the whole Board. It is unclear from the record who called the police. No criminal charges were filed against Tyrone Rogers. He learned of the police report the same day.

On the same date, Adams told Board president Gloria Johnson about the phone conversation with Rogers, who said she would inform the Board immediately. Adams testified that she had a conversation with Board member Janet Rogers, Tyrone Rogers' wife, about her husband's comment but she could not recall when that discussion took place. Janet Rogers stated in her affidavit that she discovered on July 12, 2015, that Adams had filed a police report against Tyrone.

Adams testified that she did not know if Janet Rogers was aware on July 9, 2015, of Tyrone's call to Adams. Linda Hawkins stated in her affidavit that she became aware in September 2015 that Adams contacted the Harvey Police Department about statements Tyrone Rogers made. Adams had never previously or subsequently complained about or reported any concerns about Tyrone Rogers to Hawkins.

Also on July 10, 2015, Janet Rogers came to Adams' office and told Adams that she had some concerns about Adams' job performance that she wanted to raise with the Board. At the July 22, 2015, meeting the Board discussed the concerns about Adams' job performance, including that Adams failed to notify the Board of a billing issue. During that meeting, attorney for the Board, John Izzo, informed the Board that the offer to extend Adams' contract was ineffective because Adams had not met her performance goals as set forth in her contract and required by Illinois law, 105 ILCS 5/10-23.8. The transcript of the July 22, 2015, meeting reflects that Attorney Izzo said that the performance goals needed to be specific and that the Board did not have any specific performance goals in place when they voted in February 2015 to extend Adams' contract. An individual on the transcript stated that generic goals were ineffective.[3] Someone in the meeting said, "Okay, we are going to say to her that we extended her contract prior to her evaluation being completed. So we have to make that null and void." Dkt. 113-2, Ex. P at 17, ln 1-4.

Adams testified that her performance was next discussed at the August 17, 2015, Board meeting. During that meeting the Board voted to rescind Adams' contract and provided her with a Partial Performance Evaluation and Directives. The performance directives included a discussion of the time Adams' spent outside the District for professional workshops. Adams stated in her affidavit that she was "not informed of what the specific performance issues were before the meeting, so

---

[3] The transcript does not identify most of the speakers, but it was a closed session of the Board and the Court will assume that the unidentified speakers were board members.

[she] was not prepared to make a fulsome response to the charges. And [she] was not given a chance to prepare a response to the charges[.]" Ex. A, Adams' Affidavit at ¶37. The Board did not raise any concerns about Adams' performance at the June 2015 Board retreat. In November 2015, Adams received a Notice to Remedy to which she responded on November 16, 2015.

After Dr. Kevin Nohelty, the District's business manager, failed to inform the Board of a transfer of $3.8 million out of the District's reserve funds in late December 2015, Adams suspended him with pay. Some members of the Board, including Tyrone Rogers, wanted Adams disciplined for suspending Nohelty. Tyrone Rogers testified that the Board would not be in the position of dealing with the Nohelty issue had the Board terminated Adams. Tyrone Rogers stated that "… her ass is in a sling, and now she wants to get his ass in a sling with her." Gloria Johnson expressed frustration that Adams was suing her. Hawkins stated that Adams suspended Nohelty as a conspiracy against the Board. The Board revoked Nohelty's suspension.

On or about December 21, 2015, the Board voted to issue a Notice of Nonrenewal of Adams' Contract, which was set to expire on June 30, 2016. Tyrone Rogers testified that he wanted to terminate her, but she was still under contract so they would have to pay her. The Board called a special meeting on December 28, 2015 and voted to place Adams on administrative leave or suspension. Janet Rogers testified that a Board meeting was scheduled for April 7, 2016, and that some people thought it was to terminate Adams' employment.

Adams filed the instant lawsuit on September 16, 2015, for issues she personally had with the Board and conduct directed at her. Adams testified that she was humiliated after filing the lawsuit because the posted Board meeting agendas listed potential action against Adams, the search for a new Superintendent took place while she was still present in the District, her email was deactivated, and the State of Illinois was notified that she was no longer Superintendent in the spring

5

of 2016. Adams was on medical leave from March 2016 through the end of her contract in June 2016.

**Legal Standard**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), *reh'g denied* (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)); Fed. R. Civ. P. 56(a). In deciding whether summary judgment is appropriate, this Court accepts the nonmoving party's evidence as true and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**Discussion**

Defendants move for summary judgment, arguing that Adams' statements to the police and in the instant lawsuit are not constitutionally protected speech. Defendants also contend they are entitled to judgment as a matter of law because Adams does not have a property right in her employment contract and was provided all that due process requires. We first turn to Adams' First Amendment claim.

*1. First Amendment Retaliation*

To establish a violation of her free speech rights, Adams must show "(1) that speech she engaged in was constitutionally protected under the circumstances, *Connick v. Myers*, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); and (2) that defendants retaliated against her because of that speech. *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)." *Barkoo v. Melby*, 901 F.2d 613, 617 (7th Cir. 1990). If Adams satisfies the first two steps, then the Court must assess whether the Board has demonstrated that it would have taken the same action irrespective of Adams' speech. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006).

As the Superintendent of a public school, Adams was a public employee and this Court must first determine whether she was speaking as a public employee speaking pursuant to her official duties, *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), or as a private citizen addressing matters of public concern, *Houskins v. Sheahan*, 549 F.3d 480, 489 (7th Cir. 2008). "The Supreme Court has defined 'public concern' to mean 'legitimate news interest,' or 'a subject of general interest and of value and concern to the public at the time of publication.'" *Meade v. Moraine Valley Cmty. College*, 770 F.3d 680, 684 (7th Cir. 2014) (*quoting City of San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004) (per curiam)). The Constitution may protect a public employee's speech if the speaker's motives included a desire to help the public. *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013). The inquiry into the protected status of speech is a question of law in which courts look to the content, form, and context of the statement to make the determination. *Id.* This Court must look at "the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern because they are of public concern? Or was the point to further some purely private interest?" *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985).

Here, there are two statements at issue, Adams' police report and its supplement, and her lawsuit. Neither of these statements made were pursuant to Adams' official duties as Superintendent. Although her request for a forensic audit of the District's finances that Adams made to the Board could be construed as a statement made as part of her official duties, her report to the Harvey Police that Board member Tyrone Rogers called her at home to threaten her in response to her request for a financial audit of Harvey School District 152 is a statement made as a private citizen. The point of the police report was to bring to light wrongdoing by a member of the school board. The fact that the threat was directed solely at her does not mean that her objective in reporting the incident to the police is purely private. Indeed, the context of the report indicates that she wanted to address the

7

incident with the Board before proceeding with the report. Thus, this Court finds that her statements to the Harvey Police are protected speech. Her lawsuit however is not protected speech since it is simply an employment discrimination case that cannot be construed as an effort to bring some wrongdoing to public light.

Unlike the police reports in *Houskins v. Sheahan*, 549 F.3d 480, 492-93 (7th Cir. 2008), and *Nelson v. Bd. of Educ., Country Club Hills*, 292 F.Supp.3d 792, 798 (N.D. Ill. 2017) (Coleman, J.), where the police reports were made for personal grievances, assault by a colleague in *Houskins*, and verbal threat by a pupil's parent in *Nelson*, with no element of public concern, Adams' report against Tyrone Rogers specifically stated that it was in response to her request for an audit of the District's finances. This distinction takes Adams' report out of the purely private grievance into the realm of public concern. *See Kristofek*, 712 F.3d at 986 ("if an objective of the speech was also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern.").

Next, the Court must consider whether the defendants retaliated against her based on that speech. Defendants contend that the Board's decision to rescind Adams' contract extension and to issue performance directives was wholly unrelated to her police report against Tyrone Rogers. This Court finds there is a material issue of fact on this issue. While suspicious timing alone is rarely sufficient to establish retaliation, close temporal proximity between the protected conduct and the adverse employment action can be sufficient with other evidence to create a triable issue of fact. *See, e.g, Lang v. Illinois Dep't of Children & Family Servs.*, 361 F.3d 416, 420 (7th Cir. 2004) (finding that one month between a complaint of discrimination and negative performance review where all prior reviews were positive was sufficient to survive summary judgment).

The timing here is significant in that it was so short. As Adams points out the Board voted to extend her contract in February of 2015. At that time, they did not raise any performance issues

8

and there is nothing in the record to suggest that they were offering her an extension despite her not meeting some objectives or goals. The record further reflects that the Board held a retreat in June 2015 and there is no evidence that they raised any issues with her performance on that occasion either. Yet, on July 10, same day Adams report Tyrone Rogers' conduct to the police, Tyrone's wife and fellow Board member Janet Rogers told Adams that she had concerns about Adams' job performance that she wanted to raise with the Board. This Court finds that there are factual issues on the question of whether the Board's decision to rescind her contract extension and provide Adams with performance directives was motivated by Adams' statements to the police. For the same reasons, this Court finds that there are factual issues concerning the Board's position that it would have taken the same action without the existence of the protected speech.

The individual defendants argue that qualified immunity shields their conduct. This Court is unpersuaded. Generally, qualified immunity protects public officials from liability when their actions do not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Purvis v. Oest,* 614 F.3d 713, 720 (7th Cir.2010) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This involves two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir.2008) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This Court has found that there is a material question of fact as to whether defendants retaliated against her in violation of her First Amendment rights. An individual, even a public employee, had a clearly established right to free speech. *See Garcetti,* 547 U.S. at 421. Thus, this Court finds that defendants are not entitled to qualified immunity on this record. *Cf. Lane v. Franks*, 134 S. Ct. 2369, 2383, 189 L. Ed. 2d 312 (2014) (holding that the defendant was entitled to qualified immunity terminating the plaintiff because the question of

whether the plaintiff's testimony was entitled to First Amendment protection was not "beyond debate" in the Eleventh Circuit at the time the defendant acted.). Accordingly, this Court denies summary judgment on Count I for First Amendment retaliation for the police reports, but grants summary judgment on Count III for First Amendment retaliation based on the filing of this lawsuit.

*2. Due Process Violation*

This Court reaches a similar conclusion on Adams' claim that the Board violated her due process rights by rescinding her contract without adequate notice and hearing. Defendants argue that Adams did not have a property interest in her employment contract. To establish a violation of her due process rights, Adams must show that she had a cognizable property interest, that defendants deprived her of that interest in a way that violated due process standards. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014). To demonstrate a cognizable property interest in her continued employment as Superintendent in Harvey School District 152, Adams must be able to show that had some legitimate expectation of continued employment. Contractual language or State law limiting the Board's discretion to terminate her employment may support Adams' expectation of continued employment. *See Meade v. Moraine Valley Community College*, 770 F.3d 680 (2014).

Under the Illinois School Code, the Board makes all employment decisions pertaining to the superintendent. 105 ILCS 5/10–16.7. The School Code requires a performance-based contract for superintendents that includes "the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the superintendent and such other information as the local school board may determine." 105 ILCS 5/10–23.8. "No performance-based contract shall be extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals contained in the contract have been met."

Here, there are sufficient factual questions surrounding the extension of Adams' contract, whether the Board made any determination that her performance goals had been met when they voted to extend it, whether Adams accepted the extension and what affect her request for modifications had on that extension, and whether the Board gave her adequate notice of her performance deficiencies and hearing on the rescission of her contract. Indeed, the Board members themselves and their counsel expressed uncertainty as to whether the goals contained in Adams' contract were sufficiently specific. Accordingly, this Court denies summary judgment on this issue.

**Conclusion**

Defendants' motion for summary judgment [109] is granted as to Count III and denied as to Counts I and II. Jury trial set for October 29, 2018, to stand.

IT IS SO ORDERED.

Date: 9/18/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge