IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. DENEAN ADAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 15 C 8144 |
| | ) | |
| BOARD OF EDUCATION HARVEY | ) | Judge Coleman |
| SCHOOL DISTRICT 152, GLORIA | ) | |
| JOHNSON in her individual capacity, | ) | |
| BETTY JOHNSON, in her individual | ) | |
| Capacity, DR. KISHA MCCASKILL, | ) | JURY TRIAL DEMANDED |
| in her individual capacity, JANET ROGERS, | ) | |
| in her individual capacity, TYRONE | ) | |
| ROGERS, in his individual capacity, | ) | |
| LINDA HAWKINS, in her individual | ) | |
| capacity, | ) | |
| FELICIA JOHNSON, in her individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION AND BRIEF IN
SUPPORT JUDGMENT AS A MATTER OF LAW ON COUNT I – RETALIATION**

NOW COME the Defendants BOARD OF EDUCATION HARVEY SCHOOL DISTRICT 152, GLORIA JOHNSON, BETTY JOHNSON, DR. KISHA MCCASKILL, JANET ROGERS, TYRONE ROGERS, LINDA HAWKINS and FELICIA JOHNSON, by and through one of their attorneys, Christopher L. Petrarca of HAUSER, IZZO, PETRARCA, GLEASON & STILLMAN LLC and for their Motion and Brief in Support of Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a) state as follows:

1

**Background**

This case involves an employment dispute where the former superintendent of School District 152, Dr. Denean Adams ("Plaintiff"), alleges that an offer to extend her employment agreement beyond its original term was rescinded based upon her exercise of protected First Amendment activity.

The evidence elicited at trial shows that, Plaintiff is the former superintendent of Harvey School District 152. The various individual defendants were, at all times relevant to this matter, members of the Board of Education of Harvey School District 152. The Board of Education of Harvey School District 152 (the "Board") is the entity charged with setting policy for District 152.

Plaintiff signed a performance-based, multi-year employment contract that ran from July 1, 2013, until June 30, 2016 ("the Contract"). Pursuant to Illinois law and the contract at issue, a multi-year employment contract for a superintendent can only be extended if the Board of Education determines that the goals and indicators of student performance have been. *See* 105 ILCS 5/10-23.8; Superintendent Contract at ¶3. While the Contract was in effect and on February 23, 2015, the Board voted to offer an extension of the Contract for one year which would have been the 2016-2017 school year. The extension was not reduced to writing or signed by the parties. The Contract plainly required that "no subsequent alteration, amendments, changes or addition to this contract shall be binding upon the parties unless reduced in writing and duly authorized and signed by each of the parties." (Superintendent Contract ¶7). In addition, Plaintiff's counsel made a counter-offer to the extension offer by requesting, among other things, a higher salary to be paid for the year of the extension.

Upon Plaintiff's request, the Board approved a request for proposal to hire a firm to perform a forensic audit of the District's finances on July 9, 2015. According to Plaintiff, Mr. Tyrone

Rogers, a Board member, allegedly called her that evening and told her that she was "itching for an ass-kicking" due to the scope of the proposed audit. Plaintiff originally spoke to a single board member about Mr. Roger's threat and later filed a police report due to that alleged threat. She emphasized during her testimony that she was scared and this was the reason that she filed the underlying police report. It is the contention of Plaintiff that the filing of her police report is the reason that the contract extension was rescinded and that this decision was in violation of her First Amendment rights.

## **LEGAL STANDARD**

"If, reviewing that evidence in the proper light, the nonmoving party did not introduce enough to support her claim, then judgment as a matter of law is correct." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000) (affirming trial court's grant of judgment as a matter of law under Fed R. Civ. Pro. 50(a)). "The standard for granting judgment as a matter of law 'mirrors' the standard for granting summary judgment." *Pandya v. Edward Hosp.*, 1 F. App'x 543, 545 (7th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2109 (2000)). Under Rule 50(a):

> **(1)** *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> **(A)** resolve the issue against the party; and
> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> **(2)** *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a).

**ARGUMENT**

I.  **Plaintiff has not presented sufficient evidence to establish First Amendment retaliation claim as a matter of law.**

To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected. *Swetlik v. Crawford,* 738 F.3d 818, 828 (7th Cir. 2013). In order for a public employee's speech to be protected, the employee must establish that she spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). The determination of whether speech is constitutionally protected is a question of law. *Houskins v. Sheahan,* 549 F.3d 480, 489 (7th Cir. 2008). If the Plaintiff can demonstrate constitutionally protected speech, the court must then assess whether the plaintiff has demonstrated that the allegedly retaliatory activity was motivated by the constitutionally-protected speech. *Phelan v. Cook County,* 463 F.3d 773, 790 (7th Cir. 2006). If the Plaintiff can show that she engaged in constitutionally protected speech and that a retaliatory activity was motivated by the speech, then the Court must assess whether the defendant can demonstrate that it would have taken the same action irrespective of the plaintiff's speech. *Id.*

   a. **Plaintiff's Police Report About Mr. Rogers' Conduct was Not a Matter of Public Concern**

Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement. *Connick v. Myers,* 461 U.S. 138, 147-148 (1983). The *Connick* test requires the Court to look at the overall objective or point of the speech as ascertained by those three factors. *Kristofek v. Village of Orland Hills*, 712 F. 3d 979, 985 (7th Cir. 2013). Of the three factors, content is the most important, but the subject matter of the speech is not determinative. *Bivens v. Trent,* 591 F.3d 555, 560-561 (7th Cir. 2010).

When analyzing the content of the speech, the broad subject matter is not determinative, and the Court must focus on the particular content of the speech. *Kubiak v. City of Chicago,* 810

F.3d 476, 483 (7th Cir. 2016) *citing Bivens,* 591 F.3d at 560-561.  In addition, while the fact that an employee's speech may touch on an issue of public import does not automatically render her remarks on the subject protected.  *Bivens,* 591 F.3d at 560-561 *citing Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis,* 42 F.3d 403, 410 (7th Cir. 1994).  Rather, the motive of the speaker is a relevant, though not dispositive, factor because speech will not be protected if the only point of the speech was to further some purely private interest.  *Kokkins v. Ivkovich,* 185 F.3d 840, 844 (7th Cir. 1999).  If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern.  *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994).

The testimony set forth by Plaintiff in this case is that she was retaliated against by the Board because she filed a police report regarding the conduct of Mr. Rogers.  Plaintiff's testimony, however, made it very clear that she made the complaint due to her fear and to protect her individually if Mr. Rogers did anything in the future.

The Seventh Circuit Court of Appeals has repeatedly held that the reporting of threats of physical violence is not speech protected by the First Amendment as a matter of law.  In *Houskins v. Sheahan,* 549 F.3d 480 (7th Cir. 2008), an employee of the Cook County Sheriff's Office was struck in the face by a correctional officer during an argument between the two in workplace parking lot.  *Id.* at 483-484.  She reported the incident to the Internal Affairs Division and filed a police report seeking to have her co-worker arrested.  *Id.* at 484.  The plaintiff was eventually disciplined for her role in the argument through a suspension without pay.  *Id.* at 485.  Thereafter, she filed a First Amendment retaliation claim alleging that she was disciplined in retaliation for her protected speech in reporting the incident.  *Id.*  The Seventh Circuit Court of Appeals reversed a jury award in favor of the plaintiff and determined that her speech was not protected by the First

5

Amendment. Addressing her filing of the police report, the Seventh Circuit found that the speech at issue served a personal or private interest and was not protected. *Id.* at 491-492. Specifically the Court found that, "the police report was nothing more than [plaintiff's] personal grievance against [her co-worker] in order to have him arrested for striking her." *Id.*

A similar issue was decided in *Kubiak v. City of Chicago,* 810 F.3d 476 (7th Cir. 2016). In *Kubiak,* a Chicago Police officer filed a complaint about being verbally assaulted and threatened by a co-worker. *Id.* at 479. Subsequent to filing this complaint, the plaintiff was removed from her assignment within the department and filed a First Amendment retaliation claim against the City of Chicago. *Id.* The District Court granted the City's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) finding , among other things, that her speech did not address a matter of public concern. This determination was affirmed by the Seventh Circuit Court of Appeals which also concluded that the plaintiff's complaints did not address a matter of public concern. Specifically, the Seventh Circuit Court of Appeals noted that "the precise content of [plaintiff's] speech focused on the work-related incident with [the co-worker] and on [plaintiff's] concerns about her own safety." *Id.* at 483. It further analogized that the context of the complaint itself focused on the concerns of what could have happened to her.

Similar to the plaintiffs in *Kubiak* and *Houskins,* Plaintiff's statements to the Harvey Police Department were about an individual threat made to her. The purpose of the complaint was not to bring light to the situation but, instead, to seek protection from the police department and to request that it take appropriate action against Mr. Rogers. The expression by Plaintiff to the police department only addressed the personal effect of Mr. Rogers' conduct upon her and was made to support her purely personal purpose of seeking protection. This statement, which is Plaintiff's

6

only evidence of protected speech at issue, was not a matter of public concern as a matter of law and, as such, judgment as a matter of law is appropriate.

      **b.     Plaintiff's statements regarding the financial condition of the District were not made as a private citizen but, instead, were part of her official duties.**

If an employee is not speaking as a private citizen, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, at 418 (2006). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. In order to determine if an individual is making a statement pursuant to her official duties the analysis, "requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Houskins v. Sheahan*, 549 F. 3d 480 at 490 (7th Cir. 2008). Instead, the Court "must make a practical inquiry into what [Plaintiff] was expected to do as an employee." *Kubiak v. City of Chicago*, 810 F. 3d 476 at 481 (7th Cir. 2016). When a public employee reports even potential official misconduct in the manner directed by official policy, to a supervisor, or to an external body with oversight responsibility, that speech is unprotected because the employee was speaking pursuant to her duties. *See Tamayo v. Blagojevich,* 526 F. 3d 1074, 1091 (7th Cir. 2008)(employee reported agency misconduct to legislative oversight committee); *Vose v. Kliment*, 506 F. 3d 565, 570-571 (7th Cir. 2007) and *Sigsworth v. City of Aurora,* 487 F. 3d 506, 511 (7th Cir. 2007)(police officers reported misconduct to supervisors).

The testimony establishes that Plaintiff's statements regarding the financial condition of the District were plainly within the confines of her professional responsibility. She unequivocally testified that as Superintendent she was responsible for the District's finances. Specifically, Board Policy made her responsible for the District's fiscal and business management. She was also

required to arrange for the annually mandated audit of the District funds, accounts, statements and other financial matters. In fact, the only reason she was privy to information regarding the forensic audit was in her role as Superintendent. The evidence is clear that as the individual responsible for the financial well-being of the District, Plaintiff had the responsibility and requirement to take action if there was an improper expenditure of funds.

This concept is well-established in case law. In *Battle v. Bd. of Regents for Georgia,* 468 F.3d 755 (11th Cir. 2006), an employee made repeated efforts to expose the improper financial aid awards and false information in student files made by her supervisor. The Eleventh Circuit Court of Appeals determined as a matter of law that her statements were made pursuant to her professional duties because she was required to ensure the accuracy and completeness of student files and to report mismanagement of fraud. *Id.* at 761. *See also, Schuster v. Henry County, Georgia,* 281 Fed.App.x 868 (11th Cir. 2008)(Director of Finance complaints to several other public officials about improper expenditures were statements made as part of his employment and not entitled to First Amendment protection.) In fact, reporting which is not specifically required is still a statement made pursuant to an employee's duties when the employee is required to account for the information within the allegedly protected speech. *Renken v. Gregory,* 541 F.3d 769, 773-774 (7th Cir. 2008)(Professor's statements calling attention to misuse of funds relating to a project that he was in charge of administering as a faculty member was speech as an employee, and not as a private citizen, because administering the grant within the teaching and service duties that he was employed to perform.) *Williams v. Dallas Independent School District,* 480 F.3d 689, 694 (5th Cir. 2007)(Athletic Director memorandum to Principal regarding misuse of athletic funds not protected by First Amendment as it was part of public duties).

Since the Plaintiff was required as part of her official duties to safeguard and maintain the financial operations of the District, any reports that she would make about any financial impropriety are plainly required by her position. As such, these statements which are made as a part of her employment cannot form the basis of a First Amendment retaliation claim as a matter of law because they are not protected statements as determined by *Garcetii* and its progeny.

### c. Even if Plaintiff's speech could be considered protected speech, she has failed to set forth evidence that it was a motivating factor in the decision to rescind the offer of a contract extension.

A party that bears the burden of proof on an issue is not entitled to rest on speculation and pleadings, but must demonstrate through evidence that there is a material issue of fact that must be resolved. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). In the context of a First Amendment retaliation claim, the Plaintiff must produce sufficient evidence to show that her purportedly protected speech was at least a motivating factor in the alleged retaliatory action and it can be shown through either direct or circumstantial evidence. *Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012).

In this case, Plaintiff's sole evidence of motive is found through a claim of suspicious timing. There is not a single piece of evidence other than timing which can establish that her filing of the police report was the motivation for the Board's decision to rescind its offer of a contract extension. She admitted that she was neither told, nor did she overhear, any Board members making a statement that the rescission of the contract extension offer was undertaken because she filed the police report against Tyrone Rogers. In addition, the unrebutted, sworn testimony of the Board members that she called as witnesses was that they did not rescind the contract because of the complaint filed against Tyrone Rogers and that they took the advice of their attorney on the validity of the extension offer.

Suspicious timing will "rarely be sufficient in and of itself to create a triable issue [of fact]." *Id. citing Culver v. Gorman & Co.,* 416 F.3d 540, 546 (7th Cir. 2005). The reason for this is that "[s]uspicious timing may be just that – suspicious – and a suspicion is not enough to survive a motion for summary judgment." *Loudermilk v. Best Pallet Co.,* 636 F.3d 312, 315 (7th Cir. 2011). It is clear that the time period between the protected activity and the adverse action must be "very close." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001). Under the Seventh Circuit's jurisprudence, to permit an inference of causation to be drawn solely on the basis of a suspicious timing argument, it typically allows no more than a few days to elapse between the protected activity and the adverse action. *Kidwell,* 679 F.3d 957, 966-967 (citing cases).

In this case, Plaintiff contends that she originally contacted the police on July 9, 2015 and the Board did not notify her of its intention to rescind the offer of a contract extension until July 22, 2015 – over two weeks later. This is not the mere couple of days which is sufficient to show causation standing alone under Seventh Circuit precedent.

Moreover, when there is a significant intervening event which separates an employee's protected activity from an adverse employment action, a suspicious timing argument will not prevail. *Davis v. Time Warner Cable of Se. Wis., L.P.,* 651 F.3d 664, 675 (7th Cir. 2011). In this case, such a significant intervening event occurred. Namely, the Board of Education was advised by its attorney that the extension provided to Plaintiff was not legally compliant and was ineffective. This evidence clearly breaks the causal chain presented by Plaintiff and makes the suspicious timing standing alone insufficient for purposes of demonstrating causation.

II. **Even if Plaintiff' speech was protected and she was retaliated against, the Board could not have legally extended her contract absent a finding that her performance goals were met.**

A plaintiff may establish that her speech was constitutionally protected and that she was retaliated against because of her speech, and the defendant may still prevail when it establishes

that it would have taken the same actions regardless of the conduct. *Houskins*, at 489-90. Even assuming, *arguendo*, that Plaintiff's speech was protected and that she established it was the motivating factor in the Board's actions, the facts establish that the Board would have taken the same actions regardless of whether she engaged in the speech.

There is no dispute that Plaintiff had certain performance objectives and requirements in her original contract. Pursuant to both the contract itself, and Illinois law, the contract could only be extended if those goals were met. The law is clear that "[n]o performance-based contract shall be extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals contained in the specific contract have been met." 105 ILCS 5/10-23.8. Plaintiff had a multi-year performance-based contract and that the Board voted to extend Plaintiff's contract without having made the necessary findings that she met her goals. It is axiomatic that the determination of the Board regarding Plaintiff's success in these goals needed to be approved through a formal vote which never occurred.

A school board is a body politic and corporate created to perform governmental functions relating to education of children in its district and has such powers as are expressly conferred or as may be necessary to effect powers granted by the General Assembly. *Weary v. Bd. of Ed.*, 46 Ill.App.3d 182, 184, 360 N.E.2d 1112 (1977). Statutes conferring authority on a board must be considered not only as a grant of power, but as a limitation thereof. *Wesclin Education Association v. Bd. of. Ed.*, 30 Ill.App.3d 67, 75, 331 N.E.2d 335, 340 (5th Dist. 1975); *Evans v. Benjamin School District No. 25*, 134 Ill.App.3d 875, 480 N.E.2d 1380 (2nd Dist. 1985). An action undertaken by a school district which is prohibited by law or is beyond its lawful authority is *ultra vires* and void. *Lewis-Connelly v. Bd. of Ed. of Deerfield Public Schools, Dist. 109,* 277 Ill.App.3d 554, 560, 660 N.E.2d 283, 287 (2nd Dist. 1996).

11

The Board of Education is the sole entity vested with the authority to make all employment decisions relative to the superintendent including a determination on whether performance goals were met. *See Bd. of Education, Proviso Twp. School Dist. No. 209 v. Jackson*, 401 Ill. App. 3d 24 (1st Dist. 2010); *Roberts v. Bd. of Ed. of Hazel Crest S.D. 152 1/2,* 48 F.Supp.2d 1098, 1101 (N.D. Ill. 1999). The Board of Education, as a public body, is required to vote on all documents being approved by it. Any written findings of the Board of Education must be presented and voted upon in order to be effective. *Lawrence v. Williams,* 2013 ILApp (1st) 130757 ¶22. This admittedly never happened in this case and absent such a finding and determination of the Board of Education, it did not have the lawful authority to extend Dr. Adams' contract as a matter of law. The extension offer was therefore never valid and its rescission cannot be considered an adverse action as a matter of law.

**III.   The Void Contract Extension Requires Judgment as a Matter of Law in Favor of Defendants on Both Counts**

Plaintiff alleges that she was retaliated against for exercising her First Amendment rights by Defendants rescinding the contract extension. As noted above, that contract extension was void *ab initio* and ineffective. Therefore, because the extension had no legal effect, Defendants' rescission of it does not amount to an adverse employment action.

An adverse employment action "in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-762 (1998). This harm is usually in the form of dismissal, suspension, failure to promote, or diminution in pay. *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F. 3d 906, 911 (7th Cir. 2002). Ultimately, an adverse employment action must be something that "materially alter[s] the terms and conditions of employment." *Stutler v. Ill. Dep't of Corrs.*, 263 F. 3d 698, 703 (7th Cir. 2001).

The Seventh Circuit generally recognizes three categories of materially adverse employment actions:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Dass v. Chicago Bd. of Education*, 675 F. 3d 1060, 1069 (7th Cir. 2012).

None of those are present in this matter. Plaintiff was not terminated from her position. Her salary and benefits were not decreased. There is no evidence that she was put in a position where she was prevented from using her skills or that she was subjected to a significantly negative alteration in her workplace environment. In fact, Plaintiff's employment continued as normal. The rescission of the ineffective extension merely meant that Plaintiff would serve the entirety of her original contract.

Plaintiff is obligated to establish that her alleged speech was a "motivating factor" in Defendants' adverse employment action. See *Valentino v. Village of South Chicago Heights*, 575 F. 3d 664, 670 (7th Cir. 2009). She must show that an adverse employment action "took place on the heels of protected activity." *Dey v. Colt Const. & Dev. Co.*, 28 F. 3d 1446, 1458 (7th Cir. 1994). Plaintiff cannot make that showing.

It is axiomatic that Plaintiff must establish all of the necessary elements of her claim and that failure to do so necessitates judgment in favor of Defendants. See FRCP 50(a) and *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d at 924. Plaintiff cannot establish that

she suffered any adverse employment action. She cannot establish a *prima facie* case. Her inability to meet this standard requires that judgment be entered on behalf of Defendants.

**IV.    Conclusion**

For all of the foregoing reasons, Defendants should be granted judgment as a matter of law as to Count I of Plaintiff's Complaint.

WHEREFORE, Defendants pray that this Honorable Court grant judgment as a matter of law in their favor and against Plaintiff, and any other relief the Court deems fit.

Respectfully submitted,

BOARD OF EDUCATION OF HARVEY SCHOOL DISTRICT 152, GLORIA JOHNSON, BETTY JOHNSON, DR. KISHA MCCASKILL, JANET ROGERS, TYRONE ROGERS, LINDA HAWKINS and FELICIA JOHNSON

By:    /s/ Christopher L. Petrarca
CHRISTOPHER L. PETRARCA
One of Their Attorneys

CHRISTOPHER L. PETRARCA
HAUSER, IZZO, PETRARCA, GLEASON & STILLMAN, LLC
1415 W. 22nd Street – Suite 200
Oak Brook, Illinois 60523
Telephone:    (630) 928-1200
cpetrarca@hauserizzo.com