IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. DENEAN ADAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 15 C 8144 |
| | ) | |
| BOARD OF EDUCATION HARVEY | ) | Judge Coleman |
| SCHOOL DISTRICT 152, GLORIA | ) | |
| JOHNSON in her individual capacity, | ) | |
| BETTY JOHNSON, in her individual | ) | |
| Capacity, DR. KISHA MCCASKILL, | ) | JURY TRIAL DEMANDED |
| in her individual capacity, JANET ROGERS, | ) | |
| in her individual capacity, TYRONE | ) | |
| ROGERS, in his individual capacity, | ) | |
| LINDA HAWKINS, in her individual | ) | |
| capacity, | ) | |
| FELICIA JOHNSON, in her individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RULE 50(b) MOTION AND BRIEF IN
SUPPORT JUDGMENT AS A MATTER OF LAW ON COUNT I – RETALIATION**

NOW COME the Defendants BOARD OF EDUCATION HARVEY SCHOOL DISTRICT 152, et al., by and through one of their attorneys, Christopher L. Petrarca and for their Motion and Brief in Support of their Motion Pursuant to FRCP 50(b) state as follows:

**LEGAL STANDARD**

Federal Rule of Civil Procedure 50(b) permits a party to file a renewed motion for judgment as a matter of law after a jury returns a verdict. Fed. R. Civ. Pro. 50(b). Upon a party's filing of such a motion, the trial court may allow the verdict to stand, order a new trial, or direct entry of judgment as a matter of law. *Id.* A motion under Rule 50(b) is simply a means of renewing a previously filed motion under Rule 50(a).

1

**ARGUMENT**

I. **The Court's Determination that the Contract Extension was Invalid Requires Judgment as a Matter of Law in Favor of Defendants on Both Count I (Retaliation) and Count II (Due Process)**

Pursuant to Defendants' Rule 50(a) Motion, this Court granted judgment as a matter of law in favor of Defendants on the Due Process Claim (Count II). The Due Process claim was predicated on the theory that Defendants revoked the one-year extension without providing Plaintiff a hearing. The first issue in any due process analysis asks if there was a protectible property (or liberty) interest. As to that issue, the Court correctly ruled as a matter of law that Plaintiff did not have a protectable property interest (*i.e.* the contract extension was invalid). The Court found that the contract extension was invalid because the Board did not make a finding that the goals and indicators of student performance and academic improvement had been achieved prior to extending the contract. The Court's entry of judgment as a matter of law in favor of Defendants on the Due Process claim – and the Court's concomitant finding that the contract extension was invalid – compels entry of judgment as a matter of law in favor of Defendants on the First Amendment retaliation claim (Count I).

    a. **There was No Adverse Employment Action Taken Against Plaintiff**

To establish a cause of action for First Amendment retaliation, Plaintiff must establish that she suffered an adverse employment action and that that adverse employment action was motivated by her exercise of her First Amendment rights. *DeGuiseppe v. Village of Bellwood,* 68 F. 3d 187, 191 (7th Cir. 1995). "To be considered materially adverse a change in the circumstances of employment 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* at 192. "And it certainly must be adverse in the sense that the employee is made worse off by it." *Id.* An adverse employment action "in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-762 (1998). This harm is usually in

the form of dismissal, suspension, failure to promote, or diminution in pay. *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F. 3d 906, 911 (7th Cir. 2002). Ultimately, an adverse employment action must be something that "materially alter[s] the terms and conditions of employment." *Stutler v. Ill. Dep't of Corrs.*, 263 F. 3d 698, 703 (7th Cir. 2001).

Plaintiff did not and cannot establish that Defendants "took some action with materially adverse consequences to" her. *DeGuiseppe*, at 192. She was not "worse off" after the alleged retaliatory act. The only proffered and the only possible adverse consequence was the rescission of Plaintiff's invalid contract extension. The Court has ruled as a matter of law that the contract extension was invalid. Plaintiff did not and could not possibly have suffered an adverse employment action by the District rescinding a contract extension that the Court determined as a matter of law never existed in the first place.

The existence of a valid contract extension is a fundamental predicate of her retaliation claim. The Court's ruling as a matter of law that the contract extension was invalid necessarily means that Plaintiff did not suffer an adverse employment action. Plaintiff was not terminated from her position. Her salary and benefits were not decreased. The rescission of the ineffective extension merely meant that Plaintiff would serve the entirety of her original contract. Plaintiff served out the entirety of her contract. She was paid the entirety of her contract. She left the District with both sides having fulfilled their obligations under the contract. There were no materially adverse actions taken against her. Defendants are therefore entitled to judgment as a matter of law on Count I (Retaliation).

    **b. The Jury Instruction for Count I (Retaliation) was Irreconcilable with the Judgement as a Matter of Law in Favor of Defendants on the Due Process Claim (Count II)**

Having ruled as a matter of law that there was no valid contract extension, thereby granting Defendants' Rule 50(a) Motion on Plaintiff's Due Process Claim (Count II), the jury instruction

on Count I was absolutely incongruous with that ruling. The Court ruled as a matter of law that there was no valid contract extension. That ruling meant that Plaintiff, as a matter of law, failed to meet the elements that were presented to the jury with respect to Count I. However, among other things, the jury instructions required that the jury find that "Defendants intentionally rescinded her [Plaintiff's] contract extension." Dkt. 165, pg 17. It also permitted the jury to find that the contract extension was invalid because "The Board was required to make a finding that Plaintiff met her contractually outlined performance and improvement goals and failed to do so." *Id.* at pg 18. Prior to the jury being given the case, the Court already ruled on those two matters in Defendants' favor – as a matter of law. It specifically found that there was no valid contract extension because there was no finding that Plaintiff met her goals when the Court ruled in Defendants' favor on the Due Process claim.

    c. <u>**The Legally Defective Jury Instruction on Count I led to Contradictory Verdicts**</u>

Permitting the First Amendment retaliation claim to go to the jury invited contradictory findings, and that is exactly what occurred in this case. The jury's verdict, by finding that the District retaliated in rescinding the legally non-existent extension, overruled and unequivocally contradicted the Court's ruling on the Due Process claim.

Moreover, permitting the jury to render a verdict on the First Amendment retaliation claim was fundamentally unfair to Defendants. Although there was a finding by the Court as a matter of law that there was no valid contract extension, the jury was presented with instructions that absolutely and unambiguously presupposed that there was a valid contract extension. The instruction detailing the required elements for liability refers to the "contract extension" no less than six (6) times. See, Dkt.165, pg 17-18. For example, the very first sentence of the jury instruction states, in pertinent part, "…Plaintiff claims that Defendants violated her Constitutional

right to free speech by rescinding her *contract extension*…" Dkt. 165, pg 17 (emphasis added). There was no "her contract extension." The Court ruled as a matter of law that the extension was invalid. It never existed. The instruction is replete with references to the contract extension. In each instance, the jury was required to presume that the contract extension was valid. See, Dkt. 165, pg 17-18. It required that the jury find "Plaintiff's filing of the police reports was a reason Defendants rescinded her employment contract extension. It need not be the only reason." It also required that the jury find "Defendants' rescission of the employment contract extension would be likely to deter an ordinary employee in plaintiff's circumstances from engaging in similar speech." *Id.* Defendants were therefore put in a position to argue that either (a) the instructions the jury was given by the judge were legally defective and should have been disregarded by the jury, or (b) pretend there was a valid contract extension and argue that Plaintiff failed to prove the other elements of Count I.

Due to the fact that this Court ruled as a matter of law that the extension was legally invalid, it was literally and legally impossible for the jury to find that Plaintiff satisfied her burden on Count I. The plain and unambiguous language of the instruction establishes this beyond question. As a matter of law, Count I should not have been submitted to the jury.

**II.  Plaintiff did not present sufficient evidence to establish First Amendment retaliation claim as a matter of law.**

To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected. *Swetlik v. Crawford,* 738 F.3d 818, 828 (7th Cir. 2013). In order for a public employee's speech to be protected, the employee must establish that she spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). The determination of whether speech is constitutionally protected is a question of law. *Houskins v. Sheahan,* 549 F.3d 480, 489 (7th Cir. 2008). If the Plaintiff can demonstrate

constitutionally protected speech, the court must then assess whether the plaintiff has demonstrated that the allegedly retaliatory activity was motivated by the constitutionally-protected speech. *Phelan v. Cook County,* 463 F.3d 773, 790 (7th Cir. 2006). If the Plaintiff can show that she engaged in constitutionally protected speech and that a retaliatory activity was motivated by the speech, then the Court must assess whether the defendant can demonstrate that it would have taken the same action irrespective of the plaintiff's speech. *Id.*

### a. **Plaintiff's Police Report About Mr. Rogers' Conduct was Not a Matter of Public Concern**

Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement. *Connick v. Myers,* 461 U.S. 138, 147-148 (1983). The *Connick* test requires the Court to look at the overall objective or point of the speech as ascertained by those three factors. *Kristofek v. Village of Orland Hills*, 712 F. 3d 979, 985 (7th Cir. 2013). Of the three factors, content is the most important, but the subject matter of the speech is not determinative. *Bivens v. Trent,* 591 F.3d 555, 560-561 (7th Cir. 2010). Beyond merely looking at the content, the Seventh Circuit has stated that the inquiry must also consider "the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or as the point to further some purely private interest?" *Linhart v. Glatfelter*, 771 F. 2d 1004, 1010 (7th Cir. 1985).

When analyzing the content of the speech, the broad subject matter is not determinative, and the Court must focus on the particular content of the speech. *Kubiak v. City of Chicago,* 810 F.3d 476, 483 (7th Cir. 2016) *citing Bivens,* 591 F.3d at 560-561. In addition, while the fact that an employee's speech may touch on an issue of public import does not automatically render her remarks on the subject protected. *Bivens,* 591 F.3d at 560-561 *citing Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis,* 42 F.3d 403, 410 (7th Cir. 1994). Rather, the motive of the speaker is a

relevant, though not dispositive, factor because speech will not be protected if the only point of the speech was to further some purely private interest. *Kokkins v. Ivkovich,* 185 F.3d 840, 844 (7th Cir. 1999). Speech is a matter of public concern "if an objective of the speech was also to bring about change with public ramifications extending beyond the personal." *Kristofek v. Village of Orland Hills*, 712 F. 3d 979, 986 (7th Cir. 2013). If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern. *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994).

Plaintiff's objectives with respect to the police report were not to bring about public change. They were purely personal. Plaintiff's testimony established that she made the complaint due to her fear and to protect her individually if Mr. Rogers did anything in the future. That is to say, the point of her speech was soley to protect herself or punish Mr. Rogers for the alleged statement. This is exemplified by her actions – in neither her initial report to the police nor in her conversations with Board President Johnson did Plaintiff even mention the audit or request for proposal. She only informed them about the alleged threat.

The Seventh Circuit Court of Appeals has repeatedly held that the reporting of threats of physical violence is not speech protected by the First Amendment as a matter of law. In *Houskins v. Sheahan,* 549 F.3d 480 (7th Cir. 2008), an employee of the Cook County Sheriff's Office was struck in the face by a correctional officer during an argument between the two in workplace parking lot. *Id.* at 483-484. She reported the incident to the Internal Affairs Division and filed a police report seeking to have her co-worker arrested. *Id.* at 484. The plaintiff was eventually disciplined, but filed a First Amendment retaliation claim. *Id.* at 485 Addressing her filing of the police report, the Seventh Circuit found that the speech at issue served a personal or private interest

7

and was not protected. *Id.* at 491-492. Specifically, the Court found that, "the police report was nothing more than [plaintiff's] personal grievance against [her co-worker] in order to have him arrested for striking her." *Id.*

A similar issue was decided in *Kubiak v. City of Chicago,* 810 F.3d 476 (7th Cir. 2016). In *Kubiak,* a Chicago Police officer filed a complaint about being verbally assaulted and threatened by a co-worker. *Id.* at 479. Subsequent to filing this complaint, the plaintiff was removed from her assignment within the department and filed a First Amendment retaliation claim against the City of Chicago. *Id.* The District Court granted the City's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) finding, among other things, that her speech did not address a matter of public concern. This determination was affirmed by the Seventh Circuit Court of Appeals which also concluded that the plaintiff's complaints did not address a matter of public concern. Specifically, the Seventh Circuit Court of Appeals noted that "the precise content of [plaintiff's] speech focused on the work-related incident with [the co-worker] and on [plaintiff's] concerns about her own safety." *Id.* at 483. It further analogized that the context of the complaint itself focused on the concerns of what could have happened to her.

Similar to the plaintiffs in *Kubiak* and *Houskins,* Plaintiff's statements to the Harvey Police Department were about an individual threat made to her. The purpose of the complaint was not to bring light to an audit of the District finances but, instead, to seek protection from the police department against Mr. Rogers. The expression by Plaintiff to the police department only addressed the personal effect of Mr. Rogers' conduct upon her and was made to support her purely personal purpose of seeking protection. Plaintiff's own testimony makes that clear. At trial, Plaintiff testified as follows:

> Q Thank you, Dr. Adams. You spoke with your family about
> the incident, right?

> A Yes. Correct.
> Q And did you make any decisions with your family?
> A I did. I decided that I was going to pursue a police
> report on Monday when I returned to work. I felt threatened.
> I felt that my safety was a concern in that district at that
> point, and I wanted to make a record of what had occurred.

See, Trial Transcript, 10/30/18, 126:3-10. She further testified that that she would have taken the same actions of reaching out to Board President Johnson for direction regardless of who threatened her. In fact, when specifically asked if she contacted Board President Johnson because this was "a school matter," Plaintiff testified, "Well, I'm not sure if it is -- if it was a school matter. I think it was -- if I would have received that information from anyone, my response probably would have been the same in terms of reaching out to the police and feeling threatened by that." *Id.*, 217:14-18. Moreover, Plaintiff's own actions regarding the threat and Mr. Rogers further establish that she did not believe this was a public matter. Plaintiff testified that she did not ask the Board to take any disciplinary actions against Mr. Rogers. *Id.* 219:5-7.

Plaintiff's own testimony establishes that she did not file the police report, for the purpose of addressing a matter of public concern. Plaintiff did nothing more than report an alleged threat of physical violence. As such, judgment as a matter of law in favor of Defendants is appropriate.

    b.    **Plaintiff's statements regarding the financial condition of the District were not made as a private citizen but, instead, were part of her official duties.**

In the alternative, if Plaintiff's actions do amount to public speech, it is clear that they must have been undertaken in her capacity as superintendent. If an employee is not speaking as a private citizen, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, at 418 (2006). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their

9

communications from employer discipline." *Id.* at 421. In order to determine if an individual is making a statement pursuant to her official duties the analysis, "requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Houskins v. Sheahan*, 549 F. 3d 480 at 490 (7th Cir. 2008). Instead, the Court "must make a practical inquiry into what [Plaintiff] was expected to do as an employee." *Kubiak v. City of Chicago*, 810 F. 3d 476 at 481 (7th Cir. 2016). When a public employee reports even potential official misconduct in the manner directed by official policy, to a supervisor, or to an external body with oversight responsibility, that speech is unprotected because the employee was speaking pursuant to her duties. *See Tamayo v. Blagojevich,* 526 F. 3d 1074, 1091 (7th Cir. 2008)

The testimony establishes that Plaintiff's statements regarding the financial condition of the District were plainly within the confines of her professional responsibility. She unequivocally testified that as Superintendent she was responsible for the District's finances. Trial Transcript, 10/30/18, 208:13-16. She was also required to arrange for the annually mandated audit of the District funds, accounts, statements and other financial matters. In fact, the only reason she was privy to information regarding the forensic audit was in her role as Superintendent. The evidence is clear that as the individual responsible for the financial well-being of the District, Plaintiff had the responsibility and requirement to take action if there was an improper expenditure of funds. The conversations regarding the audit only took place in closed session. The general public was not privy to the request for proposals for the audit. Plaintiff even testified that she requested authority to seek proposals to conduct the audit – that is, the entirety of the background regarding this matter stems from Plaintiff exercising her duties as superintendent.

This concept is well-established in case law. In *Battle v. Bd. of Regents for Georgia,* 468 F.3d 755 (11th Cir. 2006), an employee made repeated efforts to expose the improper financial aid

10

awards and false information in student files made by her supervisor. The Eleventh Circuit Court of Appeals determined as a matter of law that her statements were made pursuant to her professional duties because she was required to ensure the accuracy and completeness of student files and to report mismanagement of fraud. *Id.* at 761. *See also, Schuster v. Henry County, Georgia,* 281 Fed.App.x 868 (11th Cir. 2008)(Director of Finance complaints to several other public officials about improper expenditures were statements made as part of his employment and not entitled to First Amendment protection.) In fact, reporting which is not specifically required is still a statement made pursuant to an employee's duties when the employee is required to account for the information within the allegedly protected speech. *Renken v. Gregory,* 541 F.3d 769, 773-774 (7th Cir. 2008).

Because the Plaintiff was required as part of her official duties to safeguard and maintain the financial operations of the District, any reports that she would make about any financial impropriety are plainly required by her position. As such, these statements which are made as a part of her employment cannot form the basis of a First Amendment retaliation claim as a matter of law because they are not protected statements as determined by *Garcetii* and its progeny.

    c. **Even if Plaintiff's speech could be considered protected speech, she has failed to set forth evidence that it was a motivating factor in the decision to rescind the offer of a contract extension.**

A party that bears the burden of proof on an issue is not entitled to rest on speculation and pleadings but must demonstrate through evidence that there is a material issue of fact that must be resolved. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). In the context of a First Amendment retaliation claim, the Plaintiff must produce sufficient evidence to show that her purportedly protected speech was at least a motivating factor in the alleged retaliatory action and it can be

shown through either direct or circumstantial evidence. *Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012).

In this case, Plaintiff's sole evidence of motive is found through a claim of suspicious timing. There is not a single piece of evidence other than timing which can establish that her filing of the police report was the motivation for the Board's decision to rescind its offer of a contract extension. She admitted that she was neither told, nor did she overhear, any Board members making a statement that the rescission of the contract extension offer was undertaken because she filed the police report against Tyrone Rogers. Trial Transcript 10/30/18, 411:18-23; 412:3-14. In addition, the unrebutted, sworn testimony of the Board members that she called as witnesses was that they did not rescind the contract because of the complaint filed against Tyrone Rogers and that they took the advice of their attorney on the validity of the extension offer. Trial Transcript 10/31/18, 394:15-25.

Suspicious timing will "rarely be sufficient in and of itself to create a triable issue [of fact]." *Id. citing Culver v. Gorman & Co.,* 416 F.3d 540, 546 (7th Cir. 2005). The reason for this is that "[s]uspicious timing may be just that – suspicious – and a suspicion is not enough to survive a motion for summary judgment." *Loudermilk v. Best Pallet Co.,* 636 F.3d 312, 315 (7th Cir. 2011). It is clear that the time period between the protected activity and the adverse action must be "very close." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001). Under the Seventh Circuit's jurisprudence, to permit an inference of causation to be drawn solely on the basis of a suspicious timing argument, it typically allows no more than a few days to elapse between the protected activity and the adverse action. *Kidwell,* 679 F.3d 957, 966-967 (citing cases).

In this case, Plaintiff contends that she originally contacted the police on July 9, 2015 and the Board did not notify her of its intention to rescind the offer of a contract extension until July

12

22, 2015 – over two weeks later. This is not the mere couple of days which is sufficient to show causation standing alone under Seventh Circuit precedent.

Moreover, when there is a significant intervening event which separates an employee's protected activity from an adverse employment action, a suspicious timing argument will not prevail. *Davis v. Time Warner Cable of Se. Wis., L.P.,* 651 F.3d 664, 675 (7th Cir. 2011). In this case, such a significant intervening event occurred. Namely, the Board of Education was advised by its attorney that the extension provided to Plaintiff was not legally compliant and was ineffective. This evidence clearly breaks the causal chain presented by Plaintiff and makes the suspicious timing standing alone insufficient for purposes of demonstrating causation.

### III. **Even if Plaintiff's speech was protected and she was retaliated against, the Board established that it would have taken its actions regardless of the occurrence**

A plaintiff may establish that her speech was constitutionally protected and that she was retaliated against because of her speech, and the defendant may still prevail when it establishes that it would have taken the same actions regardless of the conduct. *Houskins*, at 489-90. Even assuming, *arguendo*, that Plaintiff's speech was protected, and that she established it was the motivating factor in the Board's actions, the facts establish that the Board would have taken the same actions regardless of whether she engaged in the speech. The only evidence presented at trial established that Defendants took action to rescind the contract extension because their attorney informed them that it was improper. They took the advice of their attorney.

There is no dispute that Plaintiff had certain performance objectives and requirements in her original contract. Pursuant to both the contract itself, and Illinois law, the contract could only be extended if those goals were met. The law is clear that "[n]o performance-based contract shall be extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals contained in the specific contract have been met." 105 ILCS 5/10-23.8.

13

Plaintiff had a multi-year performance-based contract and that the Board voted to extend Plaintiff's contract without having made the necessary findings that she met her goals. It is axiomatic that the determination of the Board regarding Plaintiff's success in these goals needed to be approved through a formal vote which never occurred.

The testimony of John Izzo, one of the District's attorneys, as well as the testimony of every Defendant that testified, established that the District rescinded the contract based on Mr. Izzo's advice that it was ineffective. The Court agreed that there was never a valid contract extension and ruled that way as a matter of law.

The Board of Education is the sole entity vested with the authority to make all employment decisions relative to the superintendent including a determination on whether performance goals were met. *See Bd. of Education, Proviso Twp. School Dist. No. 209 v. Jackson*, 401 Ill. App. 3d 24 (1st Dist. 2010); *Roberts v. Bd. of Ed. of Hazel Crest S.D. 152 1/2,* 48 F.Supp.2d 1098, 1101 (N.D. Ill. 1999). The Board of Education, as a public body, is required to vote on all documents being approved by it. Any written findings of the Board of Education must be presented and voted upon in order to be effective. *Lawrence v. Williams,* 2013 ILApp (1st) 130757 ¶22. As this Court previously ruled, there was no finding that Plaintiff met her performance goals, therefore, there was never a valid contract extension.

The Board was obligated to rescind the ineffective extension because moving forward by any other means would be *ultra vires* and would subject the Board to future legal problems. The Defendants who testified stated unequivocally that they felt obligated to rescind the ineffective contract extension because of their failure to follow the proper procedure. Janet Rogers testified clearly on this matter. She was specifically asked "why did the board vote to rescind plaintiff's contract?" Trial Transcript 10/31/18, 411:18. In response, she stated, "Based on the advice of

14

counsel that her goals -- we had not even discussed her goals, and, and there was a law that -- and it was in her contract basically that we had to discuss and see whether she met them and go back and forth. We had not had a meeting for that." *Id.* There was no evidence or testimony to contradict that testimony.

The evidence established that the Board would have rescinded the invalid contract extension regardless of the circumstances. Pursuant to *Houskins*, such actions are an appropriate defense to the claim of retaliation and require judgment in favor of Defendants.

## **Conclusion**

For all of the foregoing reasons, Defendants should be granted judgment as a matter of law as to Count I of Plaintiff's Complaint.

WHEREFORE, Defendants pray that this Honorable Court grant judgment as a matter of law in their favor and against Plaintiff, and any further and other relief the Court deems just and equitable.

                Respectfully submitted,

                BOARD OF EDUCATION OF HARVEY SCHOOL DISTRICT 152, GLORIA JOHNSON, BETTY JOHNSON, DR. KISHA MCCASKILL, JANET ROGERS, TYRONE ROGERS, LINDA HAWKINS and FELICIA JOHNSON

                By:   /s/ Christopher L. Petrarca
                       CHRISTOPHER L. PETRARCA

CHRISTOPHER L. PETRARCA
HAUSER, IZZO, PETRARCA,
GLEASON & STILLMAN, LLC
1415 W. 22nd Street – Suite 200
Oak Brook, Illinois 60523
Telephone:    (630) 928-1200
cpetrarca@hauserizzo.com