882

1        IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3   DR. DENEAN ADAMS,                )  No. 15 C 8144
                                     )
4                   Plaintiff,       )
                                     )
5          v.                        )
                                     )
6   BOARD OF EDUCATION HARVEY SCHOOL )  November 6, 2018
    DISTRICT 152, GLORIA JOHNSON in her )  Chicago, Illinois
7   individual capacity, BETTY JOHNSON )  9:50 a.m.
    in her individual capacity,      )
8   DR. KISHA McCASKILL in her       )
    individual capacity, JANET ROGERS )
9   in her individual capacity, TYRONE )
    ROGERS in his individual capacity, )
10  LINDA HAWKINS in her individual  )
    capacity, FELICIA JOHNSON in her )
11  individual capacity,             )
                                     )
12                  Defendants.      )  Trial

13                     VOLUME 6
                TRANSCRIPT OF PROCEEDINGS
14   BEFORE THE HONORABLE SHARON JOHNSON COLEMAN, and a
                        jury

15

16  APPEARANCES:

17  For the Plaintiff:    MR. JEROME M. DAVIS, ESQ.
                          9024 McIntosh Court
18                        Lakewood, Illinois  60014

19  For the Defendants:   HAUSER IZZO PETRARCA GLEASON & STILLMAN
                          1415 West 22nd Street
20                        Suite 200
                          Oak Brook, Illinois  60523
21                        BY:  MR. CHRISTOPHER L. PETRARCA

22

23          TRACEY DANA McCULLOUGH, CSR, RPR
                  Official Court Reporter
24              219 South Dearborn Street
                       Room 1426
25              Chicago, Illinois  60604
                    (312) 435-5570

1    APPEARANCES CONTINUED:

2                              LAW OFFICES OF JENNIFER K. SCHWENDENER LLC
                              5117B Main Street
3                              Suite 4
                              Downers Grove, Illinois  60515
4                              BY:  MS. JENNIFER K. SCHWENDENER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1         THE CLERK:  15 CV 8144, Adams versus Board of

2 Education of Harvey School District 152.

3         THE COURT:  Counsel, state your name.

4         MR. DAVIS:  Jerome Davis for plaintiffs.  Good

5 morning, Your Honor.

6         THE COURT:  Good morning.

7         MS. SCHWENDENER:  Good morning, Your Honor.  Jennifer

8 Schwendener on behalf of defendants.

9         THE COURT:  Good morning.

10         MR. PETRARCA:  Good morning, Your Honor.  Chris

11 Petrarca also on behalf of defendants.

12         THE COURT:  Excellent.  All right.  Now, have you all

13 had a chance to look at my instructions?

14         MR. DAVIS:  Yes, Judge.

15         THE COURT:  And especially we'll go over all of them,

16 but particularly 601, which is a more normal instruction than

17 the 601 and the separate affirmative and the -- no.  Now, if

18 somebody has a problem with that not reading right, let me

19 know.

20         MR. DAVIS:  We're comfortable with it, Judge.

21         THE COURT:  Yes.  It's -- I admit I am hybriding my

22 state court days, but it sure makes a lot more sense.  All

23 right.  Thank you for your submissions during the time I was

24 gone.  So just to make sure we get through the instructions, if

25 you all have all of your extras, I have the ones you did.  I

1   want to go through these really quickly so we can -- everybody
2   else please be seated, please.  We've got work to do.  And if
3   for some reason it's easier for you all to go through your
4   papers at the table to have room, you can do that.
5               MS. SCHWENDENER:  Thank you, Your Honor.
6               THE COURT:  All right.  All right.  So these will not
7   be -- as we go through them today, they're still aren't going
8   to be placed in the final order until I actually give them to
9   you in the final order.  But we have 101, 102.  103, litigants
10  equal before the law, I think there was an adjustment made to
11  that one, but whatever it was was small.  We've got the -- in
12  this case one of the defendants is a public Board of Education.
13  All parties are equal before the law.  A public Board of
14  Education is entitled to the same fair consideration that you
15  would give any individual person.  And there was no objection.
16  I believe there was a slight, slight change.  But does anybody
17  have any problem with it as it's read now?
18              MR. DAVIS:  No, Judge.
19              MS. SCHWENDENER:  No, Your Honor.
20              THE COURT:  All right.  No objection to that one.
21  And we also had 104, the evidence instruction, pattern
22  instruction.  Plaintiff's No. 3 just had brackets, et cetera,
23  that have been removed.  Is there any objection to that one,
24  defense?
25              MS. SCHWENDENER:  No, Your Honor.

1    THE COURT:  106, there was no objection as it was

2  last week.  107, no objection.  108, no objection.  111, no

3  objection.  112, no objection.  Again, as to 113, testimony of

4  witnesses deciding what to believe, pattern instruction.  I

5  believe the adjustments that have been made were the ones with

6  the brackets that were removed from in evaluating the testimony

7  of any witness, including any party to the case, you may

8  consider, et cetera.  Is there any objection to this one?

9    MS. SCHWENDENER:  No, Your Honor.

10    THE COURT:  All right.  Thank you.  Prior

11  inconsistent statements, number of witnesses, 117.  There's no

12  objection to that one.  Absence of evidence, no objection to

13  that one.  Multiple claims.  This is the one I think everybody

14  gave me something on.  There's an objection to the defendants'.

15  Plaintiff had a lengthier multiple claims, is that correct,

16  that you submitted a paragraph?

17    MR. DAVIS:  Yes.  Counsel indicated they didn't have

18  any objection to 1.25, Judge.  Mine.

19    THE COURT:  All right.  To your --

20    MR. DAVIS:  Yes.

21    THE COURT:  All right.  Is that correct?

22    MS. SCHWENDENER:  That's correct.  The one that was

23  sent to the Court yesterday, we did not have an objection to.

24    THE COURT:  And that would be you must give separate

25  consideration to each claim in this case.  You must also

1  consider that the Board of Education can only act through a

2  majority of its members.  If you do not find that a majority of

3  the individual defendants are liable, you may not find the

4  Board of Education liable.  Moreover, if a majority of the

5  individual defendants are not liable, you may not find that any

6  of the individual defendants are liable.

7           MR. DAVIS:  That's not the right one.

8           THE COURT:  That's theirs.

9           MR. DAVIS:  That's theirs.

10          THE COURT:  All right.  Then I have one that says you

11  must consider that the Board of Education of Harvey School

12  District 152 can only act through a majority of its members.

13  If you do not find that a majority of the individual defendants

14  are liable, you may not find the Board of Education of Harvey

15  School District 152 liable.  If you find a majority of the

16  individual defendants are liable, you must find Board of

17  Education of Harvey School District 152 liable.  That's the

18  one.

19          MS. SCHWENDENER:  That's correct, Your Honor.

20          THE COURT:  All right.  That will be given.  One

21  second.  And we have 127, burden of proof.  There was no

22  objection.  131, no need to consider damages instruction.  No

23  objection.  That's defendants' instruction No. 2.  Then -- oh,

24  we also have -- I'm going to stick it in here now -- the

25  limiting instruction of Attorney Izzo.  So we have one that the

1  plaintiff has submitted, and then we have one that the Court --

2  do you all have it?  It should have been given to you.

3          MR. DAVIS:  I don't think so, Judge.

4          MS. SCHWENDENER:  No, Your Honor.

5          THE COURT:  I don't know if I have the typewritten

6  one, but this is the one that the -- did defense have one that

7  they were presenting?

8          MS. SCHWENDENER:  We submitted it yesterday, Your

9  Honor.

10         THE COURT:  All right.  And the Court believes it was

11 fine except for I believe two words.  The Court's is going to

12 be John Izzo is an attorney who is -- who is also -- it should

13 be also, a fact witness in this matter.  The Court does not

14 want it to look like it's one in the same.

15         MS. SCHWENDENER:  Sure.

16         THE COURT:  So it has to be separate.  He's an

17 attorney, who is also a fact witness in this case, this matter.

18 John Izzo is not an expert witness.  His testimony should not

19 be given any more weight simply because he is an attorney.

20 With those changes do you have any objection, plaintiff?

21         MR. DAVIS:  Yes, Judge.

22         THE COURT:  All right.  You wish to give yours?

23         MR. DAVIS:  Yes.

24         THE COURT:  All right.  It's going to be refused,

25 and the defense can have this one as modified.

1              MS. SCHWENDENER:  No objection.

2              THE COURT:  We'll figure out what number instruction

3    that is for you later.  And the refusal will be on the record.

4              MR. DAVIS:  Okay.

5              THE COURT:  And then we have the combination, as it

6    were, of the 601, the affirmative defense -- oh, I'm sure that

7    was -- the Izzo one, I'm sorry, was defendants' No. 3

8    previously.  All right.  So I'm going to put it on the record.

9              This is the Court's, based on what both sides have

10   submitted both for their 601 elements, the affirmative and even

11   the shifting of the burden.  The Court put it all into one.

12   And I'll read it just for the record, 601.  In this case

13   plaintiff's claim that defendants violated her constitutional

14   right to free speech by rescinding her contract extension

15   because plaintiff -- typo, plaintiff filed a police report and

16   supplemental police report.

17             To succeed on this claim plaintiff must prove each of

18   the following four things by a preponderance of the evidence:

19   The plaintiff filed the police reports.  Defendants

20   intentionally rescinded her contract extension.  Plaintiff's

21   filing of the police reports was the reason that defendants

22   rescinded her employment contract extension.  It need not be

23   the only reason.  Defendants' rescission of the employment

24   contract extension would be likely to deter an ordinary

25   employee in plaintiff's circumstances from engaging in similar

1   speech.

2          If you find that plaintiff did not prove each of

3   these things by a preponderance of the evidence, you must

4   decide for the defendants.  If you find that plaintiff did

5   prove each of these things by a preponderance of the evidence,

6   then you must consider whether defendants have proved by a

7   preponderance of the evidence that there were other reasons

8   that would have led defendants to rescind plaintiff's

9   employment contract extension even if plaintiff had not filed

10  the police reports.

11         If you find that defendant had proved -- defendants

12  proved this by a preponderance of the evidence, then you must

13  decide for defendants.

14         If you find that defendants did not prove this by a

15  preponderance of the evidence, then you must consider whether

16  defendants proved their claim that plaintiff's contract

17  extension was invalid for one of the following reasons:  One,

18  the board did not make a finding that plaintiff met her

19  contractually outlined performance and improvement goals.  Two,

20  plaintiff never accepted the one-year contract extension

21  offered by the board.  Three, the one-year contract extension

22  was never signed by plaintiff or defendants.

23         If you find that defendants have proved any one of

24  the above claims by a preponderance of the evidence, then you

25  must find for defendants.  If you find that defendants have not

1   proved any of the above claims by a preponderance of the

2   evidence, then you must decide for plaintiff and consider the

3   issue of damages.  State your objections, plaintiff.

4         MR. DAVIS:  Well, Judge, in general I don't have a

5   problem with this, but I think for clarity's sake one, two, and

6   three should be preceded by a clause that says the jury

7   needs --

8         THE COURT:  Which one, two, and three, Counsel?

9         MR. DAVIS:  Of the affirmative defense.

10        THE COURT:  All right.  Go ahead.

11        MR. DAVIS:  Needs to be preceded by a clause that

12   defendants have asserted that there is a requirement that

13   plaintiff accept the one-year contract.  If you believe that --

14   you know, as it is now, it almost reads as if it's been

15   established that that was their policy.  I think that's a

16   factual issue there, whether there was a requirement that they

17   had to sign a contract extension.  So I think it should say if

18   you believe defendants have proven by a preponderance of

19   evidence that the policy was that a contract extension had to

20   be signed, and if you believe they've proven that plaintiff

21   never accepted the extension by signing it, that's one.

22         And No. 2, the same with plaintiff never accepted the

23   one-year contract extension.  If you believe that plaintiff was

24   required to formally accept the contract extension, and if you

25   believe that plaintiff never accepted it, and the same with the

```
 1   Board did not make a finding.  If you believe there was a
 2   requirement that the Board --
 3                 THE COURT:  I've got you.  I've got you.
 4                 MR. DAVIS:  Okay, Judge.
 5                 THE COURT:  Anything else?  Anything else with that
 6   one?
 7                 MR. DAVIS:  That's it, Judge.
 8                 THE COURT:  All right.  Before I discuss the
 9   suggestions, defense any problem with it?
10                 MS. SCHWENDENER:  Yes, Judge.
11                 THE COURT:  Yes.
12                 MS. SCHWENDENER:  Just to -- first to briefly respond
13   to counsel's argument.  There's no policy that plaintiff has
14   to -- that the contract has to be in writing.  It's per the
15   contract itself that states that any amendments have to be in
16   writing.  So -- and, and Illinois law.  In addition, we, we ask
17   that our 6.01 instruction be submitted because the Court has
18   already -- in ruling on the due process claim, the Court's
19   already ruled that plaintiff failed to meet her contractually
20   outlined performance and improvement goals.  And the contract
21   extension was not signed.  So this presupposes that there has
22   to be a valid contract extension, which has already been
23   determined that there was not.
24                 THE COURT:  All right.  You get a chance to respond.
25                 MR. DAVIS:  Judge, our position is the Court did not
```

1    rule as a matter of law that plaintiff didn't have a right -- a

2    due process interest per se.  What the Court ruled, what we

3    believe, is that plaintiff did not affirmatively convince the

4    Court that the due process in the extension existed.  Now, our

5    position is the Court has looked at this, taken the improper

6    perspective.  That instead of putting the onus on the plaintiff

7    to affirmatively show a property interest, the starting point

8    is whether the governmental entity has done anything to give

9    plaintiff a legitimate entitlement.

10            A similar case recently occurred in the Breuder case

11   that the Seventh Circuit had, which is a 2018 case that I'd

12   like to draw Your Honor's attention to.  And that's Breuder v.

13   Board of Trustees College District No. 502, 888 F.3d 266, 270,

14   Seventh Circuit 2018.  And in that case the Seventh Circuit

15   cited Board of Regents, the seminal Supreme Court case.

16            And basically in that case which you had which is

17   similar here is a college president who was given a multi-year

18   contract by a board, and a succeeding board came in and said

19   that it was ultra vires because the contract they gave him

20   exceeded the term of the then sitting board.  And so the

21   succeeding board said, hey, that was illegal.  The Board can

22   only give a contract extension limited to the term of that

23   board.  Otherwise you're binding succeeding boards by the

24   actions of a prior board.

25            And so they summarily fired the educator without a

1    notice and without a hearing.  And the Seventh Circuit said he
2    had a legitimate entitlement, which due process attached to by
3    virtue of the fact that they voted for the contract extension,
4    even if later it was determined -- it would be determined that
5    the extension was invalid.  And we think similarly here.  The
6    Court has not addressed this.  The defendants certainly haven't
7    addressed this.  What was the legal effect on February 23rd,
8    2015 when the board voted in open session in a public meeting
9    to give plaintiff the one-year contract extension?
10            This was admitted in the complaint.  Again, what is
11   the legal effect of the admission that they voted to give her a
12   one-year contract extension?  We believe the effect is clear.
13   She then had an entitlement, a legitimate entitlement to
14   believe that she had a one-year contract extension.  And we
15   believe due process attached at that point, and that nothing
16   that happened subsequently entitled the board to unilaterally
17   decide that she didn't and to take action without giving her
18   any notice, any hearing whatsoever.
19            THE COURT:  Response.
20            MS. SCHWENDENER:  Yes, Judge.  It sounds like we're
21   now arguing a motion for reconsideration on the due process
22   claim instead of the jury instruction.  But to respond to
23   counsel's argument, it's already been established.  The action
24   taken by the board in February of 2015 was invalid.  There had
25   not been any finding that plaintiff had met her contractual

1   performance goals.  Similarly, plaintiff rejected the one-year

2   offer by the board by proposing a counteroffer of -- by

3   submitting the contract -- a revised contract through her

4   attorney and making substantive changes to that contract such

5   as a higher salary, a longer term, a greater -- larger

6   automobile reimbursement.

7           And then in addition, the contract explicitly states

8   that any amendments or alterations to the contract had to be in

9   writing and signed by both parties in order to be valid and

10  binding.  So it's already been determined that there -- that

11  there was not a valid contract extension.  Not only is there no

12  finding that the goals had been satisfied, there's no evidence

13  that -- there's no evidence and no finding that the goals --

14  her performance goals had been satisfied.  Plaintiff submitted

15  a counter proposal and rejected the one-year extension.

16          And last, the one-year extension or any contract

17  extensions were never in writing and signed by the parties.

18  And per the contract, invalid.

19          THE COURT:  All right.  The reason this --

20          MR. DAVIS:  If I may, Judge.  I'm sorry.

21          THE COURT:  Go ahead, Counsel.

22          MR. DAVIS:  Counsel is arguing things that are

23  factually in dispute.  The case is analogous to Houstra.  In

24  Houstra, the Seventh Circuit case, the board said there was no

25  meeting of the minds.  They said the contract extension was

1   fraudulent.  And the Seventh Circuit said, look, those are

2   factual issues.  As long as there are factual issues regarding

3   those matters, due process still attaches.

4           Here the Court has recognized that there's a factual

5   issue in Count 1.  Whether or not they had the goals and

6   whether they determined that she met the goals, that's a

7   question for the jury.  And these issues that counsel's

8   arguing, there was no meeting of the minds, there was a

9   counteroffer, same thing, factual issues.  The evidence shows

10  she never presented a counter contract to the board.  She had a

11  conversation with an individual board member, who never shared

12  it with the entirety of the board.  So that can't possibly

13  constitute a counteroffer to the board.

14          Further, counsel keeps talking about an integration

15  clause, a boilerplate integration clause in the contract that

16  really isn't even applicable here, because we're not talking

17  about any modifications to the contract.  Dr. Adams testified

18  that she accepted the contract as is when they told her they

19  were giving her the one-year extension, and they thereafter

20  voted on it.  We heard on the tape after they voted to approve

21  it --

22          THE COURT:  Counsel, I don't need you to rehash all

23  the facts.

24          MR. DAVIS:  Okay.  I'm sorry, Judge.

25          THE COURT:  All right.  But the Court, you know, let

1   you have your last say since this is more your position on the

2   changes.  First of all, the Court is going to say it does not

3   sound like you have any objection to the format that the Court

4   has taken in combining all of these into one instruction.  You

5   just have a problem with various emphasis, is that correct?

6   Just the form.

7                    MS. SCHWENDENER:  I have --

8                    THE COURT:  We had about four different forms to deal

9   with --

10                   MS. SCHWENDENER:  Sure.

11                   THE COURT:  -- affirmative defenses.  Is there an

12   objection to the Court's form of putting together all of these

13   issues as one instruction?

14                   MS. SCHWENDENER:  No objection to the form.  Just an

15   objection to the content.

16                   THE COURT:  The Court understands.  Any objection to

17   the form?

18                   MR. DAVIS:  No, Judge.

19                   THE COURT:  The format.  Okay.  So that's the first

20   place to start.  As to defendants' statement that they believe

21   that they should have in an instruction that actually says,

22   which the Court has already found, I think there's -- what's

23   the instruction again?

24                   MS. SCHWENDENER:  Which --

25                   THE COURT:  Basically the judge has already -- the

1  Court has already ruled or something in the middle of the

2  instruction.

3          MS. SCHWENDENER:  The Court has determined as a

4  matter of law the contract extension was invalid.

5          THE COURT:  Refused.  All right.  Then the question

6  is do I change the issue of the affirmative defenses that

7  plaintiff is saying where there's two parts, that their claim

8  is whether the Board -- there's a question of whether the Board

9  was required to and did not make a finding and on No. 1 and 2,

10 is that correct?

11         MR. DAVIS:  Yes, Judge.

12         THE COURT:  All right.  The Court will take under

13 consideration and look at the case that has been cited, but I'm

14 going to put that to the side real briefly so we can get to the

15 rest of this.  Then we have, we have the plaintiff's

16 instruction on damages, both general damages and general

17 damages and compensatory damages.  And that's been sent through

18 again.  Is there any -- I have no objection to that one except

19 for they need to change to her as opposed to him, is that

20 correct?

21         MS. SCHWENDENER:  Correct, Your Honor.

22         THE COURT:  I will say, plaintiff, your font is hard

23 on the eyes.

24         MR. DAVIS:  I'm sorry, Judge.

25         THE COURT:  So we'll see.  We like to have them

1  pretty similar like as far as bolding, so we may end up

2  having -- I may have to impose on my staff to, to do that just

3  to keep them similar.  I don't like them to be too different.

4  Then they start picking them out and trying to figure out who

5  submitted what, and -- but, and then any objection to the

6  compensatory damages?

7          MS. SCHWENDENER:  No objection per our discussion

8  last week, Judge, that the physical pain was going to be

9  removed and disability, loss of a normal life, and a reasonable

10 certain to experience in the future.  So with those --

11         THE COURT:  Those changes were made.  Well, no

12 they're there.

13         MR. DAVIS:  No, they were made, Judge.

14         THE COURT:  Well, the one I have unless, it's

15 different, the Court will calculate and determine any damages

16 for past and future.

17         MR. DAVIS:  That's not the right one.

18         THE COURT:  That's not the right one.  All right.  We

19 got that as No. 19 and No. 20 of plaintiff.

20         MR. DAVIS:  I'm looking at No. 20.

21         THE COURT:  All right.  And the one I'm looking at is

22 that same font.  It's in the third paragraph.

23         MR. DAVIS:  In calculating damages, you should

24 consider the issue of lost wages and benefits.  The Court will

25 determine any damages for past or future lost wages and

1    benefits.  You should consider the following types of

2    compensatory damages and no others.  No. 1, the --

3               THE COURT:  Well, no.  No.  No.  And I've got that.

4    But the question is should that other sentence even be in that

5    like -- in there like that.  The Court will calculate and

6    determine any damages for past or future wage loss, when future

7    wage loss is not part of it at all.  I don't want to confuse

8    them.

9               MS. SCHWENDENER:  Right.

10              MR. DAVIS:  I understand, Judge.

11              THE COURT:  All right.  So I'm thinking that the

12   Court will, will -- you can just leave the calculate and

13   determine any damages, period.  If that's true, and that's --

14   we don't even need that.  We just need to get rid of the whole

15   sentence because usually the calculation is her past or future.

16   Since we don't have the future as an issue, then I think that

17   should just be -- we need to adjust that and take that sentence

18   out.  Do -- defense have any objection?

19              MS. SCHWENDENER:  No, with your modification, Judge.

20              THE COURT:  The whole sentence, the whole sentence is

21   gone.

22              MS. SCHWENDENER:  That's fine.

23              THE COURT:  All right.

24              MS. SCHWENDENER:  No objection.

25              THE COURT:  Since I don't want the idea of future to

```
1    be in as they calculate.
2             MR. DAVIS:  Okay.  But what about, if I may, Judge,
3    the loss.
4             THE COURT:  It's there, isn't it?
5             MR. DAVIS:  If you take out the sentence, where is
6    it?
7             THE COURT:  You should, you should -- in calculating
8    damages, you should not consider the issue of lost wages and
9    benefits.  Let's see.  You should consider these damages.  And
10   it's the mental and emotional.  And you're saying -- I don't
11   know how to put it.  Yes.  The compensatory damages are
12   restricted to, it says the actual loss of money.  It's the
13   future that's bothering me.
14            MR. DAVIS:  Right.  And I don't have a problem taking
15   out the future, but I want to make clear that either the Court
16   or they should consider the lost income from the loss of the
17   contract extension.  And as well if you want to relegate it to
18   the jury to deal with the pain and suffering, I'm fine with
19   that, but --
20            THE COURT:  Oh, that is definitely there.  Well, I
21   guess --
22            MR. DAVIS:  How about take out past --
23            THE COURT:  I guess the question, the question is,
24   Counsel, and defense you need to state your position on that
25   third paragraph before I go to counsel as to the damages that
```

902

1    have been at least shown.

2              MS. SCHWENDENER:  We object to the calculation of

3    lost wages.  It's our understanding and our position that the

4    Court has already determined there was no valid contract

5    extension.  Therefore, plaintiff should not be entitled to

6    recover damages on -- pursuant to that the one-year contract

7    extension.

8              THE COURT:  That would be consistent with your

9    position.  All right.  Anything else?  Obviously you don't

10   agree with that.

11             MR. DAVIS:  Obviously not, Judge.

12             THE COURT:  Yes.

13             MR. DAVIS:  I would suggest just take out past or

14   future and just say the Court will calculate and determine

15   and -- I'm sorry, determine damages for wages and benefits.  Or

16   for wages.  And just take out what was troubling Your Honor,

17   which is the reference to past or future, and then leave the

18   rest the same.

19             THE COURT:  Okay.  Let's put a pin in that and go to

20   compensatory damages on the verdict form.  So right now the way

21   my proposed verdict form states it we only have one line for

22   money.  What's your position plaintiff?

23             MR. DAVIS:  I'm sorry.  I'm trying to locate Your

24   Honor's --

25             THE COURT:  It's a, it's a verdict form A and then

903

1    there's a --

2              MR. DAVIS:  Right.  I perused it, and I didn't --

3              THE COURT:  -- verdict form B.

4              MR. DAVIS:  -- have a problem with it, Judge, as

5    written.

6              THE COURT:  Defense?

7              MS. SCHWENDENER:  Judge, we have no objection to your

8    compensatory damages on the verdict form.

9              THE COURT:  The Court will take a moment, look at the

10   case.

11             MR. DAVIS:  Here it is.

12             THE COURT:  And come out.  And if there is any issue

13   on the, on -- it's 133, 134 and the verdict forms is the

14   last -- and the instruction that's leading into the verdict

15   form.  Those are all a group.  The Court wants to make sure

16   especially as to the damages -- compensatory damages that it's

17   consistent with whatever the Court rules as to the language on

18   past and future.  I just want to make sure that it's consistent

19   and there's nothing confusing to the jury.  And the other one

20   we have -- the other one we have at issue --

21             MR. DAVIS:  That language is taken out of the pattern

22   jury instruction, Judge.

23             THE COURT:  Yes, it is.  Also I want to look at it in

24   terms of the, the evidence that's been presented.  All right.

25   So I'm looking at 601 and then 310, and the verdict forms, is

904

1    that correct?

2                    MS. SCHWENDENER:  Yes.

3                    THE COURT:  All right.

4                    MR. DAVIS:  I thought Your Honor already refused

5    defense's request relative to 601, Judge.

6                    THE COURT:  Yes, but I haven't granted yours.  Now,

7    if you want to just take mine the way it is, that's fine.  But

8    you did cite a case to support your position.

9                    MR. DAVIS:  Oh, yes, to clarify.

10                   THE COURT:  Right.

11                   MR. DAVIS:  Yes.

12                   THE COURT:  So --

13                   MR. DAVIS:  Okay.  Yeah.  I'd like for Your Honor to

14   look at that.  I just wanted to be clear.

15                   THE COURT:  Okay.  No, I -- I ruled.

16                   MR. DAVIS:  Thank you, Judge.

17                   THE COURT:  Yes.  Thank you.  All right.  And if you

18   all want -- again, I'm thinking we're going to start probably

19   closer to 10:45.  Because unfortunately since the Court has had

20   to do way more work than the Court planned in order to get all

21   these fonts, double check all this stuff, and still have you be

22   able to give knowledgeable presentations, I'd like to at least

23   have this a lot closer to being done.  All right.  And since,

24   Counsel, you only have one person at the table, it's not like a

25   lot of cases where one person can be looking at the jury

905

1   instructions while the other person is giving their argument.

2           And so we probably won't start till closer to 10:45.

3   Hopefully I'll get back out here in about let's say 15 minutes.

4   Okay.

5           Is there anything else?  Any agreements on evidence

6   that goes back?  Anything else I need to know about?

7   Plaintiff.

8           MR. DAVIS:  No, Your Honor.

9           THE COURT:  Defense.

10          MS. SCHWENDENER:  No, Judge.  I know we did have --

11  there was a stipulation that was submitted.  We got a copy --

12          THE COURT:  If you all don't have any problem with

13  it, I'm fine.

14          MS. SCHWENDENER:  Well, we, we do -- we, we did

15  submit a separate stipulation, Judge.

16          THE COURT:  Well, that's not a stipulation.

17          MS. SCHWENDENER:  Well --

18          THE COURT:  And we couldn't open yours at all.

19          MS. SCHWENDENER:  Oh.

20          THE COURT:  And this Court took the -- made the

21  assumption if somebody says there's a stipulation and they

22  submit it to me, then you guys have already figured out what

23  the stipulation is.

24          MR. DAVIS:  We don't have a problem with the stip,

25  Judge.

1    THE COURT:  I'm sure you don't.  You presented it.

2    MR. DAVIS:  Right.

3    THE COURT:  If they presented a different one, that's

4  not a stip.

5    MR. DAVIS:  And theirs is basically identical.  It

6  just changed a couple of typos.

7    THE COURT:  Okay.

8    MS. SCHWENDENER:  Judge --

9    MR. DAVIS:  So I don't know what the problem is.

10    THE COURT:  Okay.  Again, again, you all have to put

11  a stipulation in.  That's your agreement.  I'm not forcing that

12  down anybody's throat.  Now, it looked fine.  But if you have

13  something different, then you all need to talk about it, but we

14  were not able to open it.

15    MS. SCHWENDENER:  Okay.  I apologize, Judge.

16    THE COURT:  And since it -- it's not your -- I mean,

17  who knows what happened, but we weren't able to open that one

18  thing.  Okay.  So again, we're all working from various

19  locations, and sometimes it happens.  All right.  So see if you

20  all can get that together.  All right.  And then submit it as a

21  Word document or -- and we can print it out for you.  All

22  right.  Okay.  And then why don't you do this:  When you do it,

23  just to make sure we're really clear, the one you submit, the

24  plaintiff Dr. Adams by her counsel and defendants by their

25  counsel Board of -- you know, Board of Education of Harvey

1  defendants agree, stipulate.  Let's do that.  Then there's no

2  misunderstandings as to people sending forth different

3  stipulations.  All right.

4          MS. SCHWENDENER:  Sure.

5          THE COURT:  Let's see if we can get that done.  Okay.

6  Thank you.

7          MS. SCHWENDENER:  Thank you, Judge.

8          MR. DAVIS:  Thank you, Judge.

9      (Short break taken.)

10          THE COURT:  All right.  On the record.  All right.

11  There was an issue on 601.  First of all, as to the

12  compensatory damages, the Court is going to use the form

13  compensatory damages instruction that was submitted without

14  objection.  And it's only to deal with the mental and emotional

15  damages, which means that the verdict form does not get

16  adjusted because I am leaving that there.

17          The other big issue we had is on 601.  Both sides

18  presenting their, their instructions on that -- on the 601,

19  which is the elements instruction of free speech and

20  retaliation.  As initially put forth, the Court refused the

21  defense instruction.  Plaintiff had some suggestions in the

22  affirmative defense.  As to that, that submission, the Court's

23  going to refuse that one too.

24          The Court believes that based on what is shown by the

25  evidence and -- that has been presented, what has been pled in

1    the complaint, that the Court -- and so as not to confuse the

2    jury based on the evidence that was emphasized, particularly

3    the issue in the affirmative defenses that the board was

4    required to make a finding that plaintiff met her contractually

5    outlined performance and improvement goals and failed to do so

6    as to the contract extension, then the Court will not give the

7    other two instructions.  No. 2, which was plaintiff was

8    required to accept the one-year extension offered by the board

9    and did not do so or some form like that.

10          And No. 3, the one-year extension was never signed by

11   the plaintiff or defendants.  Again, the Court believes that

12   those, No. 2 and 3 bring in a whole issue of the validity of

13   the contract extension.  And based on the testimony that was

14   presented here particularly by the lawyer and the Board, the

15   Court believes that the appropriate non-confusing instruction

16   in this case is to present the affirmative defense as I stated.

17   If you find that the defendants did not prove the other

18   elements by a preponderance of the evidence, then you must

19   consider whether defendants proved their claim that plaintiff's

20   contract extension was invalid for the following reason:

21          The board was required to make a finding that

22   plaintiff met her contractually outlined performance and

23   improvement goals and failed to do so.  And then it goes on

24   from there.  So that is what the Court is -- finds is

25   appropriate in this case without going down another road, which

1   would require probably even more evidence as opposed to just a

2   whole nother set of instructions.  Plaintiff, do you have any

3   objection to the Court's proposed changes?

4            MR. DAVIS:  No, Your Honor.

5            THE COURT:  Defense, for the record do you have an

6   objection?

7            MS. SCHWENDENER:  Yes, Your Honor, for the record we

8   do object.

9            THE COURT:  All right.  And that would be in keeping

10  with what your affirmative defense position has been?

11           MS. SCHWENDENER:  Correct, Your Honor.

12           THE COURT:  All right.  Thank you.  And all

13  present -- all drafts will be made part of the record, and the

14  Court refusing them will also be made part of the record.  So

15  you can adjust your closing arguments if you need to.

16           Is there any other instruction that we need to deal

17  with?  I don't believe so.  Plaintiff, defense.  We're putting

18  them in the font now.  We will be starting around 11:15 with

19  closing arguments.  And we will do our best to -- we'll take a

20  break before I give the actual instructions so both sides will

21  sort of be at the same spot.  So I think it's better not to

22  give the instructions out to you as opposed to give them out

23  and one person can't use them.  So -- all right.

24           MR. DAVIS:  So the compensatory, just to clarify.

25           THE COURT:  Is the same.

910

1    MR. DAVIS:  Is the same.  Thank you.

2    THE COURT:  It hasn't been changed.  All right.  And

3    neither has the most recent verdict form.  All right.

4    MR. DAVIS:  Thank you, Your Honor.

5    THE COURT:  So if we can -- if we have something when

6    I come out at 11:15, if we have some full set to present to

7    you, we will do so.  All right.  Okay.  Thank you.

8    MR. DAVIS:  Thank you, Your Honor.

9    MS. SCHWENDENER:  Judge.

10   THE COURT:  Yes.

11   MS. SCHWENDENER:  One other thing.  We have not

12   formally rested yet.

13   THE COURT:  Yes, we have to do that too.

14   MS. SCHWENDENER:  Okay.

15   THE COURT:  We have to have you rest.  Do you have

16   some other exhibits?

17   MS. SCHWENDENER:  We do have exhibits, yes.

18   THE COURT:  Let's do that now.

19   MS. SCHWENDENER:  Okay.

20   THE COURT:  Oh.  And you all sent a stipulation.  Is

21   that agreed to?

22   MS. SCHWENDENER:  Yes, Your Honor.

23   MR. DAVIS:  Yes.

24   MS. SCHWENDENER:  That is agreed to.

25   THE COURT:  All right.  Okay.  We'll get that printed

1   out too.

2          MS. SCHWENDENER:  I sent it in -- we sent it in Word

3   and PDF.

4          THE COURT:  Yes, you sent it in both forms.  I saw

5   it.  All right.

6          MS. SCHWENDENER:  Judge, we have a hard copy of our

7   exhibits.  If I may hand those up.

8          THE COURT:  That's fine.  Does counsel have it

9   already?

10         MR. DAVIS:  Yes.

11         MS. SCHWENDENER:  I supplied them, yes, last week.

12         THE COURT:  All right.  Okay.  That's fine.  All

13  right.  Now, these are not duplicative, some of these?

14         MS. SCHWENDENER:  No, they are not duplicative, Your

15  Honor.

16         THE COURT:  Okay.

17         MS. SCHWENDENER:  No.  We took out our ones that

18  were.

19         THE COURT:  Okay.  So defense is at the close of

20  their case not having yet rested but having no more testimony.

21  Are you presenting the stipulation?

22         MS. SCHWENDENER:  I think it's already been

23  presented, Your Honor.

24         THE COURT:  In writing?  The one -- that one?  I

25  don't know if it has.  That's why you all were working on the

1   language.  Those witnesses it has not -- I don't believe it
2   has.  So what you can do is because you both are -- I think
3   it's just an agreement that these witnesses.  What you do is
4   rest, and the Court will present in addition to all the
5   evidence that you've heard the parties have agreed.  I can do
6   that.
7               MS. SCHWENDENER:  Sure.  Thank you, Your Honor.
8               THE COURT:  Is that okay with you, Counsel?
9               MR. DAVIS:  Yes.
10              THE COURT:  It's just as much your stipulation as
11   theirs.  So I can see where one side doesn't want to present it
12   in their case.  Just present it as a stipulation, which will be
13   part of the packet that goes back.  All right?
14              MR. DAVIS:  That's fine.
15              THE COURT:  Yes?  Yes.
16              MS. SCHWENDENER:  Yes, Your Honor.
17              THE COURT:  All right.  So defense you're presenting
18   for admission into evidence Exhibit 1?
19              MS. SCHWENDENER:  Yes, Your Honor.
20              THE COURT:  Any objection?
21              MR. DAVIS:  No, Judge.
22              THE COURT:  No. 2, any objection?
23              MR. DAVIS:  No, Judge.
24              THE COURT:  That's the set of e-mails.
25              MS. SCHWENDENER:  Yes, Your Honor, No. 2 was.

```
 1              THE COURT:  All right.  Regarding the contract.  And
 2    that's as of March 2nd.  And there's no objection.  Defendants'
 3    No. 3, Exhibit No. 3, which again, is e-mails regarding the
 4    contract, but this is dated March 4th on the top page; is that
 5    correct?  Any objection?
 6              MR. DAVIS:  In light of Your Honor's ruling, I'm
 7    wondering whether this draft version of the proposed new
 8    contract, I'm not sure it's germane to the issue that's still
 9    going in front of the jury.  So I'm not sure -- I think this
10    might confuse the jury.
11              THE COURT:  Well, first of all, I haven't said it
12    would go back.
13              MR. DAVIS:  Okay.
14              THE COURT:  That's different.
15              MR. DAVIS:  Okay.
16              THE COURT:  Admission into evidence is something
17    else.
18              MR. DAVIS:  Sure.
19              THE COURT:  So what's your position on admission into
20    evidence?
21              MR. DAVIS:  I don't have a problem with it being
22    admitted into evidence.
23              THE COURT:  Since it's been --
24              MR. DAVIS:  I've already got it in my exhibit.
25              THE COURT:  It's, it's been there.  Yes.  So it's
```

914

1    also been presented to the jury.

2                MR. DAVIS:  Right.

3                THE COURT:  All right.  It will be admitted into

4    evidence.

5                MS. SCHWENDENER:  Thank you.

6                THE COURT:  Especially since they are still

7    maintaining that this is part of the case.  All right.  And

8    then No. 4, that's August 19th, 2015.  All right.  Any

9    objection?

10               MR. DAVIS:  What is No. 4?  I've got 1, 2, and --

11               THE COURT:  It's one -- I have one page.  From Izzo

12   dated August 19th, 2015.  Is it supposed to be more than one

13   page?

14               MS. SCHWENDENER:  No, it's just one page, Your Honor.

15               MR. DAVIS:  We have 1, 2, and 3.

16               MS. SCHWENDENER:  I gave it last week.

17               MR. DAVIS:  Can you show me 4?

18               THE COURT:  It says one paragraph to Sara Boucek.

19   Here, Counsel, you want to come get it?

20               MS. SCHWENDENER:  I didn't bring an extra copy,

21   Judge.

22               THE COURT:  Here you go.

23               MR. DAVIS:  Yes, I don't have a problem.

24               THE COURT:  Okay.

25               MR. DAVIS:  Because we already have this in our -- as

1     one of our exhibits.

2              THE COURT:  All right.  I'll allow defense to put it

3     in too.  All right.  All right.  Thank you.  Anything else for

4     exhibits in evidence?

5              MS. SCHWENDENER:  Nothing further for exhibits, Your

6     Honor.

7              THE COURT:  So does defendant rest?

8              MS. SCHWENDENER:  Yes, Your Honor.

9              THE COURT:  Defendant rests.  And you can do so --

10    each side can do so.  They did it in front of the jury, did you

11    not, or did I tell them?

12             MR. DAVIS:  I'm not sure you told them, Judge.

13             THE COURT:  No, I think I did because they had to put

14    on their evidence.

15             MR. DAVIS:  Okay.

16             THE COURT:  They put on a witness.  Correct?

17             MS. SCHWENDENER:  I'm sorry, Your Honor?

18             THE COURT:  Because you all put on witnesses, so I

19    did --

20             MS. SCHWENDENER:  We did.  We --

21             THE COURT:  Yes.

22             MS. SCHWENDENER:  -- directed everybody.

23             THE COURT:  So you rested, and then they did it.  So

24    I can just tell them or -- so it can be equal.  You don't

25    remember, Counsel?

1          MR. DAVIS:  Yes, I'm not clear.

2          THE COURT:  No, I did.  I said defendant has rested

3     their case.  And it was --

4          MR. DAVIS:  Okay.

5          THE COURT:  -- yes.  Yes.  All right.  So defense

6     rests their case.  Is there any motion at the close of

7     defendants' case?  Are you ready to go to closing arguments?

8          MR. DAVIS:  I'm ready to go to closing arguments,

9     Judge.

10         THE COURT:  All right.  All right.  Counsel.

11         MS. SCHWENDENER:  Yes, Your Honor, we do have a

12    renewed Rule 50 motion on, on Count 1 --

13         THE COURT:  All right.

14         MS. SCHWENDENER:  -- and on the affirmative defenses.

15         THE COURT:  All right.  For the reasons that have

16    been discussed, the Court denies the motions at this time.  All

17    right.  I will give you all -- did you have written?

18         MS. SCHWENDENER:  Yes, Your Honor.  I do have a

19    written motion.  May I submit it to the Court?

20         THE COURT:  You may submit it to the Court.  Did the

21    defense get -- I mean, plaintiff get theirs?

22         MR. DAVIS:  I'm just seeing it now, Judge.

23         THE COURT:  All right.  Well, you know what I'll do

24    since you have a written one and he's just seeing it, I'm going

25    to reserve ruling --

1      MS. SCHWENDENER:  Thank you, Your Honor.

2      THE COURT:  -- until the close of the case.  The case

3  goes forward.  All right.

4      MS. SCHWENDENER:  And, Your Honor, if I may add.

5  There was some additional authority that we added in our brief.

6      THE COURT:  Oh, all right.  Do you have it?

7      MS. SCHWENDENER:  It's, it's contained in the brief.

8  Yes.

9      THE COURT:  Okay.

10     MS. SCHWENDENER:  Yes.

11     THE COURT:  All right.  And would this be adjusted at

12 all in any way, shape, or form by the Court's statements on the

13 issue of contracts?

14     MS. SCHWENDENER:  Slightly.

15     THE COURT:  All right.  Then -- I mean at least

16 adjusted for the way the Court looks at the evidence that has

17 been presented?

18     MS. SCHWENDENER:  Yes.

19     THE COURT:  Okay.  Thank you.

20     MS. SCHWENDENER:  Thank you, Your Honor.

21     THE COURT:  Anything else before we go on to closing

22 arguments, plaintiff?

23     MR. DAVIS:  No, Judge.

24     THE COURT:  Defense.

25     MS. SCHWENDENER:  No, Your Honor.

1    THE COURT:  All right.  Let me see if I can make

2    sense of the reams of paper that you have given me, and we'll

3    be out in about 10 minutes tops.  So be ready.  If you want to

4    adjust the, the podium, you can.  As to evidence that goes back

5    to the jury, there's the stipulation and what else?  I think

6    there's two stipulations, aren't there?

7    MR. DAVIS:  One.

8    MS. SCHWENDENER:  Just one.

9    THE COURT:  Just one in writing.

10   MS. SCHWENDENER:  Correct, Your Honor.

11   THE COURT:  There was something else we did agree to

12   that was not in writing.  Think about it, but there was.  At

13   the close of the plaintiff's case there was one more

14   stipulation.

15   MS. SCHWENDENER:  Your Honor, I honestly don't

16   recall.  The only other stipulation --

17   THE COURT:  All right.  Then we've got to try to look

18   it up and find out, but there was one that I said and the

19   parties agree on.  It was an issue and it was at the close of

20   the plaintiff's case.  I don't know if Miss McCullough was here

21   for that.  If she was, she can look for the end of the case,

22   and we see if we can find it.  But there was a very brief

23   statement that I read that you both agreed on.  I said a

24   stipulation is an agreement between the parties.  I did the

25   whole thing to them already.  So, okay.  So everybody see if

```
 1    you look back over your notes.  The Court will too.
 2            Miss McCullough, if you can take a look if you were
 3    here at the close of the case.  That would have been on Friday
 4    or Thursday?
 5            MR. DAVIS:  Friday.
 6            THE COURT:  Yes, they were here -- it would be
 7    Friday.  All right.  Thank you.
 8        (Short break taken.)
 9            THE COURT:  Court's back in session.  Is there
10    anything else on the record?
11            MR. DAVIS:  No, Judge.
12            THE COURT:  Anything else?
13            MS. SCHWENDENER:  No, Your Honor.
14        (Before the jury:)
15            THE COURT:  Good morning.  You may be seated, ladies
16    and gentlemen.  All right.  Thank you for bearing with the
17    Court's schedule.  The Court almost actually had the trifecta
18    in what I believe and I've said I thought was important for
19    every citizen.  This Court was off Monday because I attended
20    the burial service of one of our fellow colleagues here, George
21    Leighton, who the criminal courthouse is now named after, 105
22    years old.  He died in June, and he was buried -- his last wish
23    was to be in Arlington.  And Arlington is getting pretty
24    crowded unfortunately, and so they have tightened the
25    requirements.
```

920

1       Judge Leighton had a bronze star, served admirably,

2    but they weren't sure, even though he had been a federal judge

3    for over 12 years and served his country.  But we found that he

4    was a POW.  He just never told anybody.  So he was able to be

5    buried there.  So I have the military service, which got to

6    honor your being, and being in the middle of a jury, which is

7    part of citizenship, and we're all voting.  So all of that, the

8    three prongs I think of citizenship for United States citizens.

9    And you are a part of it, and so the Court appreciates you

10   giving me that time to go and make that trip on Monday, which

11   is -- was just amazing.

12       So anyway we are here to continue the case, as I told

13   you we'd do on Tuesday.  I am told that but I need it to be

14   affirmed that there is no further evidence to present from the

15   defense, is that correct?

16            MS. SCHWENDENER:  That's correct, Your Honor.

17            THE COURT:  All right.  Defense rests?

18            MS. SCHWENDENER:  Yes, Your Honor, we rest.

19            THE COURT:  All right.  Again, ladies and gentlemen,

20   you have heard all the evidence.  This Court had cautioned you

21   from the beginning that you were to keep an open mind through

22   the plaintiff's case.  And then the plaintiff rested his

23   case -- her case, and then the defense will present whatever

24   additional evidence they wish to.  They have done that.  So now

25   we have come to the time that you will hear closing arguments.

921

Davis - closing argument

1   Closing arguments are presentations by each side as to what
2   they believe the evidence has shown.
3          What they say again is not evidence.  If you believe
4   something they say is not in the evidence, that's up to you and
5   the other jurors to decide.  But the Court is certain that you
6   will be helped and find the arguments very interesting.
7   Proceed, Counsel.
8          MR. DAVIS:  Thank you, Your Honor.
9          THE COURT:  All right.  Mr. Davis.
10      CLOSING ARGUMENT ON BEHALF OF THE PLAINTIFF
11         MR. DAVIS:  Good morning, ladies and gentlemen.
12  Again, I want to thank you at the outset for your sacrifice
13  being here.  I'm sure you all had other things to do and other
14  places to be.  On behalf of my client we appreciate your
15  attention and your participation in this case.
16         At the outset I want to go back, because I told you
17  in the beginning of this case pay attention to one date,
18  July 10th, 2015.  And I told you that you were going to hear
19  the other side say what we did when we rescinded Dr. Adams'
20  contract had nothing to do with her speech.  Nothing to do with
21  anything.  And I told you use your common sense and look at how
22  she was treated before July 10th, 2015 and how she was treated
23  after.  And then you can make the determination, you can draw
24  the inference that what happened on July 10th was the
25  motivating factor for the decision to renege on the contract

Davis - closing argument

1   extension.

2          So you've heard testimony that before July 10th, 2015

3   Dr. Adams was doing admirable work in the district.  She's a

4   career educator with over 20 plus years of experience.  She

5   came to a district, Harvey 152, which had been miserably

6   failing kid for decades.  She rolled up her sleeves.  She went

7   to work.  She made great significant progress on bringing

8   improvement to the educational opportunities for the children

9   in her district.

10          You heard from Reverend Calvin Gooch that prior to

11  July 10, 2015 he regularly attended meetings where the

12  defendants praised Dr. Adams.  Said she was one of the best

13  superintendents in Illinois.  And this didn't happen just once,

14  this happened multiple times.

15          The evidence also shows that Dr. Adams had an

16  employment agreement that she was employed under.  And in that

17  agreement there were certain performance goals that she had,

18  and those goals were in primarily two areas, student academic

19  achievement and professional growth.  These goals were

20  incorporated we showed you into an annual goal setting cycle

21  that was used by the district to monitor Dr. Adams' performance

22  relative to her contract performance goals and to determine

23  whether the district was meeting its objectives.

24          The evidence shows that on June 1st, 2014 Dr. Adams

25  met with the defendants.  They talked about the goals.  And

Davis - closing argument

1   that those goals were then evaluated again in December 2014 at
2   a retreat and again in January 2015 to measure and see if she
3   was performing meeting her goals.  We showed you how according
4   to the goal cycle chart in January of 2015 the board met and --
5   the defendants and prepared a performance evaluation for Dr.
6   Adams.  And that performance evaluation, the very top of it
7   said superintendent's performance goals or something to that
8   effect.

9           Basically like any other job you get measured on how
10  you do relative to the objectives or goals that your employer
11  gave you.  The idea that the goals in her performance
12  evaluation are different from the goals in her contract is
13  silly.  Why would you have a teacher -- a superintendent whose
14  performance goals in the contract say student academic
15  achievement and then not measure that, is she accomplishing
16  that in her report card, which is basically the performance
17  evaluation?

18          So the evidence has clearly shown that in the two
19  years Dr. Adams was evaluated she never received an
20  unsatisfactory rating in any category.  That she had a good
21  performance record in achieving the goals that were set by the
22  district.  So much so that in February 2015 the defendants
23  approached her and said we don't want to lose you.  We know
24  you're in the last year of your contract, so we need to extend
25  your contract by one year because we don't want you looking for

924

Davis - closing argument

1    a job in that last year.  And so Dr. Adams agreed, and she
2    agreed to extend her contract.  The identical contract she had
3    been working under from 2013, on the same identical terms, she
4    agreed to an extension.

5         The evidence shows that the defendants voted on
6    February 23rd, 2015 to extend Dr. Adams' contract.  After they
7    voted to extend her contract, they called her in the room.  You
8    heard Janet Rogers say, hey, your contract is extended.  That
9    was it.  She didn't say go talk to your lawyer.  Bring some
10   papers back.  Sign something.  Sign here.  Nothing.  Your
11   contract's been extended for one year.  That's what she said,
12   and that's what happened.  And so Dr. Adams continued after
13   February 23rd, 2015 working, believing she had a one-year
14   extension on her job.

15        She went to a retreat.  Another retreat.  They liked
16   retreats.  June of 2015.  What do they talk about at the
17   retreat?  The goals.  Dr. Adams stood up and gave a
18   presentation.  She showed what she had been doing relative to
19   the goals.  The evidence shows nobody complained.  Nobody
20   raised any performance issue.  Nobody said she wasn't meeting
21   the board's expectations.  No problems.  June of 2015.

22        Now, on July 9th Dr. Adams said she circulated a
23   proposal for an audit of the district's finances.  She had
24   concerns that the district wasn't managing its federal and
25   state funds properly.  So she asked the board can I do this at

Davis - closing argument

1  the retreat, and the board -- in June.  And the board said,
2  sure.  Go ahead.  However, on -- put a proposal together.
3  However, the evidence shows that on July 9th she sent that
4  proposal out, and Tyrone Rogers got that proposal, and he was
5  upset, because you heard him say I thought we were going to
6  have her audit vendors and contractors.  I didn't know she was
7  going to include us.  How dare her include us.  Nobody audits
8  us.  We're the board.  We audit ourselves.

9            Right after that proposal came out and Tyrone Rogers
10 saw it, the evidence shows Dr. Adams shortly thereafter got a
11 phone call.  You saw the phone records, July 9th, 2015.  And he
12 lit into her.  And he said words I hate to even repeat, but I
13 have to.  He threatened her.  He told her you're itching for an
14 ass kicking or an ass whipping, to be correct, when he saw that
15 RFP.  Like anybody she was upset.  She's a professional.  She
16 goes to work as a professional.  She acts as a professional.
17 She expects to be treated like a professional.  Nobody should
18 be subjected to that type of treatment on any job.  I don't
19 care where you work.

20            But she dusted herself off, and the next day she went
21 to work.  And she told a couple co-workers what happened.  And
22 shortly thereafter you heard testimony from Detective Wright,
23 who says he was dispatched to the school to talk to Dr. Adams,
24 and he came and he talked to Dr. Adams.  And Dr. Adams hadn't
25 even called the police.  She was surprised he showed up.  But

Davis - closing argument

1   she talked to him, and she told him what happened.  That when

2   she sent out the audit, Mr. Rogers called her up and threatened

3   her.  But she told him I'm not sure I want to file a police

4   report right now.  I'd rather -- I'm going to try to work it

5   out with the board.

6          And so Detective Wright said she didn't ask to file a

7   police report right then.  He left.  Shortly after he left,

8   Janet Rogers, wife of Tyrone Rogers comes in her office and

9   hands her a piece of paper calling for a special board meeting.

10  Emergency.  This wasn't even a board meeting that was

11  scheduled.  To talk about what?  Disciplining her.

12  Disciplining her about something called Echo.  Okay.

13         So that same day July 10th Dr. Adams testified that

14  she told Gloria Johnson, who was president of the board, what

15  Tyrone Rogers did.  And Gloria Johnson told her she would take

16  it to the board and come back to her.  But then Gloria Johnson

17  testified she went and talked to Tyrone Rogers, and Tyrone

18  Rogers said it never happened.  So what happened?  Gloria

19  Johnson accepted what Tyrone Rogers had to say.  Didn't

20  investigate any further.  And according to her testimony, never

21  approached the full board about it.  This is similar.  We've

22  seen these situations before where the woman's not believed

23  when she makes an accusation against a powerful man.

24         So it was clear to her at that point they weren't

25  going to do anything.  So she went home that weekend.  She

Davis - closing argument

1   talked to her family, and she decided I just can't accept this.
2   And so when she came back on Monday the 13th, she called
3   Detective Wright and said I want to file a complaint.
4   Detective Wright came to the school.  She told him again what
5   Tyrone Rogers had said and that he said it after she circulated
6   a proposal for an audit.  And at that point Detective Wright
7   told her I'm not going to do anything with this.  You've got to
8   work it out with the school board.

9           So at that point Detective Wright took a police
10  report but -- and he left.  What happened right after he left?
11  Janet Rogers shortly thereafter put out another memo item,
12  agenda item for the special board meeting.  Once again
13  repeating that she wanted to discipline her because of Echo.
14  What happened next?  On July 22nd Janet Rogers reached out to
15  Gloria Johnson and said she wanted the lawyer at a meeting on
16  July 22nd, and she wanted the lawyer there to talk about the
17  contract extension because she determined that the contract
18  extension that they had voted for in February was no longer
19  valid because they didn't make sure that Dr. Adams had met her
20  goals.  This is Janet Rogers before she ever met with the
21  lawyer determining what was going to happen.

22          So what did Gloria Johnson do?  She dutifully asked
23  the lawyer to be there, Mr. Izzo.  Now, let's go back for a
24  minute and remember we heard Janet Rogers on tape saying in
25  February when they approved the extension, I checked with the

Davis - closing argument

1   lawyer.  The lawyer said the extension is good.  We can do it,

2   one to five years.  Who was the lawyer at that time?  Who was

3   the law firm?  Hauser Izzo.  So nobody raised any concerns in

4   February about the extension, whether it was valid, whether she

5   met goals.  No problem.

6          We also saw evidence that her former lawyer sent Mr.

7   Izzo a draft agreement and talked about that the contract

8   extension had been approved in March of 2015.  No alarm bells

9   from Mr. Izzo.  No concern whether the contract extension was

10  valid.  Nothing.  Yet at a meeting on July 22nd Janet Rogers

11  announced to the group, you know, those goals that we gave her

12  that she's been working under for over a year, those don't

13  count no more.  Those are generic.  So let's forget all the

14  legales.  Let's boil this down to something we can all

15  understand.

16         Imagine you're on the job and the job announces a

17  bonus program, and they set certain criteria to get a bonus at

18  the end of the year.  You work hard.  You meet all the

19  criteria.  The job then tells you -- gives you a performance

20  evaluation and said you've done good.  You met all the

21  criteria.  They give you a letter.  You're entitled to the

22  bonus.  They even tell you how much the bonus is going to be.

23  Then all of a sudden you say something about a supervisor that

24  he or she didn't like, and then shortly thereafter you're

25  summoned into the office and they tell you, hey, you know that

Davis - closing argument

1   bonus that we said you were entitled to, you're not getting it
2   now.  We decided we made a mistake.
3          The criteria that we gave you wasn't the right
4   criteria, and they pull it back with no hearing, no notice.
5   And they just tell you you're not getting that extension.
6   That's what happened here.  It's just that simple.  It's not
7   complex.
8          So following -- they did this when they told Dr.
9   Adams they were yanking back the contract extension at a
10  meeting on August 17th, 2015.  Tyrone Rogers was on the warpath
11  at that meeting.  He wanted Dr. Adams fired.  He wanted her out
12  right away.  Said he couldn't sleep if she wasn't gone that
13  day.  The other board members, the other defendants said, oh,
14  wait a minute.  We got to, you know, kind of go through a
15  process.  We'll get there, but we got to go through a process.
16         So what was that process?  Let's create some phony
17  disciplinary write-ups.  So we're going to talk, No. 1, Echo.
18  Well, what was Echo?  Echo was a mistake that they made in how
19  much they billed the district.  Nothing she did.  Sophia -- Dr.
20  Jones-Redmond testified the bills from Echo predated Dr. Adams
21  even coming in the district, and that the Echo billing problem
22  was purely a problem with Echo and its poor billing records.
23         Further, the evidence shows Janet Rogers first
24  learned about the Echo billing problem in May of 2015.  Did she
25  bring it up at the retreat?  No.  In June?  Did she get on the

Davis - closing argument

1  phone and tell the board members we got a problem with Echo?
2  No.  Suddenly, though, after Dr. Adams made the police report
3  on July 10th, she pulled Echo out of her hat, we'll say.  And
4  Echo was this major disciplinary infraction because Dr. Adams
5  didn't timely tell them about the under billing in Echo.

6         But one of the ways you can tell whether retaliation
7  is going on is you can compare the way the employer treats
8  different people who are in the same situation.  So on the one
9  hand with Dr. Adams they wanted to rescind the contract because
10 of Echo, $175,000 under billing.  How did they treat her
11 predecessor, Eric Kellogg?  The evidence shows he didn't go to
12 Echo meetings for six months.  That the district lost untold
13 amounts of money because they were sending children with
14 special needs to Echo and the place was closed.  They were
15 paying for these kids to go there.  The place was closed.  They
16 weren't getting served.  What did the board do?  They didn't do
17 anything.  They gave Mr. Kellogg a financial golden parachute
18 when he left the district.  He didn't get disciplined.

19        Also the board minutes show that the board thought
20 all the administrators, Dr. Adams, Sophia Jones -- Dr. Sophia
21 Jones-Redmond, and Dr. Nohelty should be disciplined because of
22 the Echo because they each had a part in it.  But what
23 happened?  No discipline for Dr. Sophia Jones-Redmond.  No
24 discipline for Mr. Nohelty -- Dr. Nohelty.  The only person
25 disciplined, Dr. Denean Adams.

Davis - closing argument

1    So again, when trying to determine retaliation,
2    counsel is going to tell you, well, there's no evidence they
3    ever said we are retaliating.  Well, I'll let you in on a
4    secret.  That doesn't happen in most of these cases.  People
5    aren't usually that stupid to go to a board meeting and say in
6    the mike can everybody hear me?  We're now retaliating.  That's
7    not how it works.  They cloak it in phony charges.  Just like
8    on your job.  They'll come up with some phony excuse.  All of a
9    sudden you can't do nothing right.  That's what happened here.
10   And they'll single that person out they don't like to be
11   treated differently than everybody else.

12   So they didn't stop with the Echo situation.  And
13   there's another contrast with Echo before we move on.  175,000,
14   she didn't notify them.  Rip that back, the contract extension.
15   Remember Dr. Nohelty?  Dr. Nohelty said he went without
16   authorization, without notifying the board and took
17   $3.8 million out of the Board's reserve bank account.  This is
18   like your spouse going in the savings account without your
19   knowledge, and you think you've got money in the savings
20   account, and one day you discover it's just gone.  That's what
21   Dr. Nohelty did.  Did they discipline Dr. Nohelty,
22   $3.8 million?  No.  In fact, when she tried to discipline him,
23   they suspended her.

24   Again, common sense.  Why are they treating her this
25   way after July 10th?  Retaliation.  So they didn't stop with

Davis - closing argument

1   Echo.  They then said she was signing contracts without
2   authorization.  But the evidence showed she had always been
3   allowed to sign these kind of contracts.  And she had a good
4   reason for signing the contract.  She signed the contract to
5   save the district money.  And, oh, by the way, Dr. Nohelty the
6   evidence shows did the same thing.  What did they do?  They
7   disciplined Dr. Adams.  What did they do to Dr. Nohelty?
8   Nothing.

9         They talked about she was absent from the district.
10  But she had nine days absent by August 17th.  Nine days out of
11  what she could have took under her contract.  She had over 30
12  some days vacation and personal time.  She never took that.
13  And all of the days that she was absent before August 17th were
14  preapproved by the board.  So here again your employer tells
15  you, ah, take the time off.  No problem.  But now all of a
16  sudden problem.  Why?  Why did it change after July 10th?  It
17  was because of retaliation.

18        And finally, they said she changed the summer school
19  schedule, and they didn't tell -- she didn't tell them in
20  advance.  But then the evidence shows that was a lie too.  They
21  got the schedule in June in a newsletter, and it told them
22  attached to it was a change in the schedule.  And why did she
23  do it?  She did it because she was concerned about the safety
24  of kids.  She didn't want kids to be in the building alone.
25  And she testified that that's what the survey that the state

933

1    had taken showed, that kids felt unsafe in the building.  So

2    she wanted to make sure an administrator was there when the

3    kids were there and that the kids would feel safe.

4           Evidence shows it didn't cost the district any more

5    money because of the way she arranged the schedule.  So what

6    was the problem?  There was no problem.  Again, it's sham

7    discipline made up after the fact because they decided they

8    wanted to punish this woman.

9           So Tyrone Rogers agreed, testified that after

10   August 17th they engaged in a campaign of disciplinary action.

11   They just kept hitting every other month, every month.

12   October 19th he testified they had on the agenda disciplinary

13   action against the superintendent.  November he testified they

14   had a disciplinary action against the superintendent.

15   December, they reversed her suspension of Dr. Nohelty for

16   violating board policy.  And in turn in January they suspended

17   her for suspending Dr. Nohelty.  Even though the evidence shows

18   she went to them before she even suspended Nohelty, and they

19   told her, oh, go ahead.  Do what you want to do.

20          So you heard Reverend Gooch say she couldn't do

21   anything right.  She kept picking herself up, thinking it would

22   get better.  She kept saying it's all about the kids.  She kept

23   trying to make it better.  And every time she picked herself

24   up, he said they knocked her down.  And it continued, and she

25   had to go to a doctor for treatment because of the issues and

Davis - closing argument

1    the emotional turmoil and the hell that she was in.

2           And that turmoil like all of us, we don't just leave

3    it at the job.  It comes home with us whether we want to or

4    not.  It seeped into their bedroom.  It seeped into their

5    relationship.  And it continued until finally she was forced

6    out of the district on an unpaid medical leave in March of

7    2016.  So I ask you, consider all the evidence.  Use your

8    common sense.  And in addition to that, I want to leave you

9    with one thing.  You're the judge.  You decide.  And your

10   decision can be based on simple credibility.  Who do you

11   believe?

12          Do you believe that Dr. Adams on July 10th for no

13   reason at all lied and made a false police report saying that

14   Tyrone Rogers threatened her?  There's no evidence in her

15   history, no evidence of tension between her and Rogers.  You

16   would have to believe she's pathological to think that out of

17   nowhere -- these people were treating her right.  They had gave

18   her an extension.  She was getting good performance reviews.

19   But somewhere on the 10th she decided I'm going to call and

20   make a false police report.  If you believe that, then you're

21   probably going to give a verdict for the defense.

22          But if you believe Tyrone Rogers is lying and if you

23   believe that he lied about calling Dr. Adams and threatening

24   her and if he lied about one thing, you can assume he lied

25   about everything else, and you can disregard everything he said

Davis - closing argument

1   about the goals and didn't make the goals.  He's a liar.  The

2   same thing with Janet Rogers.  If she told you I didn't even

3   know when I went up there on the 10th and gave Dr. Adams that

4   disciplinary call for a special meeting, I didn't even know the

5   police had been there.  But you heard her on tape saying she

6   got a call that the police was there.

7            So if she lied about that, you can assume she lied

8   about everything.  You don't have to believe anything that she

9   says.  You don't have to believe her when she says the goals

10  were generic.  You can use your common sense and say, naw.  You

11  moved the goal post.  You had goals.  She worked hard.  She did

12  her job.  And then because you got mad, you moved the goal

13  post.  You changed the rules of the game to punish her.

14           And the same thing with Gloria Johnson and Betty

15  Johnson.  If you don't think they were truthful when they said

16  they didn't know nothing about the police report, Betty

17  Johnson, I heard it from the grapevine.  But the grapevine she

18  admitted could include her fellow board members.  Okay.  If you

19  don't believe her when they say, well, we didn't know Tyrone

20  Rogers hated Dr. Adams' guts, even though every board he was

21  pounding on the tables talking about how much he hated her.

22  You think they're lying, you can disregard everything.

23           You heard them on tape colluding together.  Janet

24  Rogers and Tyrone Rogers was the main instigators, but you

25  heard Kisha McCaskill, you heard the other board members in

936

Davis - closing argument

1  there.  Betty Johnson, Gloria Johnson, all saying, well, what
2  are we going to tell her?  What are we going to do?  And
3  McCaskill saying, well, she been under these goals for a year
4  and a half.  What are we going to say?  And Betty Johnson,
5  well, you know she's going to lean on those goals she's been
6  working under.  Ah, we're going to -- don't worry about that.
7  We're going to, we're going to say it was illegal.  No, it
8  wasn't illegal.  It was ineffective.  Ah, whatever.  We're
9  snatching this contract extension back.
10          And so remember what Attorney Izzo said.  If they
11  lied to him, then his advice was useless.  His advice that the
12  contract was ineffective, the contract extension was solely
13  based on what they told him.  So if you decide these people
14  lied, then you can assume they lied to him, and then you can
15  disregard what he had to say about the contract being
16  ineffective.
17          So again, ladies and gentlemen, I think when you look
18  at all the evidence and you use your common sense, you'll
19  conclude that Dr. Adams, Dr. Denean Adams they wrongfully
20  retaliated against her and took her contract rescission --
21  contract extension and that she has suffered greatly because of
22  it.  And I trust you'll return a verdict for Dr. Adams and
23  compensate her for the hell she's had to endure.  Only you can
24  do it.  You're the judge.  Nobody else.  It's in your hands.
25  Thank you, ladies and gentlemen.

937

Schwendener - closing argument

1      THE COURT:  Thank you very much, Mr. Davis.  And,
2   Miss Schwendener.
3      CLOSING ARGUMENT ON BEHALF OF THE DEFENDANTS
4      MS. SCHWENDENER:  Thank you, Your Honor.  Good
5   morning, ladies and gentlemen.  Do you remember in opening
6   statements where I told you that plaintiff was going to try and
7   confuse the issues of this case and complicate things?  They
8   succeeded.  I promise you I'm not going to spend any time
9   talking about circle goals, triangle goals, performance flow
10  charts.  This is really a simple case.
11      The issue that you need to consider is whether the
12  board members retaliated against plaintiff for filing the
13  police report as a result of Mr. Rogers' alleged statements.
14  The answer is no, they did not.
15      We know in February of 2015 that the board voted to
16  extend plaintiff's contract for one year.  That fact is not in
17  dispute.  What is in dispute is whether the offer was valid.
18  In other words, did the board have the authority to do what
19  they did?  And they did not.  There's never been a finding that
20  plaintiff met her goals.  The contract, which everyone heard
21  testimony about, was very specific.  There were specific
22  contractual goals that plaintiff had to meet in order for her
23  contract to be extended and rolled over.
24      There were two contract goals, whether the
25  superintendent -- that the superintendent will provide

Schwendener - closing argument

1  leadership to improve student academic growth.  The second goal
2  was the superintendent would provide leadership in
3  strengthening the skills of all certified staff.  Those goals
4  had to be met.  It's not an evaluation of whether -- how
5  plaintiff was doing on their goals.  There had to be a finding
6  that the plaintiff met those goals in order for her contract to
7  be extended or rolled over.
8         You heard testimony from John Izzo, who is an
9  attorney.  He testified that he did not know the board voted to
10 extend plaintiff's contract for one year back in February of
11 2015.  He testified that he was surprised when he learned that
12 the board had voted to extend the contract.  He wasn't at the
13 February 2015 meeting.  Plaintiff has no evidence to refute
14 that.  There were no witnesses to say that Mr. Izzo should have
15 known that an extension was given.  After Mr. Izzo found out
16 about the extension, there was a discussion over whether
17 plaintiff had met her goals.  Whether there had been a finding
18 that plaintiff met her goals.
19        Mr. -- Mr. Izzo confirmed that plaintiff's contract
20 explicitly states in order for the contract to be extended,
21 plaintiff had to first meet her goals.  They were very specific
22 goals.  Those goals were found in the contract.  They were not
23 circle goals.  They were not triangle goals.  They were not
24 flow chart goals.  They were not district goals that were
25 discussed at retreats.  They were personal and specific to the

Schwendener - closing argument

1  plaintiff.

2           Now, let's talk about the audit.  Plaintiff requested

3  an audit into the district's finances.  Again, we don't dispute

4  that.  You heard testimony from plaintiff, Janet Rogers, Tyrone

5  Rogers, Gloria Johnson and Betty Johnson that the board was in

6  favor of the audit.  Plaintiff agreed.  Mr. Rogers said

7  plaintiff should be commended for looking out after the

8  district's finances.  Plaintiff agreed.  Plaintiff even

9  admitted that Mr. Rogers said that to her.  We know that

10  plaintiff did prepare a proposal for the audit.  Counsel played

11  the tape for you from that board meeting where the audit

12  proposal was discussed.

13           Now, plaintiff wants you to believe that Mr. Rogers

14  was outraged over this proposal.  She claims that he was

15  furious.  So furious that he allegedly apparently told her that

16  she was itching for an ass whipping.  However, again you heard

17  the tape, that was played for you, when the proposal was

18  discussed.  You heard Mr. Rogers discussing the proposal.  Mr.

19  Rogers was speaking calmly.  He said the proposal was fine.  He

20  said he had nothing to hide if plaintiff wanted to look into

21  the individual board members' finances.  He wasn't outraged.

22  He wasn't furious.  He said he had nothing to hide.

23           Now, Mr. Rogers denies making any threats to

24  plaintiff.  There was no witnesses to the statement.  Again, it

25  doesn't make sense.  Why would Mr. Rogers who was in favor of

Schwendener - closing argument

1   the proposal -- the initial request for the audit and then the
2   subsequent proposal that plaintiff submitted, he was fine with
3   it.  He was in favor of it.  He had no problems with it
4   whatsoever.  It doesn't make sense that he would then suddenly
5   threaten her as a result.

6          In a short while you will be getting instructions
7   from Judge Coleman.  These will instruct you on the law.  As
8   you will hear, it is plaintiff's burden to prove by a
9   preponderance of the evidence that defendants violated her
10  constitutional rights to free speech by rescinding the contract
11  offer after she filed a police report.  There are four elements
12  that plaintiff must prove in order to establish retaliation.
13  Plaintiff must prove all four.  Not one, not two, but all four
14  of them.

15         The first element is that plaintiff filed the police
16  reports.  Well, she know she did.  That's not in dispute.  The
17  second element is that defendants intentionally rescinded her
18  contract extension.  There has not been a single witness who
19  testified over the last week that establishes any of the board
20  members intentionally rescinded her contract extension.  The
21  board members testified that they rescinded her contract
22  extension based on the advice of their attorney.

23         Moreover, plaintiff never even accepted the contract
24  extension.  You heard testimony that through her attorney she
25  requested changes to the, to the offer.  She never accepted the

Schwendener - closing argument

1    year.  The third element is that plaintiff's filing of a police
2    report was a reason the defendants rescinded the contract
3    extension.  It was not.  Plaintiff did not call a single
4    witness to testify that the board members rescinded the
5    contract because of the police report.  None of the board
6    members even saw the police report.  Tyrone Rogers never saw
7    the police report.  Not a single witness testified that the
8    decision to rescind the contract had anything to do with the
9    police report.
10            Significantly the board members did not testify that
11   the decision to rescind the contract had anything to do with
12   the police report.  It was because their attorney told them
13   what they did in February was ineffective, and they had to
14   correct that.
15            The final element is that defendants' rescission of
16   the employment contract extension will be likely to deter the
17   ordinary -- an ordinary employee in plaintiff's position from
18   engaging in similar speech.  There was no adverse employment
19   action.  Plaintiff -- the contract extension was invalid
20   because she had not met her goals.  Nothing was taken away from
21   plaintiff.  The contract extension was invalid.
22            You will also get another jury instruction that says
23   you must consider that the board of Harvey School District.
24   152 can only act through a majority of the members.  If you do
25   not find that a majority of the individual defendants are

Schwendener - closing argument

1   liable, you may not find that the Board of Education of Harvey
2   School District is liable.  If you find that a majority of the
3   individual defendants are liable, then must find that the Board
4   of Harvey education school district is liable.

5          Three of the board members didn't even testify.
6   There's been no testimony or evidence establishing what those
7   board members were thinking or why they voted.  Tyrone Rogers,
8   Janet Rogers, Gloria Johnson, and Betty Johnson all
9   consistently testified that the Board's collective vote to
10  rescind the contract had absolutely nothing to do with the
11  police report that plaintiff filed, her request for an audit,
12  or Mr. Rogers' alleged statement.

13         Ladies and gentlemen, on behalf of myself, my
14  partner, and the defendants we thank you for your time over the
15  past week.  We are confident that after you consider all the
16  evidence and testimony, you will return a verdict in favor of
17  the defendants and against the plaintiff.  Thank you.

18         THE COURT:  Thank you very much, Miss Schwendener.
19  Mr. Davis.

20         MR. DAVIS:  Briefly, Your Honor.

21         THE COURT:  Yes.  Ladies and gentlemen of the jury,
22  because the plaintiff has the burden of proof, the plaintiff
23  does get to go twice in the arguments.  All right.  Briefly.
24  You have about 10 minutes left of your time, Counsel.

25         MR. DAVIS:  I promise to be brief.

Davis - rebuttal argument

1        THE COURT:  All right.

2    REBUTTAL ARGUMENT ON BEHALF OF THE PLAINTIFF

3        MR. DAVIS:  I'm sure you'll be happy to know that.

4    Just like I said, counsel's going to tell you nobody said we're

5    retaliating, we're retaliating.  Again, I ask you just use your

6    common sense.  They don't have to say we're retaliating.  And

7    just because they say it didn't have nothing to do with your --

8    Dr. Adams' speech, doesn't mean that's the truth.

9        Counsel told you there's been no finding that

10   plaintiff met her goals.  What is the performance evaluation?

11   It says superintendent performance goals at the top.  Have you

12   ever been on a job where you get an evaluation, but that

13   evaluation is not really measuring your performance?  What's,

14   what's the evaluation for?  Again, common sense.  That's -- you

15   know, it makes no sense.

16       And counsel indicated that we didn't hear from some

17   of the Board members.  We heard from them.  We heard from them

18   on the tape in July 22nd where they were all colluding talking

19   about what we going to do?  What we going to call it?  How are

20   we going to rescind it?  We heard Linda Hawkins, see ya

21   alligator gleefully when they decided they were going to yank

22   back the contract extension.  Remember, see ya alligator.  We

23   heard from her.  And we heard from her when they signed the

24   board minutes where they all voted.

25       The rescission couldn't happen if they didn't all

Davis - rebuttal argument

1    vote for it as a majority.  That was their statement.  That is
2    enough to find that they knew.  Because they all knew Tyrone
3    Rogers hated her.  He said it every chance he got.  They
4    acknowledge it.  Gloria Johnson, Betty Johnson.  So if they
5    joined in and they looked the other way -- under the law if you
6    know somebody's rights are being violated and you look the
7    other way and disregard what's happening, you're just as
8    responsible as the person who violated the rights.  So if they
9    let Janet Rogers and Tyrone Rogers drive the boat and they all
10   jumped on, they're responsible.  And so you may find them
11   liable.
12          And finally, counsel told you she didn't lose
13   anything.  Remember what her husband testified.  Remember that
14   she had an extension that was worth at least $165,000 that was
15   taken away.  How can she say she didn't lose anything?  Thank
16   you, ladies and gentlemen.
17          THE COURT:  Thank you very much, Mr. Davis.  Ladies
18   and gentlemen, you have just heard the closing statements, the
19   closing arguments by each side.  Remember, ladies and
20   gentlemen, this Court and only this Court will instruct you on
21   the law, and you will follow the law as the Court gives it to
22   you.  And I will give you that in a few moments.
23          Also if there is anything you heard in the arguments
24   that you don't believe is a proper inference or was presented
25   here, it's up to you as the judges of the facts, not the

1    judges, but of the facts, to decide the case.  All right.

2            And so, ladies and gentlemen, what we're going to do

3    now to make sure that you can focus totally on what the

4    instructions are -- it's a small part of the case, but it is

5    just as important as every other part of the case.  The Court's

6    going to ask you to leave any pads that you have taken notes on

7    in the seat in which you're at.  This is the one time that I'm

8    going to ask you not to -- to leave your pads and to sit in the

9    same seat that you're sitting in right now.

10           You're going to step out for a quote, unquote, a

11   facilities break and allow us to take one more pass at what the

12   instructions will be and how they're going to be presented to

13   you.  And then we will have you back out for the instructions.

14   Don't discuss the case.  Don't begin to consider it yet.  It's

15   not time to deliberate.  All rise.

16       (Jury excused.)

17           THE COURT:  Plaintiff, anything on the record?

18           MR. DAVIS:  No, Judge.

19           THE COURT:  Defense -- again, remember my rules.  If

20   something is not the way you think it should be when I read the

21   instructions, hold your fire until I ask you at the close of

22   the case to let me know if you have anything on the record.

23       (Brief pause.)

24           THE COURT:  All right.  If the jurors are ready.

25   Before I bring them out since we have a few minutes, as to what

1  goes back to the jury, it's my idea that only the stipulation

2  goes back to the jury.  Only the written stipulation goes back

3  to the jury.  If they ask for something that's been admitted

4  into evidence, one of the lengthy documents, then I'll do it.

5  But right now that's where I am.  Any objections or insistence

6  on putting something forward, plaintiff?

7         MR. DAVIS:  Well, Judge, I'd like to put forward all

8  of the exhibits that we entered into evidence.  I understand --

9         THE COURT:  That's not -- that is -- I have never

10  been in a trial --

11         MR. DAVIS:  I --

12         THE COURT:  So you can make your request.

13  Respectfully denied.  Now, you want to focus on something in

14  particular?

15         MR. DAVIS:  Yes.  The employment -- well, no, Judge.

16  I like your idea.  Let the jury decide.  They'll focus it if

17  they need focusing.

18         THE COURT:  Yes.  And if they need focusing, they'll

19  ask.

20         MR. DAVIS:  Yes.

21         THE COURT:  Now, if it's been admitted into

22  evidence --

23         MR. DAVIS:  Right.

24         THE COURT:  -- it's not that I won't give it.

25         MR. DAVIS:  I'd rather they have a free flowing

1    discussion.

2             THE COURT:  All right.  Defense, what's your

3    position?

4             MS. SCHWENDENER:  Judge, we would just like the

5    contract to go back to the jury.

6             THE COURT:  Either it's all or -- it's all or

7    everything, but I will give them the contract as soon as

8    possible if they ask for it.  All right.

9             MR. DAVIS:  Yes, if they ask.

10            THE COURT:  If they ask for the contract or other

11   admitted evidence, but particularly the contract, I'll get in

12   touch with you simultaneously I'm giving it to them.  I'll warn

13   you that up front.  Okay.  All right.  Because of your very

14   succinct arguments, the Court feels that I shouldn't blow that

15   by trying to give them a lot of documents when the both

16   sides --

17            MR. DAVIS:  I agree, Judge.

18            THE COURT:  -- presented very cogent, succinct

19   arguments.  If there's nothing else, I'll get my water, and

20   I'll be back out.

21            MR. DAVIS:  Thank you, Your Honor.

22            THE COURT:  And I have copies for each of the jurors

23   and one verdict form.  But they'll get them when they go in,

24   not when I'm reading.  All right.  Again, if you need to leave,

25   leave now.  Don't leave during my instructions.

1          (Short break taken.)

2              THE COURT:  All right.  Anything on the record for

3      the plaintiff?

4              MR. DAVIS:  No, Your Honor.

5              THE COURT:  Defense.

6              MS. SCHWENDENER:  No, Your Honor.  I guess just as

7      far as our supplemental motion.

8              THE COURT:  Yes, as to -- no, I, I reserved ruling.

9              MS. SCHWENDENER:  I believe you did reserve ruling,

10     yes.

11             THE COURT:  Yes.

12             MS. SCHWENDENER:  Okay.

13             THE COURT:  So it's reserved.

14             MS. SCHWENDENER:  Still.  Okay.  Thank you.

15             THE COURT:  Yes.  All right.  Now, I could, I could

16     rule on it now or I could reserve it.

17             MS. SCHWENDENER:  Take your time.

18             THE COURT:  I can, I can reserve it till the end.

19             MS. SCHWENDENER:  Thank you.

20             THE COURT:  All right.

21         (Before the jury:)

22             THE COURT:  All right.  As I stated, ladies and

23     gentlemen, now is the time for the instructions on the law.  I

24     told you from the outset that the Court would give you the law.

25     You would decide the facts and then you would follow the law

949

1    with those facts as I give it to you.  So as I go through this,
2    some of you have been taking notes.  I would suggest that you
3    not take notes.  You all will have copies of the instructions
4    back in the jury room.  Sometimes it's better to hear it read
5    and then look at the instructions instead of trying to take
6    shorthand.  That would be my suggestion.  All right.  Let's see
7    if my voice holds out.

8              Members of the jury, you have seen and heard all the
9    evidence and arguments of the attorneys.  Now I will instruct
10   you on the law.  You have two duties as a jury.  Your first
11   duty is to decide the facts from the evidence in this case.
12   This is your job and yours alone.  Your second duty is to apply
13   the law that I give you to the facts.  You must follow these
14   instructions even if you disagree with them.  Each of the
15   instructions is important, and you must follow all of them.

16             Perform these duties fairly and impartially.  Nothing
17   I say now and nothing I said or did during the trial is meant
18   to indicate any opinion on my part about what the facts are or
19   what your verdict should be.

20             During this trial, I have asked a witness a question
21   myself.  Do not assume that because I asked questions I hold
22   any opinion on the matters I asked about, or on what the
23   outcome of the case should be.

24             In this case one of the defendants is a public Board
25   of Education.  All parties are equal before the law.  A public

1  Board of Education is entitled to the same fair consideration
2  that you would give any individual person.

3        The evidence consists of the testimony of the
4  witnesses and the exhibits admitted in evidence and
5  stipulations.  A stipulation is an agreement between both sides
6  that a person would have given certain testimony.

7        Certain things are not to be considered as evidence.
8  I will list them for you.  First, if I told you to disregard
9  any testimony or exhibits or struck any testimony or exhibits
10 from the record, such testimony or exhibits are not evidence
11 and must not be considered.  Second, anything that you may have
12 seen or heard outside the courtroom is not evidence and must
13 entirely -- be entirely disregarded.  Third, questions and
14 objections or comments by the lawyers are not evidence.
15 Lawyers have a duty to object when they believe a question is
16 improper.  You should not be influenced by any objection, and
17 you should not infer from my rulings that I have any view as to
18 how you should decide the case.

19       Fourth, the lawyers' opening statements and closing
20 arguments to you are not evidence.  Their purpose is to discuss
21 the issues and the evidence.  If the evidence as you remember
22 it differs from what the lawyers said, your memory is what
23 counts.  Any notes you have taken during this trial are only
24 aids to your memory.  The notes are not evidence.  If you have
25 not taken notes, you should rely on your independent

1   recollection of the evidence and not be unduly influenced by
2   the notes of other jurors.  Notes are not entitled to any
3   greater weight than the recollections or impressions of each
4   juror about the testimony.

5          In determining whether any fact has been proved, you
6   should consider all of the evidence bearing on the question
7   regardless of who introduced it.  You should use common sense
8   in weighing the evidence and considering the evidence in light
9   of your own observations in life.  In our lives we often look
10  at one fact and conclude from it that another fact exists.  In
11  law we call this inference.  A jury is allowed to make
12  reasonable inferences.  Any inference you make must be
13  reasonable and must be based on the evidence in the case.

14         You may have heard the phrases direct evidence and
15  circumstantial evidence.  Direct evidence is proof that does
16  not require an inference, such as the testimony of someone who
17  claims to have personal knowledge of a fact.  Circumstantial
18  evidence is proof of a fact or a series of facts that tends to
19  show that some other fact is true.

20         As an example, direct evidence that it is raining is
21  testimony from a witness who says I was outside a minute ago,
22  and I saw it raining.  Circumstantial evidence that it is
23  raining is the observation of someone entering a room carrying
24  a wet umbrella.  The law makes no distinction between the
25  weight to be given to either direct or circumstantial evidence.

1   You should decide how much weight to give any evidence.  In
2   reaching your verdict you should consider all the evidence in
3   the case, including the circumstantial evidence.

4           You must decide whether the testimony of each witness
5   is truthful and accurate in part, in whole, or not at all.  You
6   must -- you almost must decide what weight, if any, you give to
7   the testimony of each witness.  In evaluating the testimony of
8   any witness including any party to the case, you may consider,
9   among other things, the ability and opportunity the witness had
10  to see, hear, or know the things that the witness testified
11  about; the witness' memory; any interest, bias, or prejudice
12  the witness may have; the witness' intelligence; the manner of
13  the witness while testifying; and the reasonableness of the
14  witness' testimony in light of all the evidence in the case.

15          John Izzo is an attorney who is also a fact witness
16  in this matter.  John Izzo is not an expert witness.  His
17  testimony should not be given any more weight simply because he
18  is an attorney.

19          You may consider statements given by a party before
20  trial as evidence of the truth of what he or she said in the
21  earlier statements.  As well as in deciding what weight to give
22  his or her testimony.  With respect to other witnesses, the law
23  is different.  If you decide that before the trial one of these
24  witnesses made a statement that is consistent with his or her
25  testimony here in court, you may consider the earlier statement

1   only in deciding whether his or her testimony here in court was

2   true and what weight to give to his or her testimony here in

3   court.  And there are times when we don't get all the genders

4   right.  You all will figure it out I'm sure.  All right.

5           You may find the testimony of one witness or a few

6   witnesses more persuasive than the testimony of a larger

7   number.  You need not accept the testimony of the larger number

8   of witnesses.  The law does not require any party to call as a

9   witness every person who might have known of the facts related

10  to this trial.  Similarly, the law does not require any party

11  to present as exhibits all papers and things mentioned during

12  this trial.

13          You must consider that the Board of Education of

14  Harvey School District 152 can only act through a majority of

15  its members.  If you do not find that a majority of the

16  individual defendants are liable, you may not find the Board of

17  Education of Harvey School District 152 liable.  If you find

18  that a majority of the individual defendants are liable, you

19  must find Board of Education of Harvey School District 152 also

20  liable.

21          In this case plaintiff claims that defendants

22  violated her constitutional right to free speech by rescinding

23  her contract extension because plaintiff filed a police report

24  and supplemental police report.  To succeed on this claim

25  plaintiff must prove each of the following four things by a

1  preponderance of the evidence:

2          One, plaintiff filed the police reports; two,

3  defendant intentionally rescinded her contract extension;

4  three, plaintiff's filing of the police reports was a reason

5  that defendants rescinded her employment contract extension.

6  It need not be the only reason.  Four, defendants' rescission

7  of the employment contract extension would be likely to deter

8  an ordinary employee in plaintiff's circumstances from engaging

9  in similar speech.

10         If you find that plaintiff did not prove each of

11 these things by a preponderance of the evidence, then you must

12 decide for the defendants.  If you find that plaintiff did

13 prove each of these things by a preponderance of the evidence,

14 then you must consider whether defendants have proved by a

15 preponderance of the evidence that there were other reasons

16 that would have led defendants to rescind plaintiff's

17 employment contract extension even if plaintiff had not filed

18 the police reports.

19         If you find that defendants proved this by a

20 preponderance of the evidence, then you must decide for

21 defendants.  If you find that defendants did not prove this by

22 a preponderance of the evidence, then you must consider whether

23 defendants proved their claim that plaintiff's contract

24 extension was invalid for the following reason:

25         The Board was required to make a finding that

1    plaintiff met her contractually outlined performance and
2    improvement goals and failed to do so.

3             If you find that defendants have proved the above
4    claim by a preponderance of the evidence, then you must find
5    for defendants.  If you find that defendants have not proved
6    this claim by a preponderance of the evidence, then you must
7    decide for plaintiff and consider the issue of damages.

8             When I say a party -- a particular party must prove
9    something by a preponderance of the evidence or when I use the
10   expression if you find or if you decide, this is what I mean:
11   When you have considered all the evidence in the case, you must
12   be persuaded that it is more probably true than not true.

13            If you decide for the defendants on the question of
14   liability, then you should not consider the question of
15   damages.  If you find that plaintiff has proved any of her
16   claims against any of defendants, then you must determine what
17   amount of damages, if any, plaintiff is entitled to recover.
18   Plaintiff must prove her damages by a preponderance of the
19   evidence.  If you find that plaintiff has failed to prove any
20   of her claims, then you will not consider the question of
21   damages.

22            When you retire to the jury room, you will first
23   select a foreperson.  He or she will preside during your
24   deliberations.  Your verdict must be unanimous.  Forms of
25   verdict are supplied with these instructions.  After you have

1    reached your verdict, fill in and sign the appropriate form of
2    verdict and return it to the Court.  Your verdict must be
3    signed by each of you.  You should not write or mark upon this
4    or any of the other instructions given to you by the Court even
5    if you find a typo.

6          Dr. Denean Adams is the plaintiff in this case.
7    Board of Education of Harvey School District 152, Gloria
8    Johnson, Betty Johnson, Dr. Kisha McCaskill, Janet Rogers,
9    Tyrone Rogers, Linda Hawkins, and Felicia Johnson are the
10   defendants in this case and will be referred to collectively as
11   the defendants.  If you find for Dr. Denean Adams and against
12   the defendants, you should use verdict form A.  If you find for
13   the defendants and against Dr. Denean Adams, then you should
14   use verdict form B.

15         You may award compensatory damages only for injuries
16   that plaintiff has proved by a preponderance of the evidence
17   were caused by defendants' wrongful conduct.  Your award must
18   be based on evidence and not speculation or guesswork.  This
19   does not mean, however, that compensatory damages are
20   restricted to the actual loss of money.  They include both the
21   physical and mental aspects of injury even if they are not easy
22   to measure.

23         In calculating damages, you should not consider the
24   lost -- the issue of lost wages and benefits.  The Court will
25   calculate and determine any damages for past or future lost

1   wages and benefits.  You should consider the following types of

2   compensatory damages and no others:

3           The mental and emotional pain and suffering that

4   plaintiff has experienced.  No evidence of the dollar value of

5   mental, emotional pain, and suffering has been or needs to be

6   introduced.  There are no exact standards for setting the

7   damages to be awarded on account of pain and suffering.  You

8   are to determine an amount that will fairly compensate

9   plaintiff for the injuries she has sustained.

10          The verdict must represent the considered judgment of

11  each juror.  Your verdict, whether for or against the parties,

12  must be unanimous.  One second.  You should make every

13  reasonable effort to reach a verdict.  In doing so, you should

14  consult with one another, express your own views, and listen to

15  the opinions of your fellow jurors.  Discuss your difference

16  with an open mind.  Do not hesitate to reexamine your own views

17  and change your opinion if you come to believe it was wrong.

18  But you should not surrender your honest beliefs about the

19  weight or effect of evidence solely because of the opinions of

20  other jurors or for the purpose of returning a unanimous

21  verdict.

22          All of you should give fair and equal consideration

23  to all the evidence and deliberate with the goal of reaching an

24  agreement that is consistent with the individual judgment of

25  each juror.  You are the impartial judges of the facts.

 1          I do not anticipate that you will need to communicate
 2   with me.  If you do need to communicate with me, the only
 3   proper way is in writing.  The writing must be signed by the
 4   presiding juror.  Or if he or she is unwilling to do so, by
 5   some other juror.  The writing should be given to the marshal
 6   or the court security officer, who will give it to me.  I will
 7   respond either in writing or by having you return to the
 8   courtroom so that I can respond orally.
 9          If you do communicate with me, you should not
10   indicate in your note what your numerical division is, if any.
11          So you'll get the verdict form.  There will be only
12   one copy.  You will each have a copy of the instructions.
13   There will be one copy back in the room.  It will be three
14   pages for the verdict form.
15          Verdict form A, we, the jury hereby unanimously find
16   that the defendants retaliated against Dr. Denean Adams in
17   violation of her First Amendment rights when they rescinded her
18   one-year employment contract extension after she filed a police
19   report stating that Tyrone Rogers threatened her after she
20   requested an independent audit.  You'll either check yes or no
21   if you all agree.
22          If the answer is yes to the above question, then you
23   must answer the question of the compensatory damages on the
24   following page.  If you answered no to the question, then you
25   stop right there.

959

1    Compensatory damages.  We, the jury having answered

2    yes to the question on the previous page hereby award

3    compensatory damages to Dr. Denean Adams in the following

4    amount.  There will be a dollar sign, and everyone -- you date

5    it.  It's not October anymore.  Date it and sign foreperson,

6    all others after that.  And we do have a verdict form B, but

7    the way I'm looking at it is verdict form A covers all of it.

8    If counsel each take a look at that and tell me if you agree.

9    It has a yes or a no, and everybody signs after, which is

10   exactly where we are here.

11        MR. DAVIS:  I agree, Judge.

12        THE COURT:  There's a yes or a no and you sign

13   afterwards.  Instead of confusing them with two forms, one says

14   all of it.

15        MS. SCHWENDENER:  That's fine, Judge.

16        THE COURT:  All right.  So, ladies and gentlemen,

17   what we had is a form that went to a finding if you chose --

18   said all the evidence supported a finding for the defendant.

19   But it is contained in the one verdict form, verdict form A.

20   And that says you check either yes if you believe the evidence

21   supports the plaintiff.  You check no if you unanimously

22   believe that the evidence supports the defendant.  Either way

23   you're going to sign afterwards.  You will follow the

24   instructions that you will go ahead and if you said yes, go to

25   the compensatory damages and figure that out.  If you say no,

1    you stop there and sign.

2              All right.  So you will get one verdict form, verdict

3    form A.  Try to make it as simple as possible.  Is there

4    anything else other than that change that the Court needs to

5    look at from the plaintiff?

6              MR. DAVIS:  No, Your Honor.

7              THE COURT:  Defense, is there any other changes that

8    we need to look at from the -- with the instructions?

9              MS. SCHWENDENER:  No, Your Honor.

10             THE COURT:  All right.  Then, ladies and gentlemen,

11   you will be released to go deliberate.  We are -- the CSO here

12   is going to take you for lunch before you get started so you

13   don't have to do that.  You will go get your lunch and come

14   back here as a group.  And your deliberations can begin, as we

15   will swear him in.  As soon as you step back there, you decide

16   how you'd like to do this.  We wish you the best.  You now can

17   talk about the case all you want.  The Court will send back the

18   stipulations so you can have that, and then any other

19   communications are according to my instructions.  All right.

20   Swear in the CSO, please.

21        (Court security officer duly sworn.)

22        (Whereupon, the jury retired to deliberate.)

23             THE COURT:  All right.  Real quick.  Something the

24   Court has, and I was glad -- I was like what did I do with it.

25   The damages is going to go up earlier.  I'm going to put it in

1   a different order.  Clearly it was not supposed to be in the

2   middle of the instructions about the verdict form.  So I'm

3   going to switch that around so it's right by the compensatory

4   damages, which is what makes sense.  And my group is going to

5   help me.  And please give live body, live body phone numbers so

6   we can get somebody and not a voice mail for my staff.  So if

7   you have a couple of them to give, please do that.

8          They are gone to lunch.  There will be no waiting in

9   the courtroom, please.  Feel free to use your rooms.  I will

10  call you.  If we don't hear from them by 4:30, make your way

11  over.  All right.  Okay.  Thank you.

12         MS. SCHWENDENER:  Thank you, Your Honor.

13     (Whereupon, said trial was recessed at 12:55 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   DR. DENEAN ADAMS,                ) No. 15 C 8144
                                      )
 4                  Plaintiff,        )
                                      )
 5            v.                      )
                                      )
 6   BOARD OF EDUCATION HARVEY SCHOOL ) November 6, 2018
     DISTRICT 152, GLORIA JOHNSON in her ) Chicago, Illinois
 7   individual capacity, BETTY JOHNSON ) 2:20 p.m.
     in her individual capacity,     )
 8   DR. KISHA McCASKILL in her       )
     individual capacity, JANET ROGERS )
 9   in her individual capacity, TYRONE )
     ROGERS in his individual capacity, )
10   LINDA HAWKINS in her individual  )
     capacity, FELICIA JOHNSON in her )
11   individual capacity,             )
                                      )
12                  Defendants        ) Trial/Verdict

13                      VOLUME 6
                  TRANSCRIPT OF PROCEEDINGS
14   BEFORE THE HONORABLE SHARON JOHNSON COLEMAN, and a
                         jury
15

16   APPEARANCES:

17   For the Plaintiff:    MR. JEROME M. DAVIS, ESQ.
                           9024 McIntosh Court
18                         Lakewood, Illinois  60014

19   For the Defendants:   HAUSER IZZO PETRARCA GLEASON & STILLMAN
                           1415 West 22nd Street
20                         Suite 200
                           Oak Brook, Illinois  60523
21                         BY:  MR. CHRISTOPHER L. PETRARCA

22
              TRACEY DANA McCULLOUGH, CSR, RPR
23                  Official Court Reporter
                  219 South Dearborn Street
24                       Room 1426
                  Chicago, Illinois  60604
25                     (312) 435-5570
```

963

APPEARANCES CONTINUED:

```
                    LAW OFFICES OF JENNIFER K. SCHWENDENER LLC
                    5117B Main Street
                    Suite 4
                    Downers Grove, Illinois  60515
                    BY:  MS. JENNIFER K. SCHWENDENER
```

1     (The following proceedings were had in open court outside

2      the presence of the jury:)

3          THE COURT:  All right.  You all got a copy of the

4 verdict form as we changed it so it had one verdict form?

5          MS. SCHWENDENER:  Yes, Your Honor.

6          THE COURT:  As to your motion, for the same reasons

7 as before, the Court denies the motion.  Anything else before I

8 bring them out?

9          MR. DAVIS:  That's it, Your Honor.

10          THE COURT:  Anything else?

11          MS. SCHWENDENER:  No, Your Honor.

12          THE COURT:  All right.  Just so you know, my practice

13 afterwards I'll send jurors through the courtroom.  If they

14 want to talk to you, they'll talk to you in here.  Usually not

15 with the client nearby.  But they'll talk to you here.  I'll

16 tell them you're here for that.  Otherwise I let them go on

17 their way through the south doors.  That's the way I do it

18 after I talk to them for a brief bit.  I don't talk substance

19 with them, just generalities of how we can do better.

20    (Before the jury:)

21          THE COURT:  Will the foreperson please rise.  Has the

22 jury -- state your name for the record.

23          FOREPERSON YOCUM:  Sean Yocum.

24          THE COURT:  All right.  And has the jury reached a

25 verdict?

1    FOREPERSON YOCUM:  Yes, ma'am.

2    THE COURT:  All right.  Was it unanimous?

3    FOREPERSON YOCUM:  Yes, ma'am.

4    THE COURT:  All right.  You can hand everything to

5    the CSO, and you can have a seat.

6    (Verdict tendered.)

7    THE COURT:  Thank you.  We, the jury hereby

8    unanimously find that the defendants retaliated against Dr.

9    Denean Adams in violation of her First Amendment rights when

10   they rescinded her one-year employment contract extension after

11   she filed police reports stating that Tyrone Rogers threatened

12   her after she requested an independent audit.  Yes.

13   We, the jury having answered yes to the question on

14   the previous page hereby award compensatory damages to Dr.

15   Denean Adams in the following amount:  400,000.

16   Yvette, hand that to each side, starting with the

17   defense.  Let them take a look at it.

18   (Brief pause.)

19   THE COURT:  Anything else from the plaintiff?

20   MR. DAVIS:  No, Your Honor.

21   THE COURT:  Anything else from defense?

22   MS. SCHWENDENER:  No, Your Honor.

23   THE COURT:  All right.  Ladies and gentlemen, you

24   have completed your service, and the Court salutes your service

25   over the time that we have spent here in and out of court.  At

1    this time the Court will speak to you.  But again, these
2    parties would not have the opportunity to settle their dispute
3    in a jury service if you had not given of your time and
4    efforts.  All rise for the jury.
5        (Jury excused.)
6            THE COURT:  Anything else on the record, plaintiff?
7            MR. DAVIS:  No, Your Honor.
8            THE COURT:  Anything else, defendant?
9            MS. SCHWENDENER:  No, Your Honor.
10           THE COURT:  All right.  Again, I will send them
11   through here if you wish to speak to them.  After 20 minutes or
12   so if they don't come through, they probably are not.  All
13   right.  Good work by both sides.  Hard fought.  Interesting
14   issues.  Thank you.
15           MR. PETRARCA:  Thank you, Your Honor.
16           MS. SCHWENDENER:  Thank you.
17       (End of trial proceedings.)
18                          CERTIFICATE
19           I HEREBY CERTIFY that the foregoing is a true,
20   correct and complete transcript of the proceedings had at the
21   hearing of the aforementioned cause on the day and date hereof.
22
23   _/s/TRACEY D. McCULLOUGH_                    _December 3, 2018_
24   Official Court Reporter                      Date
     United States District Court
25   Northern District of Illinois
     Eastern Division