UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. DENEAN ADAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15 cv 8144 |
| | ) Judge Sharon Johnson Coleman |
| BOARD OF EDUCATION HARVEY SCHOOL DISTRICT 152, GLORIA JOHNSON, in her individual capacity, BETTY JOHNSON, in her individual capacity, DR. KISHA MCCASKILL, in her individual capacity, JANET ROGERS, in her individual capacity, TYRONE ROGERS, in his individual capacity, LINDA HAWKINS, in her individual capacity, FELICIA JOHNSON, in her individual capacity, | ) |
| Defendants. | ) |

**MEMORANDUM ORDER AND OPINION**

Plaintiff Dr. Denean Adams brought this action against Defendants Board of Education Harvey School District 152 and its individual members, alleging retaliation in violation of her First Amendment and due process rights. The Court granted summary judgment to Defendants on Count III for First Amendment retaliation based on the filing of this lawsuit. Pursuant to Defendants' Rule 50(a) Motion, the Court granted judgment as a matter of law in favor of Defendants on Count II, the due process claim. Following trial, the jury found in favor of Adams on the remaining claim for First Amendment retaliation based on her police report, awarding $400,000 in compensatory damages. Defendants have now filed post-trial motions renewing their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) [177] and seeking remittitur of damages or a new trial under Federal Rule of Civil Procedure 59 [175].

1

I.      **Renewed Motion for Judgment as a Matter of Law**

Defendants first renew their motion for judgment as a matter of law. Pursuant to Rule 50, a "court should grant judgment as a matter of law when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007). Defendants contend that judgment as a matter of law is warranted because no reasonable jury could find that Defendants violated Adams' constitutional rights and because no reasonable jury would conclude that Defendants failed to prove their affirmative defenses. Defendants' renewed motion does not put forward any argument which was not before the Court when Defendants initially moved for a directed verdict at the close of Adams' case, and the Court therefore denies it for the reasons previously stated in open court.

II.     **Motion for Remittitur of Damages or a New Trial**

Defendants next contend that remittitur of damages or a new trial is warranted under Federal Rule of Civil Procedure 59. Defendants assert that the compensatory damages awarded in this case bear no rational connection to the evidence and are inconsistent with the verdicts in similar cases. In deciding whether a damages award is excessive, this Court considers "whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." *G.G. v. Grindle*, 665 F.3d 795, 798 (7th Cir. 2011) (citation omitted). A monstrously excessive verdict is one that is "a product of passion and prejudice," an analysis that the Seventh Circuit has recognized overlaps with the underlying question of whether the jury's verdict was irrational. *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015). In deference to the jury's role as the trier of fact, this Court reviews the record as a whole and takes the evidence in the light most favorable to the jury's verdict. *Id.*

The jury in this case awarded Adams $400,000 in compensatory damages. Defendants contend that the award is excessive because Adams "presented [no evidence] of extensive emotional distress," Adams did not lose her job, the only evidence of distress was that she was "stressed" after the date of the threat, and Adams did not present evidence of "any sort of physical manifestations." (Dkt. 175 at 3, 5, 6.) The Court finds that this argument disregards evidence presented at trial which, when taken in the light favorable to the jury's verdict, clearly establishes Adams' emotional distress.

During the series of events with Defendants, Adams began experiencing migraines and changes in her personality, including a loss of self-confidence and loss of interest in social outings and in her relationship with her spouse. Adams testified that she received treatment from a licensed therapist to help her cope with the stress stemming from the workplace incidents with Defendants. Adams began treatment in August 2015 and continued in therapy through April 2016 when her therapist put her on an unpaid medical leave that lasted through June 30, 2016, when her contract terminated. During the final school year she worked for Defendants, Adams missed 83 days of work, the majority of which were due to her therapy and subsequent leave.

"An award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress." *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1068 (7th Cir. 2001). "It is within the jury's province to evaluate the credibility of witnesses who testify to emotional distress," and this Court will not disturb those credibility determinations. *Id.* (internal citation and quotation marks omitted). The jury was able to observe Adams when she was testifying and they apparently found her testimony to be sincere and sufficient to convince them that she merited the award they gave her. Moreover, Reverend Gooch, Adams' husband, also testified credibly and specifically regarding the emotional distress that Adams underwent. The jury observed Gooch's demeanor and heard his testimony about the many changes Adams went through,

including that Adams' behavior became reserved and withdrawn, that Gooch and Adams began sleeping in separate bedrooms, and that he drove Adams to and from work each day; Gooch explained that these were major changes from the formerly outgoing and independent Adams that he knew before her experiences with the defendants. It is entirely possible that another jury might have evaluated Adams' damages more modestly, but that is not the standard. Because it is within the jury's domain to assess the credibility of Adams, and Gooch, the Court does not find that the award was monstrously excessive or not rationally connected to the evidence. Further, since the Court has "determined that the verdict was supported by the evidence, then necessarily it was not a result of passion and prejudice." *Tullis*, 243 F.3d at 1069.

Defendants further argue that the compensatory damages awarded in this case far exceed the compensatory damages awarded in other emotional distress and retaliation cases. A comparison, however, of the Adams' verdict and others does not suggest that the amount was inappropriate. That is especially so because when comparing past decisions to the jury award here, "an exact analogy is not necessary." *Adams*, 798 F.2d at 545. Defendants cite to several cases in which the compensatory damages award was below $100,000. *See, e.g.*, *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1229 (7th Cir. 1995) (finding $21,000 for emotional distress excessive where plaintiff's distress was limited); *Bennett v. Smith*, No. 96 C 2422, 2000 WL 1849029, at * 8 (N.D. Ill. Dec. 18, 2000) (Coar, J.) (reducing damages for emotional distress from $240,000 to $45,000).

However, there are also numerous cases in which courts have found that compensatory damages awards upwards of $300,000 were warranted, despite being awarded years earlier than the verdict at issue. *See, e.g.*, *Moore v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 02 C 4040, 2005 WL 2007291, at *17 (N.D. Ill. Aug. 12, 2005) (Nolan, M.J.) (denying motion for remittitur of compensatory damages below the statutory maximum of $300,000 in a Title VII case where plaintiff presented evidence that her personality and demeanor changed as a result of defendant's action);

*Naeem v. McKesson Drug Co.*, 444 F.3d 593, 612 (7th Cir. 2006) (affirming compensatory damages of $240,000 in employment discrimination case where plaintiff suffered from headaches and a recurring upset stomach); *Spina v. Forest Pres. Dist. of Cook Cty.*, 207 F. Supp. 2d 764, 776 (N.D. Ill. 2002) (Keys, J.) (allowing compensatory damages for emotional distress and reputational damage of $300,000).

These latter cases persuade the Court that an award of $400,000 for compensatory damages in Adams' case is not so high as to warrant remittitur. For one thing, "[d]ue to the highly fact-specific nature of [employment retaliation] cases, [comparisons to other awards] are rarely dispositive." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003). There is no exact standard for fixing the amount to be awarded for compensatory damages. Moreover, as the Seventh Circuit explains, "[a]wards in other cases provide a reference point that assists the court in assessing reasonableness; they do not establish a range beyond which awards are necessarily excessive." *Adams*, 798 F.2d at 545. Therefore, this Court denies the motion for remittitur or a new trial on the issue of the $400,000 compensatory damage award.

**Conclusion**

Based on the foregoing, the Court denies Defendants' motions renewing their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) [177] and seeking remittitur of damages or a new trial under Federal Rule of Civil Procedure 59 [175].

IT IS SO ORDERED.

Date: 7/15/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge